# EXHIBIT "A"

E-FILED IN OFFICE - TB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**26-C-01649-S2**

**2/9/2026 11:19 AM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MARY ANGELA BELL,

      Plaintiff,

v.

PROGRESSIVE MOUNTAIN INSURANCE
COMPANY,

      Defendant.

CIVIL ACTION 26-C-01649-S2
FILE NO.: _____

---

## COMPLAINT FOR DAMAGES

---

This case involves an insurance company's negligent or bad-faith failure to settle claims against its insured for policy limits, proximately causing a judgment against the insured in excess of policy limits. *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267 (1992). The insured is Mary Angela Bell. The insurer is Progressive Mountain Insurance Company ("Progressive"). The underlying claims involve a fatal automobile accident, for which Ms. Bell was foreseeably found responsible. The victim's family brought a lawsuit against Ms. Bell. Progressive defended the underlying case, as it was required to do under the insurance policy it issued to Ms. Bell, in exchange for her paying her contractually required insurance premium. Progressive had an opportunity to settle the underlying claims against Ms. Bell for its policy limits of $25,000.00, but Progressive squandered that opportunity. The jury trial resulted in Ms. Bell being fully liable for a $35,671,304.60 judgment, with $11,238.90 in post-judgment interest accruing daily.

## PARTIES, VENUE AND JURISDICTION

1.

Mary Angela Bell is a citizen of, resident of, and is domiciled in Gwinnett County, Georgia.

2.

Defendant Progressive Mountain Insurance Company is an Ohio corporation with its principal place of business located at 300 N. Commons Boulevard, Mayfield Village, Ohio 44143. Defendant Progressive's registered agent for service of process is CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046. When that agent is served with copies of the Summons and Complaint in this matter, Defendant Progressive will be subject to the jurisdiction and venue of this Court. Defendant Progressive has been properly served in this matter.

3.

Jurisdiction and venue in this Court are proper.

## THE CRASH

4.

On December 11, 2021, around 12:15 p.m., Ms. Bell was driving her 2005 Hyundai Santa Fe south on Spout Springs Road, when she crossed the center line of the highway, traveled into the northbound lane, and crashed head-on into the front driver's side of a 2004 Honda Odyssey driven by Mark Andrew Cohen (the "Crash"). **Ex. 1**, Police Report.

5.

Rebecca Hamrick, a witness at the scene, stated to the investigating officer that Ms. Bell had crossed the center line into the northbound land and collided into Mr. Cohen's Honda

Odyssey. The fact of Ms. Hamrick's statement, along with a summary of what she stated, is documented in the police report. *Id*.

6.

Ricky George, a witness at the scene, stated to the investigating officer that Ms. Bell had crossed the center line into the northbound land and collided into Mr. Cohen's Honda Odyssey. The fact of Mr. George's statement, along with a summary of what he stated, is documented in the police report. *Id*.

7.

The investigating officer listed Ms. Bell's 2005 Hyundai Santa Fe as Unit # 1 in the report, demonstrating that the initial police investigation revealed that Ms. Bell was partly or solely at fault for causing the Crash. *Id*.

8.

The investigating officer documented that Ms. Bell's contributing factors to the Crash were her driving on the wrong side of the road, and losing control of her vehicle. *Id*.

9.

The investigating officer cited Ms. Bell for failing to maintain her lane, in violation of O.C.G.A. § 40-6-48. *Id*.

10.

The investigating officer also cited Ms. Bell for homicide by vehicle in the second degree, in violation of O.C.G.A. § 40-6-393(c). *Id*.

11.

The objective facts of the crash and crash scene clearly demonstrated to any reasonable insurer that Ms. Bell was solely and completely responsible for causing the Crash and Mr. Cohen's death.

**THE DEATH OF MARK COHEN**

12.

As a proximate result of the Crash, Mr. Cohen suffered a deformity to the left chest wall, with hemopneumothorax, which caused him to go into cardiac arrest.

13.

Mark Cohen died at the scene of the Crash. The investigating officer documented Mr. Cohen's death in the police report. *Id*.

14.

On January 31, 2022, just 51 days after the Crash, Mr. Cohen's Death Certificate was issued. **Ex. 2**, Death Certificate.

15.

The Death Certificate listed Mr. Cohen's first "immediate cause" of death as "blunt chest trauma." No other cause of death was listed. *Id*.

16.

The Death Certificate provided that the "approximate interval between onset [of the blunt chest trauma] and death" was "secs to mins," indicating that Mr. Cohen was alive for seconds to minutes after the Crash, and before he died. *See id*.

## MS. BELL'S INSURANCE COVERAGE WITH PROGRESSIVE

17.

Before the Crash, Ms. Bell secured automobile insurance policy No. 909690918 from Progressive Mountain Insurance Co. That policy provided her liability limits of $25,000.00 per occurrence (the "Policy"). **Ex. 3**, Declarations Page.

18.

The Policy lists Lewis D. Bell and Mary A. Bell as "Drivers and resident relatives." *Id*.

19.

Ms. Bell was an insured under the Policy. *Id*.

20.

The Policy lists the 2005 Hyundai Santa Fe that Ms. Bell was driving at the time of the Crash. *Id*.

21.

Ms. Bell's 2005 Hyundai Santa Fe is a covered vehicle under the Policy. *Id*.

22.

All premiums due under the Policy were timely paid.

23.

The Policy lists the policy period as October 8, 2021 - April 8, 2022. *Id*.

24.

The Policy was not revoked, rescinded, or cancelled at any point within the policy period.

25.

The Policy was in effect on the date of the Crash, December 11, 2021.

26.

The Policy provides coverage for the Crash.

27.

The Policy provides coverage for Ms. Bell in connection with the Crash.

28.

The Policy provides coverage to Ms. Bell, to the extent she faced legal liability arising out of her operation of a covered motor vehicle, which includes the Crash and Mr. Cohen's death.

29.

Progressive was promptly and timely notified of the Crash.

30.

There is no exclusion, exception, or exemption in the Policy that negates coverage for Ms. Bell in connection with the Crash, under the circumstances as they occurred in this matter.

31.

Ms. Bell met any and all conditions of coverage under the Policy and properly cooperated with Progressive at all relevant times.

32.

Under the Policy, Progressive had a duty to Ms. Bell to professionally evaluate and settle the claims against her within policy limits, if Progressive had a reasonable opportunity to do so.

## PROGRESSIVE'S NOTICE AND INVESTIGATION

33.

On or about December 14, 2021, three days after the crash, Progressive first received notice about the incident. **Ex. 4**, Letter from Lewis Brisbois for Progressive, p. 1.

34.

After receiving notice of the Crash, Progressive promptly "promptly investigated" the matter. *Id*.

35.

By the end of 2021, Progressive had determined that Ms. Bell was at fault for causing the Crash, and the death of Mr. Cohen.

36.

By March 3, 2022, Progressive had completed its investigation into the Crash.

37.

On March 3, 2022, Progressive sent a letter to Emily Cohen offering to settle all wrongful death and estate claims related to Mark A. Cohen in exchange for Progressive's insurance limits of $25,000.00. Progressive did not receive a response to that letter. *Id*. at p. 1-2.

38.

On October 20, 2022, Progressive sent a second letter to Emily Cohen offering to settle all wrongful death and estate claims related to Mark A. Cohen in exchange for Progressive's insurance limits of $25,000.00. The letter asked her to provide Progressive with Mr. Cohen's death certificate, to provide it with the identity of all of Mr. Cohen's legal heirs, to tell Progressive whether an estate had been set up for Mr. Cohen, and, if so, to provide Progressive with a copy of Letters of Administration for the estate. Progressive did not receive a response to that letter either. *Id*. at p. 2.

## THE FILING OF THE UNDERLYING CASE

39.

On January 12, 2023, over 13 months after the crash, Mark Cohen's family (the "Cohen Plaintiffs") filed a lawsuit against Ms. Bell for wrongful death, styled as *Emily Cohen and Jacob Cohen, as the surviving children of Mark Andrew Cohen, and Janice Cohen as the Administrator of the Estate of Mark Andrew Cohen v. Mary Angela Bell*, State Court of Gwinnett County, Georgia, Civil Action File No. 23-C-00222-S2 (the "Underlying Case"). **Ex. 5**, Complaint.

40.

That same day, Emily and Jacob Cohen (the "Cohen Plaintiffs") mailed a Notice of Lawsuit and Request for Waiver of Service of Summons, Complaint, and Discovery to then-defendant Bell at her home address. Under the terms of the letter, then-defendant Bell had 30 days in which to determine whether to waive formal service requirements, after which she would have an additional 60 days to answer. **Ex. 6**, Request for Waiver of Service.

41.

The Notice of Lawsuit and Request for Waiver of Service of Summons, Complaint, and Discovery which the Cohen Plaintiffs sent to Ms. Bell included, among other things, the as-filed Complaint, showing a filing date of January 12, 2023. *Id.*, pp. 24-27.

42.

Upon receipt, Ms. Bell promptly sent Progressive the entire Notice of Lawsuit and Request for Waiver of Service of Summons, Complaint, and Discovery.

43.

Progressive received the Notice of Lawsuit and Request for Waiver of Service of Summons, Complaint, and Discovery from Ms. Bell on or before January 18, 2023, as shown by

the side header added by Progressive to that document, which states, "75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT". *Id.*

44.

On January 20, 2023, the Cohen Plaintiffs served the Underlying Case on Travelers Property Casualty Company of America ("Travelers"), Mr. Cohen's uninsured/underinsured motorist carrier, pursuant to O.C.G.A. § 33-7-11(d). **Ex. 7**, Sheriff's Entry of Service.

45.

Pursuant to its obligations under the Policy, Progressive selected and hired attorneys to defend Ms. Bell in the Underlying Case.

46.

Pursuant to its obligations under the Policy, Progressive provided a defense to Ms. Bell in the Underlying Case.

47.

On February 14, 2023, Travelers timely filed its "Answer and Defenses of the Travelers Property Casualty Insurance Company" in the Underlying Case. **Ex. 8**, Answer of Travelers.

48.

On February 28, 2023, and with the assistance of counsel retained by Progressive, Ms. Bell timely filed her Answer in the Underlying Case. **Ex. 9**, Answer of Bell.

49.

In her Answer in the Underlying Case, prepared by counsel retained by Progressive, Ms. Bell "admit[ted] to causing the accident." *Id.* at ¶ 7.

50.

At all relevant times, Ms. Bell cooperated with Progressive in defending the Underlying Case.

51.

Progressive has never issued a reservation of rights of any kind, whether explicitly or implicitly, to Ms. Bell, in connection with the Crash, or any matter related to the Crash.

## **PLAINTIFF'S SETTLEMENT OFFER (THE ORIGINAL OFFER)**

52.

On February 16, 2023—429 days after Progressive first received notice of the Crash—the Cohen Plaintiffs sent Progressive a valid, time-limited offer to settle the Underlying Case for the $25,000.00 policy limits applicable to Ms. Bell (the "Original Offer"). **Ex. 10**, Original Offer, p. 3.

53.

The Original Offer was the first settlement offer that Emily or Jacob Cohen (or both together) sent to Progressive in connection with either the Crash, or the Underlying Case.

54.

The Original Offer was addressed and sent to Progressive Mountain Insurance Company, c/o CT Corporation System, 289 S. Culver Street, Lawrenceville, GA 30046-4805, via Federal Express. **Ex. 10**, Original Offer, p. 1.

55.

At all relevant times, Progressive Mountain Insurance Company's registered agent for service was CT Corporation System, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

56.

At all relevant times, "[a] corporation's registered agent is the corporation's agent for service of process, notice, *or demand* required or permitted by law to be served on the corporation." O.C.G.A. § 14-2-504(a) (emphasis added).

57.

On page 1, in the "Re:" line, the Original Offer identified Progressive's insured as "**Your Insured:** Mary Angela Bell." **Ex. 10**, Original Offer, p. 1 (emphasis in original). It is, in fact, true that Mary Angela Bell was an insured of Progressive.

58.

On page 1, in the "Re:" line, the Original Offer identified the date of the Crash: "**Date of Collision:** December 11, 2021." *Id.* (emphasis in original). It is, in fact, true that the date of the Crash was December 11, 2021.

59.

In their Original Offer, the Cohen Plaintiffs advised Progressive that:

> The jury's monetary verdict is virtually certain to be higher than your customer's insurance policy limits, and is very likely to be for more money than Ms. Bell has. After the jury reaches that verdict, the court before which this case is already pending will enter judgment on the verdict. Then Ms. Bell will be *personally liable* for every penny of the difference between the jury's verdict and the insurance policy limits. That would be financially catastrophic for her. In other words, your customer is facing tremendous financial risk. If Progressive does not settle this case, Ms. Bell could lose *everything*. . . . my clients are now giving Progressive an opportunity to settle this case *without* putting Ms. Bell's personal assets at risk. If Progressive accepts this offer in the manner specified below, then my clients will settle this case for the insurance policy limits and Ms. Bell will be able to walk away from this case without paying a penny of her own money to settle it.

*Id.*, pp. 1-2 (footnote omitted) (emphasis in original).

60.

The Cohen Plaintiffs were explicit that this was a one-time and time-limited opportunity to settle the Underlying Case within Ms. Bell's policy limits:

> That [$25,000.00 settlement offer] is a big concession by my clients because the insurance policy limits do not fully compensate them. This is a generous offer, but it comes with conditions. In order for Progressive to accept this offer on behalf of its customer, Progressive must take the steps outlined below. If Progressive does not follow those steps exactly, then Progressive's response to this offer will constitute a counteroffer and a rejection of this offer. Also, Progressive has got to get it right the first time. If Progressive does not accept this offer in the manner specified in this letter, my clients will take this case to verdict and judgment. They will not make another offer within the insurance policy limits and will no longer be willing to settle this pending lawsuit within the insurance policy limits. In other words, this offer is Progressive's *one chance* to protect its customer from financial catastrophe, and Progressive needs to get it right.

*Id.*, p. 2 (emphasis in original).

61.

The Cohen Plaintiffs offered to settle all of the Cohen family's claims against Ms. Bell under specific terms that they set forth in the Original Offer, including payment of Ms. Bell's $25,000.00 auto insurance policy limits with Progressive. In doing so, they again explained that this was Progressive's sole opportunity to settle this matter, and that there would be no future settlement opportunities:

> My clients offer to settle this case for Ms. Bell's insurance policy limits, which we understand to be $25,000.00 (hereinafter "the Demanded Amount"). We reiterate that this is a generous offer, but that it comes with conditions that Progressive must meet exactly. **This is a one-time offer** and Progressive has to get it right the first time. If Progressive does not accept this offer exactly as specified herein, then Progressive's response to this offer will constitute a counteroffer and a rejection. **This opportunity to settle the case within the insurance policy limits – such that Progressive will**

**not place its customer at risk of losing everything – will not come again.**

*Id.*, p. 3 (footnote omitted) (emphasis added).

62.

The Original Offer was open for 14 days from the date of Progressive's receipt, and would be automatically withdrawn if Progressive did not accept it by then. *Id.* at 3.

63.

The Original Offer was a valid offer.

64.

The Original Offer was a valid offer to settle the Underlying Case.

65.

The Original Offer could have been accepted by Progressive.

66.

If Progressive had accepted the Original Offer, the Underlying Case would have been settled and dismissed, and no judgment would have been entered against Ms. Bell.

## PROGRESSIVE'S KNOWLEDGE WHEN THE ORIGINAL OFFER WAS SENT

67.

Before receiving the Original Offer, Progressive was aware of the Crash.

68.

Before receiving the Original Offer, Progressive had completed its investigation into the Crash.

69.

Before receiving the Original Offer, Progressive had spoken with Ms. Bell about the Crash.

70.

Before receiving the Original Offer, Progressive was aware of the Underlying Case.

71.

Before receiving the Original Offer, Progressive had already hired counsel to defend Ms. Bell in the Underlying Case.

72.

Before receiving the Original Offer, Progressive had discussed the Underlying Case with the counsel it hired to defend Ms. Bell.

73.

Before receiving the Original Offer, Progressive had sent or received (or both) written communications about the Underlying Case with the counsel it hired to defend Ms. Bell.

74.

Before receiving the Original Offer, Progressive knew that, with respect to the Crash, liability against Ms. Bell was clear.

75.

Before receiving the Original Offer, Progressive knew that, with respect to the Underlying Case, liability against Ms. Bell was clear.

76.

Before receiving the Original Offer, Progressive knew that Ms. Bell, with the advice of counsel retained by Progressive, would admit liability for the Crash, or would very likely admit liability for the Crash.

77.

Before receiving the Original Offer, Progressive knew that, at least with respect to any settlement offer, Progressive did not intend to dispute Ms. Bell's liability for the Crash.

78.

Before receiving the Original Offer, Progressive knew that Mr. Cohen was killed as a result of the Crash.

79.

Before receiving the Original Offer, Progressive knew that Mr. Cohen's survivors could assert a wrongful death claim against Ms. Bell, in connection with the Crash.

80.

Before receiving the Original Offer, Progressive knew to a high degree of likelihood that the value of any wrongful death claim against Ms. Bell, for the life of Mr. Cohen, far exceeded the $25,000.00 insurance policy limits that Ms. Bell had with Progressive.

81.

Before receiving the Original Offer, Progressive knew that the Administrator of Mr. Cohen's estate, if any, could assert an estate claim against Ms. Bell, in connection with the Crash.

82.

Before receiving the Original Offer, Progressive knew to a high degree of likelihood that the value of any estate claim against Ms. Bell, for the things like the medical bills, funeral expenses, and pre-death pain and suffering of Mr. Cohen in connection with the Crash, far exceeded the $25,000.00 insurance policy limits that Ms. Bell had with Progressive.

83.

Before receiving the Original Offer, Progressive knew that its $25,000.00 insurance policy for Ms. Bell was the only insurance that she had available to her to protect her against any and all claims related to the Crash.

84.

Before receiving the Original Offer, Progressive knew to a high degree of likelihood that if it did not settle all claims against Ms. Bell stemming from Mr. Cohen's death for Ms. Bell's $25,000.00 insurance policy limits, then Ms. Bell could face a verdict and judgment that would far exceed anything she could ever pay, and which would be financially devastating for her.

## **PROGRESSIVE'S RECEIPT & REVIEW OF THE ORIGINAL OFFER**

85.

The Cohen Plaintiffs sent the Original Offer to Progressive on February 16, 2023. **Ex. 10**, Original Offer, p. 1.

86.

Progressive received the Original Offer on February 17, 2023.

87.

After receiving the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive read every word of the Original Offer.

88.

After receiving the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive read every word of *the exhibits* to the Original Offer.

**The Original Offer & The Underlying Case**

89.

The Original Offer explicitly notified Progressive that the Underlying Case had been filed. *See, e.g.,* **Ex. 10**, Original Offer, p. 1-2.

90.

When reviewing the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive read and understood that the Underlying Case had been filed. *Id.*; *see also id.* at 2 ("They will not make another offer within the insurance policy limits and will no longer be willing to settle **this pending lawsuit** within the insurance policy limits." (emphasis added)).

91.

On page 1, in the "Re:" line, the Original Offer noted, "**Filing Date:** January 12, 2023," indicating the filing date of the Underlying Case. *Id.*, p. 1 (emphasis in original).

92.

When reviewing the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive read and understood that the Underlying Case was filed on January 12, 2023.

93.

On page 1, in the "Re:" line, the Original Offer noted, "**Court:** State Court of Gwinnett County," indicating the venue of the Underlying Case. *Id.* (emphasis in original).

94.

When reviewing the Original Offer, and before communicating with counsel for the

Cohen Plaintiffs afterwards, Progressive read and understood that the Underlying Case had been

filed in the State Court of Gwinnett County.

95.

On page 1, in the "Re:" line, the Original Offer listed "**Case No.:** 23-C00222-S2,"

indicating the case number of the Underlying Case. *Id.* (emphasis in original).

96.

When reviewing the Original Offer, and before communicating with counsel for the

Cohen Plaintiffs afterwards, Progressive read and understood that the case number for the

Underlying Case is Case No. 23-C00222-S2.

97.

On page 1, in the "Re:" line, the Original Offer noted, "**Answer Date:** February 14,

2023," indicating the date that an answer had been filed in the Underlying Case. *Id.* (emphasis in

original).

98.

When reviewing the Original Offer, and before communicating with counsel for the

Cohen Plaintiffs afterwards, Progressive read and understood that an answer had been filed in the

Underlying Case.

99.

The Original Offer provided Progressive with the information that it needed to access the

electronic docket for the Underlying Case, or to ask someone to do so on its behalf.

100.

The electronic docket for the Underlying Case shows what pleadings have been filed in the matter, and when they were filed.

101.

An Answer is a pleading that would be available on the electronic docket for the Underlying Case.

102.

The electronic docket for the Underlying Case is, for a small price, accessible and available to the general public, including Progressive.

**The Original Offer & O.C.G.A. § 9-11-67.1 (2023)**

103.

When reviewing the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive knew that O.C.G.A. § 9-11-67.1 (2023), governed "any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants" that was sent "**[p]rior to** the filing of an answer" must comply with that statute. O.C.G.A. § 9-11-67.1(a) (2023) (emphasis added).

104.

When reviewing the Original Offer, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive knew that O.C.G.A. § 9-11-67.1 (2023) did not govern "any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants" that is sent **after** "the filing of an answer." O.C.G.A. § 9-11-67.1(a) (2023).

105.

Three days before Progressive received the Original Offer, Travelers filed its answer in the Underlying Case. **Ex. 10**, Original Offer, p. 1; *see also* **Ex. 8**, Answer of Travelers.

106.

The pleading filed by Travelers in **Ex. 8** is an answer.

107.

The Original Offer was sent after an answer had been filed in the Underlying Case.

108.

Because the Original Offer was sent after an answer had been filed in the Underlying Case, the offer was not governed by O.C.G.A. § 9-11-67.1 (2023).

109.

Because the Original Offer was sent after an answer had been filed in the Underlying Case, the offer was not required to comply with O.C.G.A. § 9-11-67.1 (2023).

110.

Because the Original Offer was sent after an answer had been filed in the Underlying Case, O.C.G.A. § 9-11-67.1 (2023), by its express terms, did not apply to the Original Offer.

**Questions and Clarification About the Original Offer**

111.

The Original Offer allowed Progressive to seek clarification from the Cohen Plaintiffs about the offer, or any terms of the offer. **Ex. 10**, Original Offer, p. 4.

112.

The Original Offer allowed Progressive to ask the Cohen Plaintiffs questions about the offer, or any terms of the offer. *Id*. at 4.

**What Progressive Had to Do in Order to Accept the Original Offer**

113.

After reading the Original Offer and its exhibits, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive knew that it had to accept the offer before 4:00 p.m. Eastern Time on the 14th day after receiving the offer (*i.e.*, the time during which the offer was "open"). *Id*. at 3.

114.

Thus, Progressive had until 4:00 p.m. Eastern Time on March 3, 2023, in which to accept the Original Offer. *See id*.

115.

After reading the Original Offer and its exhibits, and before communicating with counsel for the Cohen Plaintiffs afterwards, Progressive knew and understood that, in order to accept the offer, it must do at least three things while the offer was open. *Id.*, p. 2-5.

116.

One: "[E]xpressly accept the offer in writing, unequivocally, and without variance of any sort." *Id.*, p. 3.

117.

Two: On the same day that it provides proper written acceptance, deliver "a sworn and notarized statement (*i.e.*, an affidavit) that identifies all liability and casualty insurance issued by Progressive that does or may provide coverage for Ms. Bell in this collision," that complies with the conditions set forth in the offer. *Id.*, p. 2, and fn. 3.

118.

Three: "[C]ause a check, draft, or other valid payment instrument made out to 'Butler Law LLC in trust for Emily Cohen and Jacob Cohen as the wrongful death beneficiaries of Mark Cohen and Janice Cohen as the administrator of Mark Cohen's estate' in [the amount of $25,000.00] to be delivered by UPS, FedEx, DHL, or USPS to Butler | Kahn, c/o Sarah Christy, 9 Swann Ridge, Palmetto GA 30268." *Id*., p. 3.

119.

In their Original Offer the Cohen Plaintiffs stated: "If Progressive accepts this offer in the manner specified below, then my clients will settle this case for the insurance policy limits and Ms. Bell will be able to walk away from this case without paying a penny of her own money to settle it." *Id*. at 2.

120.

In their Original Offer, the Cohen Plaintiffs warned: "We conservatively estimate that if Progressive does not settle this case and we take it to trial, a jury would return a verdict against Ms. Bell in the amount of $25,000,000.00. For that reason, we urge Progressive to accept this offer." *Id*. at 3.

121.

The Original Offer was capable of being accepted.

122.

Progressive was capable of accepting the Original Offer.

**PROGRESSIVE REJECTS THE ORIGINAL OFFER**

123.

Progressive did not accept the Original Offer.

124.

By not timely accepting, Progressive rejected the Original Offer.

125.

At 4:01 p.m. Eastern Time on March 3, 2023, the Original Offer was "automatically withdrawn, such that it [could] no longer be accepted." *Id*., p. 3.

126.

In other words, at 4:01 p.m. Eastern Time on March 3, 2023, the time limit in which Progressive could have accepted the Original Offer had expired.

127.

Before the Original Offer expired, Progressive did not "expressly accept the offer in writing, unequivocally, and without variance of any sort." *See id*., p. 3.

128.

Before the Original Offer expired, Progressive did not deliver "a sworn and notarized statement (*i.e.*, an affidavit) that identifies all liability and casualty insurance issued by Progressive that does or may provide coverage for Ms. Bell in this collision," that complies with the conditions set forth in the offer. *Id*., p.2, and fn. 3.

129.

Before the offer expired, Progressive did not:

> . . . cause a check, draft, or other valid payment instrument made out to "Butler Law LLC in trust for Emily Cohen and Jacob Cohen as the wrongful death beneficiaries of Mark Cohen and Janice Cohen as the administrator of Mark Cohen's estate" in the Demanded Amount to be delivered by UPS, FedEx, DHL, or USPS to Butler | Kahn, c/o Sarah Christy, 9 Swann Ridge, Palmetto GA 30268 within 14 days of the date that Progressive or its agent receives this letter by 4:00pm Eastern Time on that date.

*See id*., p. 3 (footnotes omitted).

130.

Before the Original Offer expired, Progressive did not seek any clarification from the Cohen Plaintiffs about the Original Offer, or any of its terms.

131.

Before the Original Offer expired, Progressive did not ask the Cohen Plaintiffs any questions about the Original Offer, or any of its terms.

132.

Before the Original Offer expired, Progressive did not respond to the Original Offer in any way.

133.

Before the Original Offer expired, Progressive did not respond to counsel for the Cohen Plaintiffs in any way.

134.

Before the Original Offer expired, Progressive did not attempt to communicate with counsel for the Cohen Plaintiffs in any way, whether by calling them, writing them, faxing them, emailing them, or engaging them through any other means of written or verbal communication.

## PROGRESSIVE'S ANALYSIS OF THE ORIGINAL OFFER

135.

Progressive assigned Ms. Beza K. Tesfaye ("Adjuster Tesfaye") to serve as the adjuster for the Crash, and the Underlying Case, the bodily injury portions of which were encompassed within Progressive's Claim No. 21-7399030 (the "Claim").

136.

At all times relevant to this matter, Adjuster Tesfaye was an employee of Progressive.

137.

At all times relevant to this matter, Adjuster Tesfaye was working within the course and scope of her employment with Progressive.

138.

After receiving the Original Offer, Progressive, through Adjuster Tesfaye, did not communicate with the Cohen Plaintiffs or their counsel until March 8, 2023, when she sent them a letter discussing their offer (the "3/8 Letter"). **Ex. 11**, Progressive Letter.

139.

In its 3/8 Letter, Progressive, through Adjuster Tesfaye, did not purport or attempt to accept any portion of the Original Offer, or any portion of any of the terms contained within the Original Offer. *Id*.

140.

In its 3/8 Letter, Progressive, through Adjuster Tesfaye, stated that it was "willing to pay" Ms. Bell's $25,000.00 policy limits to the Cohen Plaintiffs. But neither Progressive, nor Adjuster Tesfaye, specifically tendered Ms. Bell's insurance policy limits in the 3/8 Letter. *See id*.

141.

Instead of purporting or attempting to accept the Original Offer, or tendering Ms. Bell's insurance policy limits, Progressive, through Adjuster Tesfaye, wrote in the 3/8 Letter that it would "discuss the terms of [the Cohen Plaintiffs'] offer of settlement with our insured and respond promptly." *Id*.

142.

Under the express terms of Progressive's insurance policy with Ms. Bell, Progressive had full and complete authority to settle this matter without discussing any offer with Ms. Bell, and without her permission or approval of any offer.

143.

But on March 8, 2023, when Progressive, through Adjuster Tesfaye, sent the 3/8 Letter, the Original Offer had been expired for five days, and was not capable of being accepted.

144.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that O.C.G.A. § 9-11-67.1 (2023) governed the Original Offer because, among other reasons, the Original Offer "was sent prior to any answer filed in the pending lawsuit," which she stated in the 3/8 Letter. *Id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye, sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

145.

Progressive, through Adjuster Tesfaye, was factually incorrect that the Original Offer "was sent prior to any answer filed in the pending lawsuit."

146.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that the Original Offer must comply with the terms of O.C.G.A. § 9-11-67.1 (2023), which she documented in the 3/8 Letter. *Id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye, sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

147.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that the Original Offer did not comply with the terms of O.C.G.A. § 9-11-67.1 (2023), which she documented in the 3/8 Letter. *Id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye, sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

148.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that the Original Offer contained terms beyond those permitted under O.C.G.A. § 9-11-67.1 (2023), which she documented in the 3/8 Letter. *See id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye, sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

149.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that "multiple terms . . . that appear to be non-compliant with the current requirements of O.C.G.A. - 9-11-67.1 [sic]," which she documented in the 3/8 Letter. *Id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye, sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

150.

When analyzing the Original Offer, Progressive, through Adjuster Tesfaye, reached the opinion that it "was not sent by certified mail as required by the statute," which she documented in the 3/8 Letter. *Id*. Before sending the 3/8 Letter, neither Progressive, nor Adjuster Tesfaye,

sought the counsel of an attorney licensed to practice law in the State of Georgia on this specific issue, or when making this specific determination.

151.

In the 3/8 Letter, Progressive, through Adjuster Tesfaye, notified the Cohen Plaintiffs, for the first time ever, that Progressive had "attempted to access [the exhibits to the Original Offer] through the link provided but [had] been unable to do so to date" before "requesting an alternative method to access the documents." *Id*.

152.

Neither Progressive nor Adjuster Tesfaye ever requested "an alternative method to access [the exhibits to the Original Offer]" at any point before the Original Offer expired.

153.

In fact, Progressive and its adjusters are capable, and were capable in 2023, of accessing exhibits and other case materials through the Dropbox link contained in the Original Offer.

154.

Progressive and its adjusters have, in other matters, accessed exhibits and other case-related materials through a Dropbox link.

155.

Progressive does not have any policy prohibiting its adjusters from accessing exhibits and other case materials through a Dropbox link.

156.

Before receiving the Original Offer, Progressive already had documentation showing that Mr. Cohen died in the Crash, and that Ms. Bell was liable.

## PLAINTIFF'S STATUTORY OFFER OF SETTLEMENT

157.

On March 21, 2023, the Cohen Plaintiffs sent Ms. Bell an Offer of Settlement under O.C.G.A. § 9-11-68(b)(2) in the amount of $6,326,057.00. **Ex. 12**, OOS.

158.

This offer remained open for 30 days, after which it expired "such that it [could] no longer be accepted." *Id*. at 1.

## PROGRESSIVE'S RESPONSE AND COUNTEROFFER

159.

Progressive retained Seth Friedman at the law firm of Lewis Brisbois Bisgaard & Smith LLP to represent its interests with respect to the Crash and the Underlying Case.

160.

On April 17, 2023, Progressive, through Mr. Friedman, sent a letter to the Cohen Plaintiffs "in response to the Offer of Settlement Pursuant to O.C.G.A. § 9-11-68 in the amount of $6,326,057.00, . . . sent on March 21, 2023" (the "Friedman Letter"). **Ex. 4**, Friedman Letter, p. 1.

161.

When Progressive sent the Friedman Letter, the Cohen Plaintiffs' March 21, 2023, Offer of Settlement under O.C.G.A. § 9-11-68(b)(2) was still open, and had not yet expired.

162.

But in the Friedman Letter, Progressive provided a counteroffer to the Cohen Plaintiffs' March 21, 2023, Offer of Settlement under O.C.G.A. § 9-11-68(b)(2): "Progressive is hereby offering its $25,000 in available limits for this matter. Assuming you will accept Progressive'

[sic] offer, Progressive is prepared to provide an affidavit of no other coverage, and is agreeable to a limited liability release pursuant to O.C.G.A. § 33-24-41.1." *Id*., p. 3.

163.

By providing a counteroffer in the Friedman Letter while the Cohen Plaintiffs' March 21, 2023 Offer of Settlement under O.C.G.A. § 9-11-68(b)(2), Progressive, through Mr. Friedman, rejected that Offer of Settlement.

164.

In the Friedman Letter, Progressive confirmed its legal position that the Answer of Travelers Property Casualty Insurance Company, filed in the Underlying Case on February 14, 2023, did not constitute "an answer" within the meaning O.C.G.A. § 9-11-67.1(a) (2023). *See id*., pp. 1-2.

165.

When it sent the Friedman Letter, Progressive was not aware of, and did not cite, any Georgia court which held that the answer of an Uninsured/Underinsured Motorist Carrier filed in a lawsuit does not constitute "an answer" within the meaning O.C.G.A. § 9-11-67.1(a) (2023).

166.

In the Friedman Letter, Progressive confirmed its legal position that Ms. Bell's Answer was the only answer that could be "an answer" within the meaning of O.C.G.A. § 9-11-67.1(a) (2023). *See id*., pp. 1-2.

167.

When it sent the Friedman Letter, neither Progressive nor its counsel was aware of, and did not cite, any Georgia court which had held that only the answer of named party defendant constitutes "an answer" within the meaning O.C.G.A. § 9-11-67.1(a) (2023).

168.

In fact, Progressive's legal position about what constitutes "an answer" within the meaning O.C.G.A. § 9-11-67.1(a) (2023) is wrong. *Cohen v. Progressive Mt. Ins. Co.*, 375 Ga. App. 487, 489 (2025) ("The plain and ordinary meaning of 'an answer' is 'any answer.' Because the statutory text at issue is clear and unambiguous, we attribute its plain meaning to OCGA § 9-11-67.1.") (internal citations omitted) (citing *Patterson v. Ga. Pacific*, 38 F.4th 1336, 1349 (III) (B) (2) (11th Cir. 2022) ("[T]he indefinite article 'an' means 'any.'")); **Ex. 13**, *Progressive Mt. Ins. Co. v. Cohen*, Case No. S25C1253 (Ga. Dec. 9, 2025), *cert denied*.

169.

In the Friedman Letter, Progressive confirmed its legal position that the Original Offer was not "a valid offer to settle within [Progressive's] limits." **Ex. 4**, Friedman Letter, pp. 2-3.

170.

In the Friedman Letter, Progressive confirmed its legal position that the Original Offer "was required to comply with O.C.G.A. § 9-11-67.1" because "it was sent prior to answer being filed by Progressive's insured, Mary Bell." *See id*.

171.

In fact, Progressive's legal position that the Original Offer had to comply with O.C.G.A. § 9-11-67.1(a) (2023) is wrong. *Cohen, et al. v. Progressive Mountain Ins. Co.*, 375 Ga. App. 487, 489 (2025) ("the trial court erred in declaring that the February 16 letter was required to comply with OCGA § 9-11-67.1."); **Ex. 13**, *Progressive Mt. Ins. Co. v. Cohen*, Case No. S25C1253 (Ga. Dec. 9, 2025), *cert denied*.

## THE JUDGMENT IN THE UNDERLYING LAWSUIT

172.

Because it was never settled, the Underlying Case went to trial.

173.

On April 15, 2024, trial began in the Underlying Case, in the State Court of Gwinnett County, before The Hon. Shawn F. Bratton.

174.

On the advice of counsel retained by Progressive, Ms. Bell admitted to causing the Crash, so the Underlying Case was tried on the issues of proximate cause and damages. **Ex. 14**, Consolidated Pretrial Order, p. 3.

175.

On April 17, 2024, twelve Gwinnett County citizen jurors unanimously awarded $26,500,000.00 for the full value of the life of Mark Cohen, and $1,500,000.00 for Mark Cohen's pre-collision fright, shock, and terror, for a total of $28,000,000.00 in compensatory damages in favor of the Cohen Plaintiffs and against Ms. Bell. **Ex. 15**, Verdict Form.

176.

On May 14, 2024, the trial court entered Judgment in favor of the Cohen Plaintiffs, and against Ms. Bell, for $28,000,000.00 in compensatory damages, and $1,252,397.26 in pre-judgment interest under the Unliquidated Damages and Interest Act (O.C.G.A. § 51-12-14), for a total judgment of $29,252,397.30. **Ex. 16**, Judgment.

177.

Progressive, on behalf of Ms. Bell, decided not to appeal or otherwise challenge the verdict or judgment. As such, the judgment against Ms. Bell became a final judgment 31 days after the judgment was entered.

178.

On November 18, 2024, the trial court granted the Cohen Plaintiffs' Motion to Amend Judgment to Include Attorney's Fees and Litigation Expenses Under O.C.G.A. § 9-11-68, and amended the May 14, 2024 judgment in favor of the Cohen Plaintiffs, and against Ms. Bell, to include $6,326,057.00 in attorneys' fees, and $92,850.34 in litigation expenses, for a total amended judgment of $35,671,304.60. **Ex. 17**, Amended Judgment.

179.

The trial court determined that the Cohen Plaintiffs were entitled to an Amended Judgment because Progressive, on behalf of Ms. Bell, rejected the Cohen Plaintiffs' March 21, 2023 "Offer Pursuant to O.C.G.A. § 9-11-68" to settle all claims against Ms. Bell for $6,326,057.00, and the "final judgment [was] in an amount greater than 125 percent of such offer of settlement." O.C.G.A. § 9-11-68(b)(2).

180.

The May 14, 2024, judgment against Ms. Bell is $35,671,304.60.

181.

Under O.C.G.A. § 7-4-12(a), the judgment bears "annual interest upon the principal amount recovered at a rate equal to the prime rate as published by the Board of Governors of the Federal Reserve System, as published in statistical release H. 15 or any publication that may supersede it, on the day the judgment is entered plus 3 percent."

182.

On May 14, 2024, the prime rate was 8.50%.[1]

183.

On May 14, 2024, the statutory post-judgment interest rate in Georgia was 11.50%.

184.

At a rate of 11.50%, post-judgment interest accrues on the May 14, 2024 judgment in the amount of $11,238.90 per day, and $4,102,200.03 per year.

185.

As of the date of this Complaint, $7,147,943.06 in post-judgment interest has been added to the May 14, 2024 judgment.

186.

As of the date of this Complaint, the total judgment against Ms. Bell is $42,819,247.66.

## MS. BELL'S ADDITIONAL COVERAGE WITH PROGRESSIVE

187.

The "Auto Insurance Coverage Summary" of Ms. Bell's Progressive insurance policy, also known as the "Declarations Page," provides that "[t]he policy contract is form 9611A GA (05/15). The contract is modified by forms A226 GA (11/16) and A263 GA (09/18)." **Ex. 3**, p. 1.

188.

Progressive Form 9611A GA (05/15) sets forth the terms of Progressive's insurance coverage of Ms. Bell, unless otherwise modified by Progressive forms A226 GA (11/16) and/or A263 GA (09/18).

---

[1] *See* https://fred.stlouisfed.org/series/PRIME.

189.

In form 9611A GA (05/15), "PART I—LIABILITY TO OTHERS," the subsection

entitled "ADDITIONAL PAYMENTS" provides in relevant part as follows:

> In addition to **our** limit of liability, **we** will pay for an **insured person**:
> . . .
> 2.  interest accruing after entry of judgment, until we have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed our limit of liability. This does not apply if we have not been given notice of suit or the opportunity to defend an insured person;

**Ex. 18**, Progressive Policy, p. 3 (emphasis in quote above contained in the original) (highlights

in the exhibit added for convenience).

190.

Progressive form A226 GA (11/16) does not modify item No. 2 of the "ADDITIONAL

PAYMENTS" subsection in Form 9611A GA (05/15), which is cited above.

191.

Progressive form A263 GA (09/18) does not modify item No. 2 of the "ADDITIONAL

PAYMENTS" subsection in Form 9611A GA (05/15), which is cited above.

192.

By the terms of its policy, regardless of any bad faith or negligent failure to settle,

Progressive owes coverage for any post-judgment interest until it unconditionally tenders its

policy limits in partial satisfaction of the judgment in compliance with the contractual language.[2]

**Ex. 18**, Progressive Policy, p. 3 ("ADDITIONAL PAYMENTS," No. 2).

---

[2] *See Camacho v. Nationwide Mut. Ins. Co.*, 188 F. Supp. 3d 1331, 1356 (N.D. Ga. 2016) ("However, under Georgia law, '[i]n order to constitute a proper tender, the tender must be certain and unconditional, and be in full payment of the specific debt. [O.C.G.A. § 13-4-24.] A written proposal to pay money, with no offer of the cash, is not a tender." *Edward v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 888, 892 (11th Cir. 2013) (citing *Crockett v. Oliver*, 218 Ga. 620, 129 S.E.2d 806, 807-08 (Ga. 1963); *Angier v. Equitable Bldg. & Loan Assoc.*, 109 Ga. 625, 35

193.

On the date of the Crash, Ms. Bell was an "insured person" within the definition or

meaning of that phrase in Progressive form 9611A GA (05/15).

194.

Post-judgment interest under O.C.G.A. § 7-4-12(a) is encompassed within the definition

or meaning of the phrase "interest accruing after entry of judgment," contained within

Progressive form 9611A GA (05/15).

195.

Under Progressive form 9611A GA (05/15), Progressive's obligation to pay post-

judgment interest under certain circumstances is "[i]n addition to [Progressive's] limit of

liability" within the insurance policy. **Ex. 18**, Form 9611A GA (05/15), p. 3.

196.

Under Progressive form 9611A GA (05/15), the amount of post-judgment interest that

Progressive is obligated to pay under the terms of its policy continues to accrue until Progressive

has "paid, offered to pay, or deposited in court, that portion of the judgment which does not

exceed [Progressive's] limit of liability [$25,000.00]." *Id*.

197.

Progressive's contractual obligation to pay "interest accruing after entry of judgment"

does not arise until such time as a judgment is entered, and post-judgment interest begins to run

on that judgment.

---

S.E. 64 (Ga. 1900)); *see also Southern General Ins. Co. v. Ross*, 227 Ga. App. 191, 489 S.E. 2d 53, 56 (Ga. Ct. App. 1997) ("A tender conditioned on a release of 'all claims,' which includes claims not included within the obligation at hand, is not effective.") (citation omitted).").

198.

As such, Progressive's "pa[yment], offer[] to pay, or deposit[] in court, that portion of the judgment which does not exceed [Progressive's] limit of liability" must necessarily occur after entry of judgment, in order to cut off Progressive's liability for post-judgment interest under Progressive form 9611A GA (05/15).

199.

Under Progressive form 9611A GA (05/15), the amount of post-judgment interest that Progressive is obligated to pay under the terms of the policy is not capped or limited at any specific or pre-determined number.

200.

In the Underlying Case, Progressive was "given notice of suit or the opportunity to defend an insured person," and did, in fact, defend its insured person, Ms. Bell.

201.

After entry of the May 14, 2024 judgment, Progressive never "paid . . . that portion of the judgment which does not exceed [Progressive's] limit of liability." *See* **Ex. 18**, p. 3.

202.

After entry of the May 14, 2024 judgment, Progressive never "offered to pay . . . that portion of the judgment which does not exceed [Progressive's] limit of liability." *Id*.

203.

After entry of the May 14, 2024 judgment, Progressive never "deposited in court[] that portion of the judgment which does not exceed [Progressive's] limit of liability." *Id*.

204.

Since the May 14, 2024 judgment was entered, Progressive has not tendered Ms. Bell's $25,000.00 insurance policy limits to the Cohen Plaintiffs.

205.

Since the May 14, 2024 judgment was entered, Progressive has not tendered Ms. Bell's $25,000.00 insurance policy limits to anyone.

206.

Since the May 14, 2024 judgment was entered, Progressive has not offered to pay any amount of money to anyone in an attempt to protect Ms. Bell from the effects of that judgment.

207.

As of the date of this Complaint, the total amount of "interest accruing after entry of [the May 14, 2024] judgment," for which Ms. Bell is liable, is $7,147,943.06.

208.

Progressive is contractually obligated to immediately tender its policy limits and all post-judgment interest that has accrued as of the date of tender.

209.

Progressive has not unconditionally tendered either its policy limits or all accrued post-judgment interest in partial satisfaction of the judgment.

**DAMAGES AND HARM**

210.

An ordinarily prudent insurer would have accepted the Original Offer.

211.

An ordinarily prudent insurer would have concluded that proceeding to trial in the Underlying Case would create an unreasonable risk for Ms. Bell.

212.

Progressive acted unreasonably in response to the Original Offer by failing to do what it could to effectuate settlement of the claims against Ms. Bell.

213.

If Progressive had accepted the Original Offer, the claims against Ms. Bell would have been released and dismissed, with Ms. Bell having no financial exposure to a judgment in excess of her insurance policy limits.

214.

As a proximate result of Progressive's failure to reasonably respond to the Original Offer, the Underlying Case proceeded to trial, resulting in a large judgment in excess of Ms. Bell's insurance policy limits (as promised by the Original Offer).

215.

Ms. Bell has been damaged by Progressive's failure to settle, since, but for the failure to settle, she has had to endure additional litigation, the trial, and other proceedings, causing her anxiety and mental distress.

216.

Ms. Bell has been damaged by Progressive's failure to settle, as the result of the trial and a judgment not marked as satisfied are indelible public records that damage her reputation and are financially devastating.

## COUNT I
## FAILURE/REFUSAL TO SETTLE (BAD FAITH)

217.

Progressive had a duty, and a valid and reasonable opportunity, to settle the Cohen family's claims against Ms. Bell within policy limits.

218.

Failing to act as a reasonably prudent liability insurer, Progressive, in bad faith, and/or with a specific intent to injure, breached its duty by failing to settle the claims or to do what was within its control to settle the claims, directly and proximately causing damages to Ms. Bell as described herein.

## COUNT II
## FAILURE/REFUSAL TO SETTLE (NEGLIGENCE)

219.

Progressive had a duty, and a valid and reasonable opportunity, to settle the Cohen Plaintiffs' claims against Ms. Bell within her policy limits.

220.

Failing to act as a reasonably prudent liability insurer, Progressive negligently breached its duty by failing to settle the claims or to do what was within its control to settle the claims, directly and proximately causing damages to Ms. Bell as described herein.

## COUNT III
## BREACH OF FIDUCIARY DUTY

221.

At all relevant times, Progressive owed a fiduciary duty to Ms. Bell because it was so situated as to exercise a controlling influence over the will, conduct, and interest of Ms. Bell.

222.

Progressive breached the fiduciary duty it owed to Ms. Bell by failing to accept the Original Offer, as detailed herein.

223.

Progressive's breach of its fiduciary duty directly and proximately caused damages to Ms. Bell as described herein.

## COUNT IV
## BREACH OF CONTRACT

224.

Progressive form 9611A GA (05/15) sets forth the terms under which Progressive must pay for post-judgment interest owed by Ms. Bell in connection with the Crash and the Underlying Case, and those provisions have never been modified by any other policy, contract, or other document.

225.

Under the terms of Progressive form 9611A GA (05/15), Progressive must pay post-judgment interest for which Ms. Bell is liable in connection with the Crash and the Underlying Case.

226.

Since the May 14, 2024 judgment was entered, Progressive has not "paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed [Progressive's] limit of liability."

227.

Under the terms of Progressive form 9611A GA (05/15), Progressive must pay the amount of post-judgment interest for which Ms. Bell is liable. As of the date of this filing, this is

$7,147,943.06. That amount is due immediately.

228.

Under the terms of Progressive form 9611A GA (05/15), the amount of post-judgment interest for which Ms. Bell is liable, that Progressive is contractually obligated to pay, increases by $11,238.90 per day. That amount is due immediately, each day.

229.

Progressive's failure to pay these amounts, or any amount, in connection with Ms. Bell's liability in the Underlying Case, is a breach of its duties and obligations under the insurance contract that it formed with Ms. Bell.

## COUNT V
## ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

230.

Progressive's actions and omissions constitute bad faith, stubborn litigiousness, and have caused Ms. Bell unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11, entitling her to attorneys' fees and other expenses of litigation in this lawsuit.

## COUNT VI
## PUNITIVE DAMAGES

231.

Progressive's actions described herein constitute willful misconduct; malice; fraud; wantonness; oppression; or that entire want of care which would raise the presumption of conscious indifference to consequences; with the specific intent to cause harm, entitling Ms. Bell to damages, including punitive damages within the meaning of O.C.G.A. § 51-12-5.1.

## PRAYER FOR RELIEF

232.

Mary Angela Bell prays for the following relief:

(a)    That she have a trial by jury;

(b)    That she have and recover the following:

1.    Special damages in the amount of $35,671,304.60, representing the total

amount of the judgment in the Underlying Case;

2.    Post-judgment interest in the amount of $7,147,943.06, as of the date of

this Complaint, and continuing to accrue in the amount of $11,238.90 per

day, which is due immediately under the terms of Progressive's insurance

policy with Ms. Bell;

3.    Further special damages;

4.    General damages in an amount to be determined by the enlightened

conscience of a fair and impartial jury;

5.    Reasonable attorneys' fees and expenses in this litigation;

6.    Punitive damages (pursuant to O.C.G.A. § 51-12-5.1 or otherwise) in such

amount that the jury deems adequate to punish and deter Progressive in

light of the aggravated nature of its conduct, its financial circumstances,

and its intent to cause harm;

7.    That all costs be taxed against Progressive; and

8.    Other and further relief as the Court may deem just and proper.

Respectfully submitted, this 9th day of February, 2026.

**ASHBY | THELEN | LOWRY**

445 Franklin Gateway SE
Marietta, Georgia 30067
Main: (404) 777-7771
Fax:   (404) 777-7772
drew@atllaw.com
max@atllaw.com
seth@atllaw.com
david@atllaw.com

 */s/ Drew Ashby*
Andrew S. Ashby
Georgia Bar No. 455020
Maxwell K. Thelen
Georgia Bar No. 311404
Seth A. Lowry
Georgia Bar No. 867568
David A. Terry
Georgia Bar No. 051508

# EXHIBIT 1



*Colonel Christopher C. Wright*
*Commissioner*

## Department of Public Safety
### Post Office Box 1456
### Atlanta, Georgia 30371-1456
### Phone: (404) 624-7423
### Fax: (404) 624-7788

*Joan G. Crumpler*
*Director of Legal Services*

*Nkenge Green*
*Attorney Manager*
*Open Records Unit*

### CERTIFICATE OF AUTHENTICITY OF RECORDS FROM THE DEPARTMENT OF PUBLIC SAFETY

Pursuant to an order of the Georgia Commissioner of Public Safety, the undersigned is declared as an official custodian of the Department of Public Safety Records; As such, I hereby certify that the attached documents are true and accurate copies of official records of the Georgia Department of Public Safety.

Pursuant to Georgia law, O.C.G.A. §24-9-901 *et. seq.*, these records were:

(A)     Made at or near the time of the occurrence of the matters set forth therein, or from information transmitted by a person with knowledge of such matters;

(B)     Kept in the course of the regularly conducted activity of the Georgia Department of Public Safety; and

(C)     Made by the regularly conducted activity as a regular practice.

Name & Title: __Sheria Stanton__        __Open Records Unit__

Signed: _____*Sheria Stanton*_____

Date: _____October 31, 2022_____

ORU#: _____

Dated this the __31__ day of ___October___, 2022.

_____
NOTARY PUBLIC
My Commission Expires: November 13, 2022

**GEORGIA MOTOR VEHICLE CRASH REPORT**

| Agency Case Number | Agency NCIC Number | County | Date Rec. by GDOT |
|---|---|---|---|
| C000811663-03 | GAGSP0000 | HALL | |

| Estimated Crash | | Dispatch | | Arrival | | Total Number of | | | Inside City Of |
|---|---|---|---|---|---|---|---|---|---|
| Date | Time | Date | Time | Date | Time | Vehicles | Injuries | Fatalities | |
| 12/11/21 | 12:15 | 12/11/21 | 12:24 | 12/11/21 | 12:51 | 2 | 1 | 1 | |

Road of Occurrence: SPOUT SPRINGS ROAD

At Its Intersection With: _____

☑ Corrected Report

Not At Its Intersection But: 1000  ☐ Miles ☑ Feet  ☐ North ☑ South ☐ East ☐ West

Of: WILLIAMS ROAD

☑ Sup To Original

Latitude (Y): 34.1213328320879 (Format) 00 00000

Longitude (X): -83.876889099966 (Format) -00.00000

☐ Hit And Run?

| Unit # 1 | ☑ Driver ☐ Ped ☐ Bike | LAST NAME BELL | FIRST MARY | MIDDLE ANGELA | Unit # 2 | ☑ Driver ☐ Ped ☐ Bike | LAST NAME COHEN | FIRST MARK | MIDDLE ANDREW |
|---|---|---|---|---|---|---|---|---|---|
| ☑ Susp At Fault | | Address | | | | ☐ Susp At Fault | Address | | |

| City BUFORD | State GA | Zip 30519-4045 | DOB | City FLOWERY BRANCH | State GA | Zip 30542-5139 | DOB |
|---|---|---|---|---|---|---|---|

| Driver's License No. | Class C | State GA | Country UNITED STATES | Driver's License No. | Class C | State GA | Country UNITED STATES |
|---|---|---|---|---|---|---|---|

| Insurance Co. PROGRESSIVE | Policy No. 909690918 | Telephone No. | Insurance Co. TRAVELERS | Policy No. 6101355532031 | Telephone No. |
|---|---|---|---|---|---|

| Year 2005 | Make HYUNDAI | Model SANTA FE | Year 2004 | Make HONDA | Model ODYSSEY |
|---|---|---|---|---|---|

| VIN KM8SC13D55U003024 | Vehicle Color MAR | VIN 5FNRL18874B094951 | Vehicle Color WHI |
|---|---|---|---|

| Tag # WGY321 | State GA | County HALL | Year 2022 | Tag # RPA8204 | State GA | County GWINNETT | Year 2022 |
|---|---|---|---|---|---|---|---|

| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|

| ☐ Same as Driver | Owner's Last Name BELL | First LEWIS | Middle DANIEL | ☑ Same as Driver | Owner's Last Name COHEN | First MARK | Middle ANDREW |
|---|---|---|---|---|---|---|---|

| Address | | | | Address | | | |
|---|---|---|---|---|---|---|---|

| City FLOWERY BRANCH | State GA | Zip 30542-5043 | City SUGAR HILL | State GA | Zip 30518-7876 |
|---|---|---|---|---|---|

| Removed By: HULSEY TOWING | ☐ Request ☑ List | Removed By: HULSEY TOWING | ☐ Request ☑ List |
|---|---|---|---|

| Alco Test: 1 | Type: | Results: 1 PASS | Drug Test: | Type: | Results: | Alco Test: 2 | Type: | Results: 06 | Drug Test: 2 | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 | First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 |
|---|---|---|---|---|---|

| Operator Contributing Factors: ___ 7 ___ 10 | Operator Contributing Factors: ___ 1 |
|---|---|

| Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 | Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 |
|---|---|---|---|

| Direction of Travel: 2 | Vehicle Maneuver: 10 | Non-Motor Maneuver: | Direction of Travel: 1 | Vehicle Maneuver: 10 | Non-Motor Maneuver: |
|---|---|---|---|---|---|

| Vehicle Class: 1 | Vehicle Type: 11 | Vision Obscured: 1 | Vehicle Class: 1 | Vehicle Type: 10 | Vision Obscured: 1 |
|---|---|---|---|---|---|

| Number of Occupants: 1 | Area of Initial Contact: 11 | Damage to Veh: 4 | Number of Occupants: 1 | Area of Initial Contact: 10 | Damage to Veh: 4 |
|---|---|---|---|---|---|

| Traffic-Way Flow: 1 | Road Comp: 2 | Road Character: 5 | Traffic-Way Flow: 1 | Road Comp: 2 | Road Character: 5 |
|---|---|---|---|---|---|

| Number of Lanes: 2 | Posted Speed: 45 | Work Zone: 0 | Number of Lanes: 2 | Posted Speed: 45 | Work Zone: 0 |
|---|---|---|---|---|---|

| Traffic Control: 6 | Device Inoperative: ☐ Yes ☑ No | Traffic Control: 6 | Device Inoperative: ☐ Yes ☑ No |
|---|---|---|---|

**Citation Information:**

| Citation # E04229664 | O.C.G.A. § 40-6-48 | Citation # | O.C.G.A. § |
|---|---|---|---|
| Citation # E04229665 | O.C.G.A. § 40-6-393(C) | Citation # | O.C.G.A. § |
| Citation # | O.C.G.A. § | Citation # | O.C.G.A. § |

| **COMMERCIAL MOTOR VEHICLES ONLY** | **COMMERCIAL MOTOR VEHICLES ONLY** |
|---|---|

| Carrier Name: | Carrier Name: |
|---|---|

| Address | City | State Zip | Address | City | State Zip |
|---|---|---|---|---|---|

| U.S. D.O.T. # | No. of Axles | G.V.W.R. | U.S. D.O.T. # | No. of Axles | G.V.W.R. |
|---|---|---|---|---|---|

| Cargo Body Type | Vehicle Config. | ☐ Interstate ☐ Intrastate | Fed. Reportable ☐ Yes ☐ No | Cargo Body Type | Vehicle Config. | ☐ Interstate ☐ Intrastate | Fed. Reportable ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

| C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No | C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No |
|---|---|---|---|

| Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No | Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No |
|---|---|---|---|

| Haz Mat Released? ☐ Yes ☐ No | Haz Mat Released? ☐ Yes ☐ No |
|---|---|

If YES: Name or four Digit Number from Diamond or Box: _____
One Digit Number from Bottom of Diamond: _____

If YES: Name or four Digit Number from Diamond or Box: _____
One Digit Number from Bottom of Diamond: _____

☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units    ☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units

COHEN 002

GDOT-523 (07/17)

## COLLISION FIELDS

| Manner of Collision: | 1 | Location at Area of Impact: | 1 | Weather: | 2 | Surface Condition: | 2 | Light Condition: | 1 |
|---|---|---|---|---|---|---|---|---|---|

## NARRATIVE

Vehicle #1 was proceeding south on Spout Springs Road when it crossed the centerline into the northbound lane and struck vehicle #2 that was northbound on Spout Springs Road on its driver's side. After impact, vehicle #1 rotated and came to rest facing north in the southbound lane while vehicle #2 rotated and came to rest facing south off the east shoulder of the road.

Witness Rebecca Hamrick stated she was southbound on Spout Springs Road behind vehicle #1 when she saw it travel across the centerline into the northbound lane and strike vehicle #2.

Witness Andolfo Baten stated he was southbound on Spout Springs Road behind Hamrick and didn't completely observe the crash but did stop to render aid.

On scene investigation recorded on video.

Further investigation by Specialized Collision Reconstruction Team.

## DIAGRAM

INDICATE NORTH

## PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle | Owner |
|---|---|
| | |

## WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| GEORGE, RICKY | | FLOWERY BR | GA | 30542 | |
| BATEN, ANDOLFO | | FLOWERY BR | GA | 30542 | |
| HAMRICK, REBECCA | | FLOWERY BR | GA | 30542 | |

## OCCUPANT INFORMATION

| 1 | Name (Last, First): BELL, MARY | | | | | Address: | | | BUFORD, GA 30519-4045 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 39 | Sex: F | Unit #: 1 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 1 | Air Bag: 1 | Injury: 2 | Taken for Treatment: 1 |
| | Injury Taken To: NEGMC-G | By: HALL EMS | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | | | |

| 2 | Name (Last, First): COHEN, MARK | | | | | Address: | | | FLOWERY BRANCH, GA 30542-5139 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 54 | Sex: M | Unit #: 2 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 1 | Injury: 1 | Taken for Treatment: 1 |
| | Injury Taken To: NEGMC-G | By: HALL EMS | EMS Notified Time: 12:22 | | EMS Arrival Time: 12:23 | | Hospital Arrival Time: 13:04 | | | |

## ADMINISTRATIVE

| Photos Taken: ☒ Yes ☐ No | By: TFC3 M. TALTON | *Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404)635-2963.* |
|---|---|---|
| Report By: TALTON, M #0444 | Agency: GSPB\POST | Report Date: 03/19/22 | Checked By: TUCKER, J.G. #0388 | Date Checked: 03/20/22 |

COHEN 003

**SUPPLEMENT**
**GEORGIA MOTOR VEHICLE CRASH REPORT**

| Agency Case Number:   C000811663-03 | Estimated Crash Date: 12/11/21 | Officer Name:   TALTON, M #0444 |
|---|---|---|

**NARRATIVE CONTINUED**

Driver #1 Mary Angela Bell, interviewed at Northeast Georgia Medical Center, stated she had left the residence at 6209 Spout Springs Road and was traveling south on Spout Springs Road back to her residence. Bell stated she could not recall the crash or what occurred to cause her to travel out of her lane.

Bell agreed to submit a voluntary blood sample for analysis. Bell's blood sample was obtained and secured by phlebotomist Amsh Kasireddy at 1510 hours.

COHEN 004

**SUPPLEMENT**
GEORGIA MOTOR VEHICLE CRASH REPORT

| Agency Case Number: C000811663-03 | Estimated Crash Date: 12/11/21 | Officer Name: TALTON, M #0444 |
|---|---|---|

**NARRATIVE CONTINUED**

On 12/15/2021 at 1410 hours I interviewed Ricky George at his residence after he called to report that he had witnessed the crash.

George stated that on 12/11/2021 he was northbound on Spout Springs Road behind vehicle #2 as they passed the entrance to Reunion Country Club. George stated he saw vehicle #1 begin to "fishtail" as it traveled southbound on Spout Springs Road. George stated that the driver of vehicle #1 lost control of the vehicle and it traveled into the northbound lane and struck vehicle #2.

George stated he was able to successfully maneuver around the crash vehicles without getting struck and came to a stop past the crash scene. George stated that after he regained his composure he observed that several people had stopped and were rendering aid so he decided to continue on to a scheduled engagement.

Interview recorded on video.

COHEN 005

GDOT-523 SUPP (07/17)

**SUPPLEMENT**
**GEORGIA MOTOR VEHICLE CRASH REPORT**

| Agency Case Number: C000811663-03 | Estimated Crash Date: 12/11/21 | Officer Name: TALTON, M #0444 |
|---|---|---|

**NARRATIVE CONTINUED**

In a report dated 01/20/2022 from the Georgia Bureau of Investigation Division of Forensic Sciences, the blood sample collected from driver #1 was negative for alcohol.

An addi ional toxicology report dated 02/18/2022 from the Georgia Bureau of Investigation Division of Forensic Sciences indicated the blood sample collected from driver #1 was positive for Ketamine.

Medical records obtained from Northeast Georgia Medical Center indicate driver #1 was provided Ketamine after arrival at their facility and prior to her voluntary blood sample being obtained.

Warrants secured for the listed charges.

COHEN 006

GDOT-523 SUPP (07/17)



Spout Springs Road

Vehicles shown at area of final rest.

**GDOT-523 SUPP (07/17)**

# EXHIBIT 2

## GEORGIA DEATH CERTIFICATE

State File Number **2021GA000110689**

| 1. DECEDENT'S LEGAL FULL NAME (First, Middle, Last)<br>MARK ANDREW COHEN | | 1a. IF FEMALE, ENTER LAST NAME AT BIRTH | 2. SEX<br>MALE | 2a. DATE OF DEATH (Mo., Day, Year)<br>ACTUAL DATE OF DEATH 12/11/2021 |
|---|---|---|---|---|

| 3. SOCIAL SECURITY NUMBER | 4a. AGE (Years)<br>54 | 4b. UNDER 1 YEAR<br>Mos. / Days | 4c. UNDER 1 DAY<br>Hours / Mins. | 5. DATE OF BIRTH (Mo., Day, Year) |
|---|---|---|---|---|

| 6. BIRTHPLACE<br>GEORGIA | 7a. RESIDENCE - STATE<br>GEORGIA | 7b. COUNTY<br>HALL | | 7c. CITY, TOWN<br>FLOWERY BRANCH |
|---|---|---|---|---|

| 7d. STREET AND NUMBER | | 7e. ZIP CODE<br>30542 | 7f. INSIDE CITY LIMITS?<br>NO | 8. ARMED FORCES?<br>NO |
|---|---|---|---|---|

| 8a. USUAL OCCUPATION<br>TRUCK DRIVER | 8b. KIND OF INDUSTRY OR BUSINESS<br>COURIER |
|---|---|

| 9. MARITAL STATUS<br>DIVORCED | 10. SPOUSE NAME | 11. FATHER'S FULL NAME (First, Middle, Last)<br>OTTO LOUIS COHEN |
|---|---|---|

| 12. MOTHER'S MAIDEN NAME (First, Middle, Last)<br>EMILY ELLENE WARREN | 13a. INFORMANT'S NAME (First, Middle, Last)<br>EMILY COHEN | 13b. RELATIONSHIP TO DECEDENT<br>DAUGHTER |
|---|---|---|

| 13c. MAILING ADDRESS<br>BUFORD GEORGIA 30519 | 14. DECEDENT'S EDUCATION<br>HIGH SCHOOL GRADUATE OR GED COMPLETED |
|---|---|

| 15. ORIGIN OF DECEDENT (Spanish/Hispanic/Latino)<br>NO, NOT SPANISH/HISPANIC/LATINO | 16. DECEDENT'S RACE (White, Black, American Indian, etc.) (Specify)<br>WHITE |
|---|---|

| 17a. IF DEATH OCCURRED IN HOSPITAL<br>EMERGENCY ROOM/OUTPATIENT | 17b. IF DEATH OCCURRED OTHER THAN HOSPITAL (Specify) |
|---|---|

| 18. HOSPITAL OR OTHER INSTITUTION NAME (If not in either give street and no.)<br>NORTH EAST GA MED CTR. | 19. CITY, TOWN or LOCATION OF DEATH<br>GAINESVILLE | 20. COUNTY OF DEATH<br>HALL |
|---|---|---|

| 21. METHOD OF DISPOSITION (specify)<br>CREMATION | 22. PLACE OF DISPOSITION<br>ENTERPRISE CREMATORY 4400 S LEE STREET BUFORD GEORGIA 30518 | 23. DISPOSITION DATE (Mo., Day, Year)<br>12/14/2021 |
|---|---|---|

| 24a. EMBALMER'S NAME | 24b. EMBALMER LICENSE NO. | 25. FUNERAL HOME NAME<br>FLANIGAN FUNERAL HOME |
|---|---|---|

| 25a. FUNERAL HOME ADDRESS<br>4400 S LEE STREET BUFORD GEORGIA 30518 |
|---|

| 26a. SIGNATURE OF FUNERAL DIRECTOR<br>JUNIOR E FLANIGAN | 26b. FUN. DIR. LICENSE NO<br>2818 | AMENDMENTS |
|---|---|---|

| 27. DATE PRONOUNCED DEAD (Mo., Day, Year)<br>12/11/2021 | 28. HOUR PRONOUNCED DEAD<br>13:06 MILITARY |
|---|---|

| 29a. PRONOUNCER'S NAME<br>ETHAN R ROGERS | 29b. LICENSE NUMBER<br>59926 | 29c. DATE SIGNED<br>12/11/2021 |
|---|---|---|

| 30. TIME OF DEATH<br>13:06 MILITARY | 31. WAS CASE REFERRED TO MEDICAL EXAMINER<br>YES |
|---|---|

| 32. Part I. Enter the chain of events-diseases, injuries, or complications that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, Or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Approximate interval between onset and death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | A  **BLUNT CHEST TRAUMA** | **SECS TO MINS** |
| | Due to, or as a consequence of | |
| | B | |
| | Due to, or as a consequence of | |
| | C | |
| | Due to, or as a consequence of | |
| | D | |

| Part II. Enter significant conditions contributing to death but not related to cause given in Part 1A. If female, indicate if pregnant or birth occurred within 90 days of death. | 33. WAS AUTOPSY PERFORMED?<br>NO | 34. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? |
|---|---|---|

| 35. TOBACCO USE CONTRIBUTED TO DEATH<br>NO | 36. IF FEMALE (range 10-54) PREGNANT<br>NOT APPLICABLE | 37. ACCIDENT, SUICIDE, HOMICIDE, UNDETERMINED (Specify)<br>ACCIDENT |
|---|---|---|

| 38. DATE OF INJURY (Mo., Day, Year)<br>12/11/2021 | 39. TIME OF INJURY<br>12:15 PM | 40. PLACE OF INJURY (Home, Farm, Street, Factory, Office, Etc.) (Specify)<br>STREET | 41. INJURY AT WORK? (Yes or No)<br>NO |
|---|---|---|---|

| 42. LOCATION OF INJURY (Street, Apartment Number, City or Town, State, Zip, County)<br>WILLIAMS ROAD & SPOUT SPRINGS ROAD FLOWERY BRANCH GEORGIA 30542 HALL |
|---|

| 43. DESCRIBE HOW INJURY OCCURRED<br>MVA - ANOTHER VEHICLE HIT DRIVERS DOOR | 44. IF TRANSPORTATION INJURY<br>YES |
|---|---|

| 45. To the best of my knowledge death occurred at the time, date and place and due to the cause(s) stated. Medical Certifier (Name, Title, License No.) | 46. On the basis of examination and/or investigation, in my opinion death occurred at the time, and place and due to the cause(s) stated. Medical Examiner/Coroner (Name, Title, License No.)<br>/S/ KEVIN WETZEL CORONER |
|---|---|

| 45a. DATE SIGNED (Mo., Day, Year) | 45b. HOUR OF DEATH | 46a. DATE SIGNED (Mo., Day, Year)<br>01/26/2022 | 46b. HOUR OF DEATH<br>13:06 MILITARY |
|---|---|---|---|

| 47. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH<br>KEVIN WETZEL 2030 MEMORIAL PARK ROAD GAINESVILLE GEORGIA 30504 |
|---|

| 48. REGISTRAR (Signature)<br>/S/ CHRISTOPHER JP HARRISON | 49. DATE FILED - REGISTRAR (Mo., Day, Year)<br>01/31/2022 |
|---|---|

Form 3903 (Rev. 04/2012), GEORGIA DEPARTMENT OF PUBLIC HEALTH

736103

COHEN 00322

**Scanned with CamScanner**

# EXHIBIT 3

T & C INSURANCE
2590 HAMILTN MILL#101
BUFORD, GA 30519



**Policy Number:  909690918**

Underwritten by:
Progressive Mountain Insurance Co
September 13, 2021
Policy Period:  Oct 8, 2021 - Apr 8, 2022
Page 1 of  2

LEWIS D BELL

████████████████
BUFORD, GA 30519

**1-678-889-2150**
**T & C INSURANCE**
Contact your agent for personalized service.

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-274-4499**
To report a claim.

# Auto Insurance
# Coverage Summary
This is your Renewal
Declarations Page

The coverages, limits and policy period shown apply only if you pay for this policy to renew.

Your coverage begins on October 8, 2021 at 12:01 a.m.  This policy expires on April 8, 2022 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage.  The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle.  The policy contract is form 9611A GA (05/15).  The contract is modified by forms A226 GA (11/16) and A263 GA (09/18).

## Drivers and resident relatives

|  | Age | Gender | Marital Status |
|---|---|---|---|
| Lewis D Bell | 64 | Male | Married |
| Additional information: | Named insured | | |
| Mary A Bell | 39 | Female | Married |

## Outline of coverage

**2005 HYUNDAI SANTA FE 4 DOOR WAGON**
VIN: **KM8SC13D55U003024**
Garaging ZIP Code: 30519
Primary use of the vehicle:  Commute

|  | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $602 |
| Bodily Injury Liability | $25,000 each person/$50,000 each accident | | |
| Property Damage Liability | $25,000 each accident | | |
| Uninsured Motorist - Added On | | | 108 |
| Uninsured Motorist Bodily Injury | $25,000 each person/$50,000 each accident | | |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | |
| Comprehensive | Actual Cash Value | $500 | 18 |
| Roadside Assistance | | | 30 |
| Total premium for 2005 HYUNDAI | | | **$758** |

Form 6489 GA (06/18)

Continued

Policy Number:  909690918

Lewis D Bell

Page 2  of 2

### 2008 HONDA CIVIC 4 DOOR SEDAN

VIN: **2HGFA16958H338165**

Garaging ZIP Code: 30519

Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: Less than 1 month

Information regarding your vehicle history (prior damage, theft or title issues) has impacted how we determine your premium.

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $805 |
| Bodily Injury Liability | $25,000 each person/$50,000 each accident | | |
| Property Damage Liability | $25,000 each accident | | |
| Uninsured Motorist - Added On | | | 224 |
| Uninsured Motorist Bodily Injury | $25,000 each person/$50,000 each accident | | |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | |
| Comprehensive | Actual Cash Value | $500 | 40 |
| Collision | Actual Cash Value | $500 | 368 |
| Rental Reimbursement | up to $40 each day/maximum 30 days | | 45 |
| Roadside Assistance | | | 22 |
| Total premium for 2008 HONDA | | | **$1,504** |
| **Total 6 month policy premium** | | | **$2,262.00** |
| Discount if paid in full | | | -172.00 |
| **Total 6 month policy premium if paid in full** | | | **$2,090.00** |

## Premium discounts

| Policy | |
|---|---|
| 909690918 | Multi-Car, Continuous Insurance: Diamond and Paperless |

## Company officers

*[signature]*

Secretary

## For company use only

| Year | Make | Model | VIN | Make | Model | Style | Auxiliary |
|---|---|---|---|---|---|---|---|
| 2005 | HYUNDAI | SANTA FE | KM8SC13D55U003024 | HY | SF | 56 | XX |
| 2008 | HONDA | CIVIC | 2HGFA16958H338165 | HD | CV | 44 | XX |

# EXHIBIT 4



Seth Friedman
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
Seth.Friedman@lewisbrisbois.com
Direct: 404.991.2184

April 17, 2023                                                           LBBS No.  28534.12

***Via E-mail: matt@butlerfirm.com; jeb@butlerfirm.com; kerri@butlerfirm.com***
Matthew R. Kahn, Esq.
Jeb Butler, Esq.
Butler Kahn
10 Lenox Pointe
Atlanta, GA  30324

|  | | |
|---|---|---|
| Re: | Your Clients: | Emily Cohen and Jacob Cohen, as the surviving children of Mark Andrew Cohen, and Janice Cohen as the administrator of the estate of Mark Andrew Cohen |
| | Date of Incident: | December 11, 2021 |
| | Insurer: | Progressive Mountain Insurance Company |
| | Court: | State Court of Gwinnett County, Georgia, CAFN 23C00222S2 |
| | Claim No.: | 21-7399030 |

Dear Messrs. Kahn and Butler:

I have been retained by Progressive Mountain Insurance Company ("Progressive") in regards to the above referenced matter. Going forward all correspondence regarding this matter intended for Progressive must be sent directly to me. Do not send any correspondence intended for Progressive regarding this matter, including but not limited to any potential future demands, to anyone but me.

I am writing in response to the Offer of Settlement Pursuant to O.C.G.A. § 9-11-68 in the amount of $6,326,057.00, you sent on March 21, 2023 ("Offer of Settlement"), in the above referenced matter. In summary, beginning in March 2022, Progressive offered its $25,000 limits to your clients in order to resolve the claims at issue here. While you sent a demand for Progressive's $25,000 policy limits on February 16, 2023 ("February Demand"), it was sent prior to answer being filed by Progressive's insured, Mary Bell. The February Demand was required to comply with O.C.G.A. §9-11-67.1 which it plainly did not, as discussed in detail below. Thus, the February Demand was invalid. As discussed below, Progressive has acted responsibly and in good faith in handling this claim, and there is no basis to claim that Progressive has any exposure beyond its $25,000 policy limits.

As an initial matter, Progressive first received notice of this claim on or about December 14, 2021, just three days after the incident at issue here. Progressive promptly investigated and worked to determine who the proper legal representatives would be for Mr. Cohen. On March 3, 2022, Progressive sent a letter to Emily Cohen offering Progressive's $25,000 limits to her in order to settle

Matt Kahn
April 17, 2023
Page 2

the wrongful death and estate claims for this matter. Progressive did not receive a response to that letter. Therefore, on October 20, 2022, Progressive yet again sent a letter to Emily Cohen tendering its $25,000 limits. The letter also asked Ms. Cohen for a death certificate, the name of legal heirs, if an estate has been set up and a copy of the letters of administration for the estate. Progressive never received a response to that letter either.

Based on my review of the pleadings in this matter, it appears your clients filed suit on January 12, 2023. An answer was filed by Ms. Bell on February 28, 2023. However, you sent the February Demand to Progressive on February 16, 2023, twelve (12) days before Ms. Bell's answer was filed. Yet, the February demand states the answer date is February 14, 2023. In reviewing the docket, it appears that your client's uninsured motorist carrier, Travelers, filed an answer on February 14, 2023. However, there is no doubt that Ms. Bell's answer was not filed until February 28, 2023.

Since Ms. Bell's answer was not filed until February 28, 2023, the February Demand, sent twelve days earlier, was required to comply with O.C.G.A. § 9-11-67.1. The February Demand failed to comply with O.C.G.A. § 9-11-67.1 in the following respects:

1. O.C.G.A. § 9-11-67.1(a)(1)(A) requires the offer to be open for thirty (30) days, but the February Demand had a fourteen (14) day deadline.
2. O.C.G.A. § 9-11-67.1(a)(1)(C) requires the offer to identify the party or parties your clients would release, but exhibits with that information were contained in an invalid internet link.
3. O.C.G.A. § 9-11-67.1(a)(1)(E) requires the offer to identify which claims would be released but the exhibits to the letter which contained the requirements of the release terms were contained in an invalid internet link.
4. The letter does not indicate whether it includes all medical or other records in your possession incurred as a result of the subject claim that are sufficient to allow Progressive to evaluate the claim in violation of O.C.G.A. § 9-11-67.1(a)(2).
5. The letter requires an affidavit that goes beyond just stating that all policies that may provide coverage for Ms. Bell have been disclosed in violation of O.C.G.A. § 9-11-67.1(a)(3). Specifically, the letter forbids the use of the word "accident", and requires that the affidavit state what efforts Progressive took to locate other policies. That is plainly beyond what is required by the statute.
6. The letter also states that providing a non-conforming release will be a counteroffer, in violation of O.C.G.A. § 9-11-67.1(d).
7. The letter requires payment within fourteen days, in violation of O.C.G.A. § 9-11-67.1(g), which states the payment date shall not be less than 40 days from receipt of the offer.

Progressive did send a letter to your office on March 8, 2023 pointing out many of these deficiencies in the February Demand, and stating that it could not access the internet link for the exhibits. However, in response, Progressive received the Offer of Settlement.

At this point, Progressive has not been presented with a valid offer to settle within its limits. Thus, under Georgia law, there is not even a potential claim that Progressive has any liability beyond the $25,000 limits it has been pro-actively offering since March 2022. First Acceptance Ins. Co. of Ga. v. Hughes, 305 Ga. 489, 489, 826 S.E.2d 71, 73 (2019)("an insurer's duty to settle arises only

Matt Kahn
April 17, 2023
Page 3

when the injured party presents a valid offer to settle within the insured's policy limits.")

Once again, Progressive is hereby offering its $25,000 in available limits for this matter. Assuming you will accept Progressive' offer, Progressive is prepared to provide an affidavit of no other coverage, and is agreeable to a limited liability release pursuant to O.C.G.A. § 33-24-41.1.

If your clients again refuse to accept Progressive's tender of the full policy limits, Progressive will vigorously defend Ms. Bell in the liability case, as well as any potential future claim that Progressive has any exposure in excess of its policy limits.

I look forward to your clients accepting Progressive's $25,000 in policy limits and putting this matter behind them. If you have any questions or wish to discuss, please do not hesitate to contact me.

Sincerely,

Seth Friedman of
LEWIS BRISBOIS BISGAARD & SMITH LLP

SF

Cc:    Jason Darneille, Esq. (via email only jdarneille@gwdlawfirm.com)

# EXHIBIT 5

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**1/12/2023 10:02 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN, | |
| | Civil Action File No.: |
|      Plaintiff, | |
| vs. | 23-C-00222-S2 |
| MARY ANGELA BELL, | |
|      Defendant. | |

## COMPLAINT

Plaintiff in the above-styled action respectfully files this Complaint, showing the Court the following:

## **PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiff Emily Cohen:

(a)  is Mark Cohen's surviving child.

(b)  brings this wrongful death claim as Mark Cohen's surviving child.

(c)  is a Georgia resident and submits herself to the jurisdiction of this Court.

2.

Plaintiff Jacob Cohen:

(a)  is Mark Cohen's surviving child.

Page 1 of 5

(b) brings this wrongful death claim as Mark Cohen's surviving child.

(c) is a Georgia resident and submits himself to the jurisdiction of this Court.

3.

Plaintiff Janice Cohen:

(a) is Mark Cohen's ex-wife and the mother of his surviving children.

(b) brings this case as the administrator of the estate of Mark Cohen.[1]

(c) is a Georgia resident and submits herself to the jurisdiction of this Court.

4.

Defendant Mary Angela Bell ("Defendant") a resident of 4110 Tuggle Road, Buford, Gwinnett County, Georgia 30519, and is subject to the jurisdiction of this court.

5.

Jurisdiction is proper.

6.

Venue is proper in this Court because Defendant resides in Gwinnett County.

## **FACTS**

7.

On December 11, 2021, Defendant negligently drove a motor vehicle into a vehicle driven by Mark Andrew Cohen.

8.

As a result, Mark was killed.

---

[1] *See* Letters of Administration (Ex. A).

## **DAMAGES**

9.

Mark Andrew Cohen lost his life.  *See* O.C.G.A. § 51-4-2(a).

10.

Defendant is liable for Mr. Cohen's pain and suffering and for various other expenses. O.C.G.A. § 9-2-41.

11.

Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorney's fees because Defendant has acted in bad faith and has been stubbornly litigious. O.C.G.A. § 13-6-11.

## **CONCLUSION**

Plaintiffs respectfully request:

a)   that process issue as provided by law;

b)   that Plaintiffs have trial by jury against Defendant;

c)   that judgment be entered in favor of Plaintiffs and against Defendant;

d)   that Plaintiffs be awarded damages in amounts to be shown at trial; and

e)   such other relief as this Court deems just.

Respectfully submitted this 12th day of January 2023.

[SIGNATURE ONLY ON FOLLOWING PAGE]

BUTLER | KAHN

BY: ___/s/ Matthew R. Kahn___
     JAMES E. BUTLER, III
      Georgia Bar No. 116955
     MATTHEW R. KAHN
      Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646          **ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

**IN THE PROBATE COURT OF <u>HALL</u> COUNTY**
**STATE OF GEORGIA**

HALL COUNTY GA

IN RE: ESTATE OF                    )

2022 JUL 18 PM 3: 23

<u>MARK ANDREW COHEN</u>,           )          ESTATE NO. <u>E-22-386</u>
DECEASED                           )

### LETTERS OF ADMINISTRATION
*[Bond waived and/or certain powers granted]*

At a regular term of probate court, this Court granted an order allowing **<u>Janice Aleta Cohen</u>,** to qualify as administrator of the above-named decedent, who was domiciled in this county at the time of his death or was domiciled in another state but owned property in this county at the time of his death, and that upon so doing, letters of administration be issued to such personal representative.

THEREFORE, the said administrator, having taken the oath of office and complied with all necessary prerequisites of the law, is legally authorized to discharge all the duties and exercise all powers of personal representative, according to Georgia law. In addition this Court:

*[Initial all that apply]*

(a) ***POWERS GRANTED***: Grants to the administrator all of the powers contained in O.C.G.A. § 53-12-261, except the administrator(s) shall not be authorized to bind the estate by any warranty in any conveyance or contract in violation of O.C.G.A. § 53-8-14 (a).

(b) ***REPORTS WAIVED***: Grants to the administrator the specific power to serve without making and filing inventory, and without filing any annual or other returns or reports to any court.

(c) ***BOND WAIVED***: Waives the specific requirement to post bond.

(d) ***STATEMENTS WAIVED***: Grants to the administrator the specific power to serve without furnishing to the heirs statements of receipts and disbursements.

IN TESTIMONY WHEREOF, I have hereunto affixed my signature as judge of the probate court of said county and the seal of this office this 18th day of June, 2022.

Patti Chaloio Rano

Judge of the Probate Court

*Note:*   *The following must be signed if the judge does not sign the original of this document:*

Issued by:

_____

Clerk of the Probate Court

GPCSF 3

STATE OF GEORGIA
COUNTY OF HALL
I, Judge/Clerk Probate Court in and for said County do hereby certify that the within is a true and correct copy of the original as it appears on file in this office. Witness the official seal and signature of Probate Court this 20 day of July, 2022

Jodie A. Brian

Judge, Clerk Hall County Probate Court

Eff. January 2021

[12]

# EXHIBIT 6

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN, | Civil Action File No.: 23-C-00222-S2 |
| Plaintiff, | |
| vs. | |
| MARY ANGELA BELL, | |
| Defendant. | |

**NOTICE OF LAWSUIT AND REQUEST FOR**
**WAIVER OF SERVICE OF SUMMONS, COMPLAINT, AND DISCOVERY**

TO:    Mary Angela Bell

Buford, GA 30519

A lawsuit has been commenced against you. A copy of the complaint, civil filing form, deposition notice, interrogatories, document requests, and requests for admission are attached to this notice. The complaint has been filed in the State Court of Gwinnett County for the State of Georgia and has been assigned *Civil Action File Number 23-C-00222-S2*.

This is not a formal summons or notification from the court, but rather my request pursuant to Code Section 9-11-4 of the Official Code of Georgia Annotated that you sign and return the enclosed Waiver of Service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice of Lawsuit and Request for Waiver of Service of Summons is sent.

1

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

I enclose a stamped and addressed envelope for your use. An extra copy of the Waiver of Service is also attached for your records. YOU ARE ENTITLED TO CONSULT WITH YOUR ATTORNEY REGARDING THIS MATTER.

If you comply with this request and return the signed Waiver of Service, the waiver will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed except that you will not be obligated to answer or otherwise respond to the complaint within 60 days from the date designated below as the date on which this notice is sent.

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Georgia Rules of Civil Procedure and then, to the extent authorized by those rules, I will ask the court to require you to pay the full cost of such service. In that connection, please read the statement concerning the duty of parties to avoid unnecessary costs of service of summons, which is set forth on the Notice of Duty to Avoid Unnecessary Costs of Service of Summons enclosed herein.

I affirm that this Notice of Lawsuit and Request for Waiver of Service of Summons is being sent to you on behalf of the Plaintiff on this 12th day of January 2023.

BUTLER | KAHN

BY: _/s/ Matthew R. Kahn_
    JAMES E. BUTLER, III
    Georgia Bar No. 116955
    MATTHEW R. KAHN
    Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                                    **ATTORNEYS FOR PLAINTIFF**

2

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

     Plaintiff,

vs.

MARY ANGELA BELL,

     Defendant.

Civil Action File No.: 23-C-00222-S2

## NOTICE OF DUTY TO AVOID UNNECESSARY
## COSTS OF SERVICE OF SUMMONS

TO:   Mary Angela Bell

     █████████

     Buford, GA 30519

     Subsection (d) of Code Section 9-11-4 of the Official Code of Georgia Annotated

requires certain parties to cooperate in saving unnecessary costs of service of the summons and

the pleadings. A defendant located in the United States who, after being notified of an action and

asked by a plaintiff located in the United States to waive service of a summons, fails to do so will

be required to bear the cost of such service unless good cause be shown for such defendant's

failure to sign and return the waiver.

     It is not good cause for a failure to waive service that a party believes that the complaint

is unfounded, or that the action has been brought in an improper place or in a court that lacks

jurisdiction over the subject matter of the action or over its person or property. A party who

waives service of the summons retains all defenses and objections (except any relating to the

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

summons or to the service of the summons) and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must, within the time specified on the waiver form, serve on the plaintiff's attorney a response to the complaint and also must file a signed copy of the response with the court. If the answer is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

I affirm that this Notice of Duty to Avoid Unnecessary Costs of Service of Summons is being sent to you on behalf of the Plaintiff on this 12th day of January 2023.

BUTLER | KAHN

BY: _/s/ Matthew R. Kahn_
      JAMES E. BUTLER, III
      Georgia Bar No. 116955
      MATTHEW R. KAHN
      Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646

**ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN,<br><br>     Plaintiff,<br><br>vs.<br><br>MARY ANGELA BELL,<br><br>     Defendant. | Civil Action File No.: 23-C-00222-S2 |

## WAIVER OF THE SERVICE OF SUMMONS

TO:   Mary Angela Bell

      █████████

      Buford, GA 30519

I acknowledge receipt of your request that I waive service of a summons in the action of *Emily Cohen, et al. v. Mary Angela Bell,* Civil Action File No. 23-C-00222-S2 in the State Court of Gwinnett County of the State of Georgia. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure.

Page 5 of 8

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

I will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me if an answer is not served upon you within 60 days after the date this waiver was sent, or within 90 days after that date if the request for the waiver was sent outside the United States.

_____    _____
Mary Angela Bell                                    Date

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the following documents were served today via USPS Certified Mail, Return Receipt Requested, Receipt No. 9414711206203566731824:

1. *Notice of Lawsuit and Request for Waiver of Service of Summons and Complaint;*

2. *Notice of Duty to Avoid Unnecessary Costs of Service of Summons;*

3. *Waiver of the Service of Summons;*

4. *Plaintiffs' First Interrogatories to Defendant;*

5. *Plaintiffs' First Requests for Production of Documents to Defendant;*

6. *Plaintiffs' First Requests for Admission to Defendant;*

7. *Notice of Video Deposition of Defendant;*

8. *Plaintiffs' First Interrogatories to Travelers Property Casualty Company of America;*

9. *Plaintiffs' First Requests for Production of Documents to Travelers Property Casualty Company of America; and*

10. *Plaintiffs' First Requests for Admission to Travelers Property Casualty Company of America.*

These documents were sent to the following recipient:

Mary Angela Bell

Buford, GA 30519

This 12th day of January 2023.

BUTLER | KAHN

BY:  ___/s/ Matthew R. Kahn___
          JAMES E. BUTLER, III
          Georgia Bar No. 116955
          MATTHEW R. KAHN

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

10 Lenox Pointe                                      Georgia Bar No. 833443
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                          **ATTORNEYS FOR PLAINTIFF**

Page 8 of 8

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

     Plaintiffs,

vs.

MARY ANGELA BELL,

     Defendant.

Civil Action File No.: 23-C-00222-S2

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

Plaintiffs serve these Requests for Admission upon the above-named Defendant and request that they be fully admitted in writing under oath within the time provided by law. These Requests for Admission are served pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-11-26 and 9-11-36.

**Note that a request for admission is *not* objectionable on the grounds that it calls for a legal conclusion or contains a mixed question of law and fact.** To the contrary, "requests for admission under O.C.G.A. § 9–11–36(a) are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case." *G.H. Bass & Co. v. Fulton Cnty. Bd. of Tax Assessors*, 268 Ga. 327, 329 (1997).

<u>As to timing</u>: If you need a reasonable extension of time to complete your responses and you timely notify the undersigned of that need, Plaintiffs will agree to a reasonable extension. However, *Defendant must agree to provide all discoverable and properly-requested evidence by that extended deadline, except for evidence withheld pursuant to claims of privilege in*

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

*compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiffs

seek seeks to avoid are protracted discovery disputes and motions practice. For that reason,

Plaintiffs will agree to any reasonable extension as long as, by the extended deadline, Defendant

responds as specified above so that no more back-and-forth will be required before Plaintiffs are

in possession of all properly-requested, non-privileged evidence and information.

Each matter for which an admission is required shall be deemed admitted unless, within

the time allowed by law after service of these requests, you serve Plaintiffs with a written answer

or objection to such matter. If you fail to admit the genuineness of any document or the truth of

any matter addressed below, and Plaintiffs later prove the genuineness of that document or truth

of that matter, Plaintiffs will seek an Order from the Court requiring you to pay the reasonable

fees and expenses incurred in making that proof.

If you would like an electronic copy of these requests in Microsoft Word format so that

you can type your response underneath the request to which it responds, please let us know and

we will provide a Word version for your convenience.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. **"Collision"** or **"wreck"** refers to the motor vehicle Collision between Mark Andrew
   Cohen and Mary Angela Bell on December 11, 2021, in Hall County, Georgia.

2. **"Document"** includes, but is not limited to, emails, correspondence, reports,
   memoranda, publications, notes, audio or video recordings, pictures, drawings,
   photographs, maps, written calculations, and other communications whether electronic or
   'hard copy.'

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

3.   **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4.   **"Incident"** or **"subject incident"** refers to the incident made the basis of the Complaint.

5.   **"Identify"**

         a)   With respect to any *person*, **"identify"** means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

         b)   With respect to any *document*, **"identify"** means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6.   **"Plaintiff(s)"** refers to Emily Cohen and Jacob Cohen.

     **"You"** or **"your"** refers to the Defendant to whom these requests are addressed.

## REQUESTS FOR ADMISSION

### *The Collision*

1.

You caused the December 11, 2021 Collision.

2.

You partially caused the Collision.

3.

You were at fault for causing the Collision.

4.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

You were partially at fault for causing the Collision.

5.

You were negligent.

6.

Your negligence caused the Collision.

7.

You failed to keep a proper lookout ahead of you, in violation of Georgia law.

8.

Mark Andrew Cohen did not cause the Collision.

9.

Mark Andrew Cohen was not at fault for causing the Collision.

10.

Mark Andrew Cohen was not negligent.

11.

You were hurt in the Collision.

12.

Mark Andrew Cohen was killed in the Collision.

13.

Mark Andrew Cohen was seriously injured in the Collision.

### *Rules of the Road*

14.

Just before the Collision, you crossed the double yellow line on Spout Springs Road.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

15.

At the time of the Collision, your vehicle had already crossed the double yellow center line on Spout Springs Road.

16.

At the time of the Collision, you were distracted by an electronic device.

17.

At the time of the Collision, you were driving above forty-five miles per hour.

18.

At the time of the Collision, you were not paying attention.

**_Pattern of Dangerous Driving_**

19.

You have been arrested for possession of a controlled substance.

20.

You have been arrested for possession of a controlled substance on multiple occasions.

21.

You have been arrested for possession of marijuana.

22.

You have been arrested for possession of marijuana on multiple occasions.

23.

You have been arrested for felony possession of methamphetamine.

24.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

You have been arrested for felony possession of methamphetamine on multiple occasions.

25.

You have operated a motor vehicle with illegal substances in your car on at least one occasion.

26.

You have operated a motor vehicle with illegal substances in your car on multiple occasions.

27.

You have operated a motor vehicle under the influence of drugs or alcohol on at least one occasion.

28.

You have operated a motor vehicle under the influence of drugs or alcohol on multiple occasions.

### *Your Resident Relatives*[1]

29.

On the date of the Collision, you resided at 4110 Tuggle Road, Buford, Georgia 30519.

30.

On the date of the Collision, you resided with one or more relatives.

31.

---

[1] The automobile liability policies of resident relatives may provide insurance coverage. *See* Jenkins & Miller, Georgia Automobile Insurance Law § 12:5. Therefore, this is a permissible subject of discovery. O.C.G.A. § 9-11-26(b)(2).

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

On the date of the Collision, at least one of the relatives who resided with you owned a vehicle.

32.

At the time of the Collision, you shared a residence with other people who were age sixteen or older.

33.

You would rather an insurance company pay Plaintiffs for their claims than you personally pay Plaintiffs from your own private checking account.

***Procedural***

34.

You have been correctly named in this case insofar as your legal name is concerned.

35.

You have been properly served as a party defendant.

36.

Process is sufficient with regard to you in this case.

37.

Service of process is sufficient with regard to you in this case.

38.

This Court has jurisdiction over the subject matter of this case.

39.

This Court has personal jurisdiction over you.

40.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Venue is proper in this Court.

41.

Plaintiffs have not failed to join an indispensable party under O.C.G.A. § 9-11-19.

42.

You will provide Plaintiffs with copies of all medical records you receive from entities other than Plaintiffs (as by third-party request, subpoena, or other means).

43.

Admit that you saw and read these Requests for Admission before your attorney submitted them.

44.

You affirm that your responses to these Requests for Admissions are true and accurate.

This 12th day of January 2023.

BUTLER | KAHN

BY: _/s/ Matthew R. Kahn_
   JAMES E. BUTLER, III
   Georgia Bar No. 116955
   MATTHEW R. KAHN
   Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646     **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**1/12/2023 10:02 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Emily Cohen and Jacob Cohen as the surviving
children of Mark Andrew Cohen, and Janice
Cohen, as the administrator of the estate of
Mark Andrew Cohen

CIVIL ACTION    23-C-00222-S2
NUMBER:_____

PLAINTIFF

VS.

Mary Angela Bell

▮▮▮▮▮▮▮▮▮▮

Buford, Gwinnett County, Georgia 30519

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

Matthew R. Kahn
Butler | Kahn
10 Lenox Pointe
Atlanta, GA 30324

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

12th day of January, 2023

This _____ day of _____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-00222-S2
1/12/2023 10:02 AM
TIANA P. GARNER, CLERK

**General Civil and Domestic Relations Case Filing Information Form**

☐ Superior or ☒ State Court of Gwinnett State Court _____ **County**

| For Clerk Use Only | 23-C-00222-S2 |
|---|---|
| Date Filed _____ <br> **MM-DD-YYYY** | Case Number _____ |

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Cohen, Emily | | | | | Bell, Mary A | | | | |
| Last <br> Cohen, Jacob | First | Middle I. | Suffix | Prefix | Last <br> Travelers Property Casualty Company of America | First | Middle I. | Suffix | Prefix |
| Last <br> Cohen, Janice | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Matt Kahn _____ **State Bar Number** 833443 _____ **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

| General Civil Cases | Domestic Relations Cases |
|---|---|
| ☒ **Automobile Tort** | ☐ **Adoption** |
| ☐ **Civil Appeal** | ☐ **Contempt** |
| ☐ **Contempt/Modification/Other Post-Judgment** |    ☐ **Non-payment of child support, medical support, or alimony** |
| ☐ **Contract** | ☐ **Dissolution/Divorce/Separate Maintenance/Alimony** |
| ☐ **Garnishment** | ☐ **Family Violence Petition** |
| ☐ **General Tort** | ☐ **Modification** |
| ☐ **Habeas Corpus** |    ☐ **Custody/Parenting Time/Visitation** |
| ☐ **Injunction/Mandamus/Other Writ** | ☐ **Paternity/Legitimation** |
| ☐ **Landlord/Tenant** | ☐ **Support – IV-D** |
| ☐ **Medical Malpractice Tort** | ☐ **Support – Private (non-IV-D)** |
| ☐ **Product Liability Tort** | ☐ **Other Domestic Relations** |
| ☐ **Real Property** | |
| ☐ **Restraining Petition** | |
| ☐ **Other General Civil** | |

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____  _____
    **Case Number**                **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

        Plaintiffs,

vs.

MARY ANGELA BELL,

        Defendant.

Civil Action File No.: 23-C-00222-S2

---

### NOTICE OF VIDEO DEPOSITION OF DEFENDANT

TO:    Mary Angela Bell

       Buford, GA 30519

PLEASE TAKE NOTICE that Plaintiffs will take the deposition of **Mary Angela Bell** at

10:00 a.m., on **March 12, 2023**[1] at the offices of Butler Law Firm at 10 Lenox Pointe, Atlanta,

GA 30324. The deposition will be taken for all purposes of examination and all other purposes

permitted by the Georgia Civil Practice Act, including use at trial, upon cross-examination

because the witness is identified with the adverse party. The deposition will be taken before a

court reporter duly authorized by law to administer oaths and will be recorded on video by a

qualified videographer. The deposition will continue from day to day until complete.

[SIGNATURE ONLY ON FOLLOWING PAGE]

---

[1] This is an arbitrarily selected date, time, and place. The undersigned will work with opposing counsel to find a
date, time, and place of mutual availability for this deposition, provided that opposing counsel contacts our office
with reasonable alternative deposition dates at least two weeks before the date specified in this Notice.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

This 12th day of January 2023.

BUTLER | KAHN

BY: __*/s/ Matthew R. Kahn*__
     JAMES E. BUTLER, III
     Georgia Bar No. 116955
     MATTHEW R. KAHN
     Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646        **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

      Plaintiff,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

## WAIVER OF THE SERVICE OF SUMMONS

TO:   Mary Angela Bell

       Buford, GA 30519

I acknowledge receipt of your request that I waive service of a summons in the action of

*Emily Cohen, et al. v. Mary Angela Bell*, Civil Action File No. 23-C-00222-S2 in the State Court

of Gwinnett County of the State of Georgia. I have also received a copy of the complaint in the

action, two copies of this instrument, and a means by which I can return the signed waiver to you

without cost to me. I understand that I am entitled to consult with my own attorney regarding the

consequences of my signing this waiver.

I agree to save the cost of service of a summons and an additional copy of the complaint

in this lawsuit by not requiring that I be served with judicial process in the manner provided by

the Georgia Rules of Civil Procedure.

Page 5 of 8

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

       Plaintiff,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

---

## WAIVER OF THE SERVICE OF SUMMONS

TO:   Mary Angela Bell

      Buford, GA 30519

I acknowledge receipt of your request that I waive service of a summons in the action of *Emily Cohen, et al. v. Mary Angela Bell*, Civil Action File No. 23-C-00222-S2 in the State Court of Gwinnett County of the State of Georgia. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure.

Page 5 of 8

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**1/12/2023 10:02 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN, | |
| | Civil Action File No.: |
|     Plaintiff, | |
| vs. | 23-C-00222-S2 |
| MARY ANGELA BELL, | |
|     Defendant. | |

## COMPLAINT

Plaintiff in the above-styled action respectfully files this Complaint, showing the Court the following:

## PARTIES, JURISDICTION, AND VENUE

### 1.

Plaintiff Emily Cohen:

    (a) is Mark Cohen's surviving child.

    (b) brings this wrongful death claim as Mark Cohen's surviving child.

    (c) is a Georgia resident and submits herself to the jurisdiction of this Court.

### 2.

Plaintiff Jacob Cohen:

    (a) is Mark Cohen's surviving child.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

(b) brings this wrongful death claim as Mark Cohen's surviving child.

(c) is a Georgia resident and submits himself to the jurisdiction of this Court.

3.

Plaintiff Janice Cohen:

(a) is Mark Cohen's ex-wife and the mother of his surviving children.

(b) brings this case as the administrator of the estate of Mark Cohen.[1]

(c) is a Georgia resident and submits herself to the jurisdiction of this Court.

4.

Defendant Mary Angela Bell ("Defendant") a resident of 4110 Tuggle Road, Buford,

Gwinnett County, Georgia 30519, and is subject to the jurisdiction of this court.

5.

Jurisdiction is proper.

6.

Venue is proper in this Court because Defendant resides in Gwinnett County.

## **FACTS**

7.

On December 11, 2021, Defendant negligently drove a motor vehicle into a vehicle driven

by Mark Andrew Cohen.

8.

As a result, Mark was killed.

---

[1] *See* Letters of Administration (Ex. A).

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

## DAMAGES

9.

Mark Andrew Cohen lost his life. *See* O.C.G.A. § 51-4-2(a).

10.

Defendant is liable for Mr. Cohen's pain and suffering and for various other expenses. O.C.G.A. § 9-2-41.

11.

Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorney's fees because Defendant has acted in bad faith and has been stubbornly litigious. O.C.G.A. § 13-6-11.

## CONCLUSION

Plaintiffs respectfully request:

    a)  that process issue as provided by law;

    b)  that Plaintiffs have trial by jury against Defendant;

    c)  that judgment be entered in favor of Plaintiffs and against Defendant;

    d)  that Plaintiffs be awarded damages in amounts to be shown at trial; and

    e)  such other relief as this Court deems just.

Respectfully submitted this 12th day of January 2023.

[SIGNATURE ONLY ON FOLLOWING PAGE]

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

BUTLER | KAHN

BY: ___/s/ Matthew R. Kahn_____
        JAMES E. BUTLER, III
          Georgia Bar No. 116955
        MATTHEW R. KAHN
          Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                    **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

# EXHIBIT A

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE PROBATE COURT OF <u>HALL</u> COUNTY**
**STATE OF GEORGIA**

HALL CO.

IN RE: ESTATE OF                     )

2022 JUL 18 PM 3: 23

<u>MARK ANDREW COHEN,</u>         )     **ESTATE NO. <u>E-22-386</u>**
**DECEASED**                   )

### LETTERS OF ADMINISTRATION
*[Bond waived and/or certain powers granted]*

At a regular term of probate court, this Court granted an order allowing **Janice Aleta Cohen,** to qualify as administrator of the above-named decedent, who was domiciled in this county at the time of his death or was domiciled in another state but owned property in this county at the time of his death, and that upon so doing, letters of administration be issued to such personal representative.

    THEREFORE, the said administrator, having taken the oath of office and complied with all necessary prerequisites of the law, is legally authorized to discharge all the duties and exercise all powers of personal representative, according to Georgia law. In addition this Court:

*[Initial all that apply]*

(a)  *POWERS GRANTED*: Grants to the administrator all of the powers contained in O.C.G.A. § 53-12-261, except the administrator(s) shall not be authorized to bind the estate by any warranty in any conveyance or contract in violation of O.C.G.A. § 53-8-14 (a).

(b)  *REPORTS WAIVED*: Grants to the administrator the specific power to serve without making and filing inventory, and without filing any annual or other returns or reports to any court.

(c)  *BOND WAIVED*: Waives the specific requirement to post bond.

(d)  *STATEMENTS WAIVED*: Grants to the administrator the specific power to serve without furnishing to the heirs statements of receipts and disbursements.

    IN TESTIMONY WHEREOF, I have hereunto affixed my signature as judge of the probate court of said county and the seal of this office this 18th day of June, 2022.

_____
Judge of the Probate Court

*Note:*  *The following must be signed if the judge does not sign the original of this document:*

Issued by:

_____
Clerk of the Probate Court

GPCSF 3                [12]

STATE OF GEORGIA
COUNTY OF HALL
I, Judge and/or Probate Court in and for said County do hereby certify that the within is a true and correct copy of the original as it appears on file in this office. Witness the official seal and signature of Probate Court this 20 day of July , 2022

_____
Judge, Clerk Hall County Probate Court

Eff. January 2021

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Scanned with CamScanner

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

       Plaintiffs,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION
## OF DOCUMENTS TO DEFENDANT

Plaintiffs serve these Requests upon the above-named Defendant and request that they be fully answered in writing and under oath within forty-five days of the date of service. These Requests are served pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-11-26 and 9-11-34.

**As to timing:** If you need a reasonable extension of time to complete your responses and you timely notify the undersigned of that need, Plaintiffs will agree to a reasonable extension. However, *Defendant must agree to provide all discoverable and properly-requested evidence by that extended deadline, except for evidence withheld pursuant to claims of privilege in compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiffs seek to avoid are protracted discovery disputes and motions practice. For that reason, Plaintiffs will agree to any reasonable extension as long as, by the extended deadline, Defendant responds

Page 1 of 12

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

as specified above so that no more back-and-forth will be required before Plaintiffs are in possession of all properly-requested, non-privileged evidence and information.

These Requests are 'continuing.' Therefore, please supplement or amend any response if there is any change, or any perceived change, in a fact, in the availability of evidence, in the knowledge of a witness or party, in the identity of a witness, or any other relevant circumstance. Each Request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to each of the aforementioned persons.

If you would like an electronic copy of these requests in Microsoft Word format so that you can type your response underneath the request to which it responds, please let us know and we will provide a Word version for your convenience.

## DEFINITIONS

1. **"Collision"** or **"wreck"** refers to the motor vehicle collision between Mark Andrew Cohen and Mary Angela Bell on December 11, 2021, in Hall County, Georgia.

2. **"Document"** includes, but is not limited to, emails, correspondence, reports, memoranda, publications, notes, audio or video recordings, pictures, drawings, photographs, maps, written calculations, and other communications whether electronic or 'hard copy.'

3. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4. **"Incident"** or **"subject incident"** refers to the incident made the basis of the Complaint.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

5. "Identify"

    a) With respect to any *person*, "**identify**" means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

    b) With respect to any *document*, "**identify**" means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6. "**Plaintiff(s)**" refers to Emily Cohen and Jacob Cohen.

7. "**You**" or "**your**" refers to the Defendant to whom these requests are addressed.

## REQUESTS FOR PRODUCTION

### *Background*

1.

Produce copies of all driver's licenses in your possession at the time of the December 11, 2021 Collision and at present.

2.

Produce all documents related to driving testing, training, or instruction, whether received or given by you.

3.

Produce all records associated with your response to the Interrogatories that deal with criminal conduct, criminal records, or incidences of misconduct other than the Collision.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

4.

Produce all citations or arrest records from the past ten years, including but not limited to vehicle citations, arrest warrants, incident reports, roadway violations, convictions, and probation violations that you have received. (This request encompasses conduct both before, including, and after the Collision.)

5.

Produce all written records that relate to your driving while impaired (i.e., consuming alcohol, drugs, and/or medications and operating a motor vehicle), whether or not you were caught by the authorities. This request encompasses conduct both before, during, and after the Collision. *See Moore v. Thompson*, 255 Ga. 236, 237 (1985) (both prior and subsequent occasions of driving under the influence are relevant).

6.

Produce all documents related to any medications, drugs, or alcohol that you consumed in the 24 hours before the Collision.

7.

Produce all documents related to any medications, drugs, or alcohol that were in your possession—i.e., on your person or in the vehicle—at the time of the Collision.

8.

Make any physical objects related to any medications, drugs, or alcohol that you had in your possession—i.e., on your person *or* in the vehicle—at the time of the Collision (such as pill bottles, pipes, or beer bottles) available for inspection at a mutually convenient time and place.

9.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Produce all documents related to any medications or drugs to which you were prescribed during the month before the Collision. (This request refers to prescriptions that were *active* or *available* during that month, without regard to when the prescription was initially written.)

10.

Produce the title to the vehicle you were driving at the time of the Collision, or the lease papers or contracts if you did not own the vehicle.

### *Collision*

11.

Produce all photographs, diagrams, video, maps, plats, charts, or other graphic or evidence relating to the Collision, the scene of the Collision, or the state of the vehicles after the Collision. This request includes, but is not limited to, photographs of the vehicles, photographs of the scene, law enforcement reports, fire department reports, EMS reports, 911 records, or other documentation from parties, officials, insurance companies, or agents of the foregoing.

12.

Produce all incident reports concerning the Collision and any claim or potential claim arising out of the Collision.

13.

Produce all documents related to any citations and related charges against you arising from the Collision.

14.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Produce all documents that relate to the trip in which you were engaged at the time of the Collision, including documents relevant to the trip from the time it originated until the time it was to end. This request includes, but is not limited to, documentation related to the place of origin, destination, or stops along the way (e.g., receipts).

15.

Produce all reports, statements, or results of any test (including but not limited to drug tests) administered to you in the 72 hours after the Collision.

16.

Produce all documents that concern your physical or mental condition at any time from 24 hours before the Collision until 24 hours after the Collision.

17.

Produce a copy of all cell phone records and bills which reflect any calls and/or text messages made or received by you on the date of the Collision.

18.

Produce each document you have received from any governmental or official entity regarding this Collision or this case.

### *Damages*

19.

Produce all documents related to the damage to, or repair of, your vehicle following the Collision. This request encompasses, but is not limited to, photographs, videos, repair estimates, repair bills, and damage appraisals.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

20.

Produce—and *update your production throughout this litigation*—any medical records

regarding Mark Andrew Cohen that you have received from any source other than Plaintiffs.

This request includes, but is not limited to, medical records received via third-party request or

subpoena. **If you are unwilling to produce this material and keep this production updated,**

**notify the undersigned immediately.**[1]

### Lay Witnesses

21.

Produce all witness statements (whether written or oral) obtained from any person about

any information relevant to any issue in this lawsuit, including but not limited to liability or

damages. This request specifically *excludes* attorney work product, but *includes* any

investigations made in the ordinary course of business *or* investigations conducted by non-

attorneys.

22.

---

[1] Sometimes in this context, copying costs come up. In case that's an issue, please feel free to produce these records in electronic form. Please also note that Plaintiffs have not charged Defendant for the copies of medical records that Plaintiffs have produced, so Plaintiffs would appreciate Defendant not charging copying costs either. If Defendant *does* insist on charging copying costs, please let the undersigned know what per-page rate Defendant proposes. Plaintiffs will pay it *provided that* Defendant reimburses Plaintiffs, at the same rate, for the copying costs of all documents that Plaintiffs have produced to date and produces in the future.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Produce all reports or statements written or recorded and given by you to the police, your employer, your school, any insurer, or any other person (except your lawyer) concerning the Collision.

### *Expert Witnesses*

23.

Produce all report(s) of every expert witness or other witness whom you expect to provide opinion testimony.

24.

Produce all correspondence or other documents sent to, or received from, every expert witness or other witness whom you expect to provide opinion testimony (or that witness's office or company).[2]

25.

Produce the complete file—including all materials reviewed, considered, inspected, received, authored, generated, or created—of every expert witness or other witness whom you expect to provide opinion testimony (or that witness's office or company).[3]

26.

---

[2] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

[3] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Produce all invoices, receipts, payment records, and other documents related to payment or compensation of every expert witness or other witness whom you expect to provide opinion testimony (or that witness's office or company). [4]

27.

Produce a list of all testimony given by every expert witness or other witness whom you expect to provide opinion testimony, whether the testimony was given in deposition or at trial. For each occasion on which the witness testified, list the date of the testimony; the name of the court in which the case pended; the name of the lawyer who retained, hired, or otherwise procured the testimony of the witness; the name of the lead lawyer on the opposite side of the case; and the nature of the case (e.g., personal injury, worker's compensation, etc.).

### *Negligence and Liability*

28.

Produce any documents that you contend show that any other entity or person, other than you, is responsible for the Collision.

29.

Provide all maintenance records, repair records, and inspection records for the vehicle you were operating at the time of the Collision from the 14-month period beginning one year before the Collision and ending two months after the Collision. (This request includes, but is not limited to, purchase invoices, repair estimates, previous damage, repair or maintenance

---

[4] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

documents, appraisals, property damage reports, or any tangible evidence pertaining to the upkeep of the vehicle involved in the Collision).

### *Insurance*

30.

Produce all declarations pages *and policies* of insurance that do *or may* provide coverage for Plaintiffs' claims. This request includes, but is not limited to, primary insurance coverage, excess insurance coverage, umbrella insurance coverage, personal insurance coverage, business insurance coverage, policies of resident relatives, or any other type of liability insurance coverage.

31.

Produce all *declarations pages* and *policies* of insurance identified or referred to in your responses the "Insurance" section of Plaintiffs' interrogatories.

32.

Produce any documents evidencing, reflecting, or recording any payments to Plaintiffs and/or Defendant (or payments made on behalf of Plaintiffs and/or Defendant), by any insurance carrier for damages sustained by any party because of the Collision.

33.

Produce all automobile insurance *declarations pages* and *policies* for all relatives, by blood or marriage, who resided with you at the time of the collision.[5] This request includes, but

---

[5] The automobile liability policies of resident relatives may provide insurance coverage. *See* Jenkins & Miller, Georgia Automobile Insurance Law § 12:5. Therefore, this is a permissible subject of discovery. O.C.G.A. § 9-11-26(b)(2).

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

is not limited to, primary insurance coverage, excess insurance coverage, umbrella insurance coverage, personal insurance coverage, business insurance coverage, or any other type of liability insurance coverage.[6]

### 34.

Produce all auto insurance *declarations pages* and *policies* that pertain to insurance of the vehicle that Defendant was operating at the time of the collision, regardless of who the policyholder or 'named insureds' are.

### 35.

Produce any reservation-of-rights letter or other correspondence with an insurer addressing the extent of insurance coverage.

### *Miscellaneous*

### 36.

Produce all photographs, documents, or demonstrative evidence that you intend to use in the defense of this case at trial.

### 37.

Produce all documents that support any defense raised, or allegation denied, in your Answer.

### 38.

---

[6] Plaintiff recognizes that these documents may not be in your *possession*, though they could be in your *control* insofar as you are able to obtain them. *See Resource Life Ins. Co. v. Buckner*, 304 Ga App. 719, 734-36 (2010) (affirming order compelling defendant to produce evidence that defendant was able to obtain.) The practical point is that if these documents are not produced, the undersigned's alternative is to send third-party requests, subpoenas duces decum, or deposition subpoenas to your relatives, which will be more intrusive. We would prefer to avoid that if possible.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Produce all documents that you identified and/or relied upon in your responses to

Plaintiffs' First Interrogatories.


This 12th day of January 2023.

                                    BUTLER | KAHN

                                    BY:  ___/s/ Matthew R. Kahn_____
                                         JAMES E. BUTLER, III
                                         Georgia Bar No. 116955
                                         MATTHEW R. KAHN
10 Lenox Pointe                          Georgia Bar No. 833443
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                    **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

      Plaintiffs,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

---

## PLAINTIFFS' FIRST INTERROGATORIES TO DEFENDANT

Plaintiffs serve these Interrogatories upon the above-named Defendant and request that they be fully answered in writing and under oath within forty-five days of the date of service. These Interrogatories are served pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-11-26 and 9-11-33.

**As to timing:** If you need a reasonable extension of time to complete your responses and you timely notify the undersigned of that need, Plaintiffs will agree to a reasonable extension. However, *Defendant must agree to provide all discoverable and properly-requested evidence by that extended deadline, except for evidence withheld pursuant to claims of privilege in compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiffs seek to avoid are protracted discovery disputes and motions practice. For that reason, Plaintiffs will agree to any reasonable extension as long as, by the extended deadline, Defendant responds

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

as specified above so that no more back-and-forth will be required before Plaintiffs are in possession of all properly-requested, non-privileged evidence and information.

These Interrogatories are 'continuing.' Therefore, please supplement or amend any response if there is any change, or any perceived change, in a fact, in the availability of evidence, in the knowledge of a witness or party, in the identity of a witness, or any other relevant circumstance. Each Interrogatory is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to each of the aforementioned persons.

If you would like an electronic copy of these requests in Microsoft Word format so that you can type your response underneath the request to which it responds, please let us know and we will provide a Word version for your convenience.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. **"Collision"** or **"wreck"** refers to the motor vehicle collision between Mark Andrew Cohen and Mary Angela Bell on December 11, 2021 in Hall County, Georgia.

2. **"Document"** includes, but is not limited to, emails, correspondence, reports, memoranda, publications, notes, audio or video recordings, pictures, drawings, photographs, maps, written calculations, and other communications whether electronic or 'hard copy.'

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

3. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4. **"Incident"** or **"subject incident"** refers to the incident made the basis of the Complaint.

5. **"Identify"**

   a) With respect to any *person*, **"identify"** means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

   b) With respect to any *document*, **"identify"** means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6. **"Plaintiff(s)"** refers to Emily Cohen and Jacob Cohen.

7. **"You"** or **"your"** refers to the Defendant to whom these requests are addressed.

## INTERROGATORIES

### *Big Picture*

1.

Do you accept responsibility for causing the Collision on December 11, 2021?

### *Background*

2.

State your name, address, driver's license number, telephone number, and date of birth.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

3.

Identify the persons or entities who owned, leased, or operated the vehicle you were driving at the time of the Collision. If the vehicle you were driving at the time of the Collision belongs to someone other than you, explain the circumstances under which the vehicle came into your possession (including whether you had permission to drive it), the purpose for which the vehicle was being used, and under whose authority it was operating. If the ownership changed at any time since the Collision, identify every subsequent owner.

4.

State whether you have ever pled guilty to, pled *nolo contendere* to, or been convicted of any crime other than traffic violations. If you have, state the date and nature of the offense, the county and state in which you were tried or entered a plea, and the sentence given you.

5.

State whether you have ever been arrested, cited, charged, convicted, pled guilty to, pled nolo contendere to, or forfeited bond concerning any traffic violation, moving violation, or charge for violation of the traffic laws or rules of the road of any state within the last ten years (including but not limited to incidents involving medicines, drugs, or alcohol). If you have, state the approximate date of such incident, the court in which you were charged or prosecuted, the nature of such charge or conviction, and the result of the arrest, citation, or charge.

6.

Identify all driver's education, driving instruction, or similar courses or classes you have taken, whether the course or class was attended by your physical presence at some location or taken remotely. State why you attended the course.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

7.

State whether your driver's license(s) contains any restrictions now, or whether your license(s) contained any restriction, at the time of the Collision, and whether your driver's license(s) have ever been suspended for any reason. If your answer to this interrogatory is in the affirmative, state the nature of such restriction and the reason(s) for it.

8.

State whether you have ever been involved in a motor vehicle accident before or after the Collision. If so, state the date of each accident; the location of the accident occurred; the nature of the accident (e.g., rear-end collision); and what citations, if any, you received.

9.

Do you have any medical conditions that make it difficult *or* unsafe for you to drive?

10.

Please list all medications for which you have a prescription *or* for which you had a prescription on the day of the Collision.

11.

Did you consume any alcohol or drugs (legal or illegal) in the 24 hours before the Collision? If so, describe what you consumed, when you consumed it, where you consumed it, how much you consumed, and whether you believe it affected your ability to drive.

***The Collision***

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

12.

Describe in detail your activities on December 11 18, 2021, from the time you woke up until the Collision. Include where you went, how long you stayed, and why you were at each location. Include, but do not limit your answer to, where you came from and where you were intending to go when the Collision occurred.

13.

Describe in your own words when, where, how, and why the Collision occurred, stating in your answer all events relating to the Collision in order.

14.

At the time of the collision, were you distracted from driving in any way? (For instance, were you talking on the phone, texting, using the internet or an app, using a GPS, interacting with a passenger, adjusting the radio, looking out the window, or doing anything else that could have distracted you from driving?)

15.

Describe in detail what you did after the Collision (including but not limited to where you went, who you spoke with) while at the scene of the Collision and during the 24 hours following the Collision.

16.

Identify any photographs, videos, plans, drawings, blueprints, sketches, diagrams, computer simulations, or any other type of demonstrative evidence concerning the Collision, the site of the Collision, the vehicles involved, or that in any way illustrate facts relevant to the Collision.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

17.

Please state approximately how fast you were traveling at the moment:

a) 10 seconds before the Collision,

b) 5 seconds before the Collision, and

c) *immediately* before your vehicle struck Mark Andrew Cohen.

*Vehicle*

18.

Please name all electronic devices that were inside your vehicle at the time of the collision, including but not limited to cellular phones, GPS devices, or other mobile devices.

19.

Please state the current location of the vehicle you were driving at the time of the Collision and state whether it has been altered or repaired since the Collision.

20.

Do you believe that the vehicle you were driving had any problems or defects, mechanical or otherwise, that contributed in any way to the Collision? If yes, identify those defects and explain how they contributed to the Collision.

*Witnesses*

21.

Identify the physical location and describe the substances of any conversation you had regarding the Collision or anything related to the Collision (whether in person or through

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

electronic means, such as telephone call or electronic message) in the 48 hours following the collision. This interrogatory includes, but is not limited to, conversations with, passengers, bystanders, police officer(s), witnesses, emergency responders, or an insurance company.

22.

Identify every person (witness, family member, friend, investigating police officer, medical personnel, etc.) who has any information about how or why the Collision occurred, about who caused the Collision, damages, or other issues relevant to this case.

23.

Identify all witness statements (whether written or oral) obtained from any person about any information relevant to any issue in this lawsuit, including but not limited to liability or damages. This request specifically *excludes* attorney work product, but *includes* any investigations made in the ordinary course of business *or* investigations conducted by non-attorneys.

24.

Identify each person you expect to call as an expert witness at the trial of this case. As to each describe his/her qualifications as an expert; state the subject matter upon which he/she is expected to testify; state his/her opinions (include a summary of the grounds for each opinion); identify all documents which have been exchanged with each witness, including reports and billing statements and payments; describe the financial arrangements with the expert; identify all previous actions in which the expert has provided expert testimony at trial or deposition; and identify all documents prepared by each witness which relate to the subject matter of this lawsuit.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

***Negligence and Liability***

### 25.

Who do you believe is responsible for the Collision, and what percentage of fault do you believe each of those people bear?

### 26.

Do you believe that any person or entity other than you is responsible, or is at fault, for the Collision? If so, identify that person or entity and explain why he, she, or it is responsible.

### 27.

List each act (or omission) of negligence, contributory negligence, or comparative negligence that you believe Mark Andrew Cohen committed.

***Insurance***

### 28.

For each insurance agreement that is, or *may be*, available to satisfy part or all of a judgment entered in this action, or to indemnify or reimburse you for payments made to satisfy this judgment, state the name and address of each insurer, the amount of coverage available to satisfy such a judgment, and any coverage-related issues known to exist. This request includes, but is not limited to, primary insurance coverage, excess insurance coverage, umbrella insurance coverage, personal insurance coverage, business insurance coverage, policies of resident relatives, or any other type of liability insurance coverage. *See* O.C.G.A. § 33-3-28.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

29.

Identify by name, phone number, and email address every relative over the age of 15 years who lived in the same home with you, shared the same physical address as you, or shared the same mailing address as you at the time of the subject collision. Specify whether each such relative owned a motor vehicle.[1]

30.

For all family members (by blood or marriage) identified in response to the preceding interrogatory, provide that person's mobile/cellular telephone number, home telephone number, and current address.[2]

31.

As to all family members (by blood or marriage) who shared a residence with you and who owned *or* possessed an automobile *or* an automobile insurance policy, identify the

---

[1] The automobile liability policies of resident relatives may provide insurance coverage. *See* Jenkins & Miller, Georgia Automobile Insurance Law § 12:5. Therefore, this is a permissible subject of discovery. O.C.G.A. § 9-11-26(b)(2).

[2] Plaintiff seeks this contact information because if the relatives' automobile insurance information is not provided in response to these discovery requests, our firm will need to send that person a subpoena to acquire the policy. *See* Jenkins & Miller, Georgia Automobile Insurance Law § 12:5 (the automobile liability policies of resident relatives may provide coverage); O.C.G.A. § 9-11-26(b)(2) (insurance is discoverable).

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

automobile (by year, make, and model), the insurance company that provided the policy, and the policy number.[3]

32.

Identify each vehicle that was kept, garaged, or regularly parked at your residence during the period beginning one month before the date of the Collision and ending one month after the date of the Collision.

### Miscellaneous

33.

Provide the numbers to any mobile phones or devices that you have or had at the time of the Collision. Provide the names of the providers for each of the mobile devices (e.g., AT&T, Verizon), whether you had used this device at any time within the hour before or the hour after the Collision, and whether you were using this device at the time of the Collision.

34.

When did you first anticipate litigation with regard to this Collision?

This 12th day of January 2023.

BUTLER | KAHN

BY: _/s/ Matthew R. Kahn_
JAMES E. BUTLER, III
Georgia Bar No. 116955
MATTHEW R. KAHN

---

[3] The automobile liability policies of resident relatives may provide insurance coverage. *See* Jenkins & Miller, Georgia Automobile Insurance Law § 12:5. Therefore, this is a permissible subject of discovery. O.C.G.A. § 9-11-26(b)(2).

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

10 Lenox Pointe                                Georgia Bar No. 833443
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                          **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN, <br><br>    Plaintiffs, <br><br> vs. <br><br> MARY ANGELA BELL, <br><br>    Defendant. | Civil Action File No.: 23-C-00222-S2 |

---

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Plaintiffs serve these Requests upon Travelers Property Casualty Company of America and request that they be fully answered in writing and under oath within forty-five days of the date of service. These Requests are served pursuant to the Georgia Civil Practice Act, including O.C.G.A. §§ 9-11-26 and 9-11-34.

**As to timing**: If you need a reasonable extension of time to complete your responses and you timely notify the undersigned of that need, Plaintiff will agree to a reasonable extension. However, *Defendant must agree to provide all discoverable and properly-requested evidence by that extended deadline, except for evidence withheld pursuant to claims of privilege in compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiffs seek to avoid are protracted discovery disputes and motions practice. For that reason, Plaintiffs will agree to any reasonable extension as long as, by the extended deadline, Defendant responds

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

as specified above so that no more back-and-forth will be required before Plaintiff is in possession of all properly-requested, non-privileged evidence and information.

These Requests are 'continuing.' Therefore, please supplement or amend any response if there is any change, or any perceived change, in a fact, in the availability of evidence, in the knowledge of a witness or party, in the identity of a witness, or any other relevant circumstance. Each Request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to each of the aforementioned persons.

If you would like an electronic copy of these requests in Microsoft Word format so that you can type your response underneath the request to which it responds, please let us know and we will provide a Word version for your convenience.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. **"Collision"** or **"wreck"** refers to the motor vehicle collision between Mark Andrew Cohen and Mary Angela Bell on December 11, 2021, in Hall County, Georgia.

2. **"Document"** includes, but is not limited to, emails, correspondence, reports, memoranda, publications, notes, audio or video recordings, pictures, drawings, photographs, maps, written calculations, and other communications whether electronic or 'hard copy.'

3. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4. **"Incident"** or **"subject incident"** refers to the incident made the basis of the Complaint.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

5.  "**Identify**"

      a)  With respect to any *person*, "**identify**" means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

      b)  With respect to any *document*, "**identify**" means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6.  **Plaintiff(s)**" refers to Emily Cohen and Jacob Cohen.

7.  "**Insurer**," "**insurance company**," "**you**," refers to any agent or employee of Travelers Property Casualty Company of America.

**REQUESTS FOR PRODUCTION**

*Procedural*

1.

If your response to the contemporaneously served Requests for Admission numbers 1-9 is anything other an unqualified admission, produce all documents supporting that contention.

2.

Produce all photographs, diagrams, video, maps, plats, charts, or other graphic, pictorial, or demonstrative evidence relating to the December 11, 2021 Collision, the scene of the Collision, the vehicles involved in the Collision, the persons involved in the Collision, your

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

claims or contentions, or any other issue in this case. This request includes, but is not limited to, law enforcement reports, fire department reports, EMS reports, 911 records, and other official documents.

### *Damages*

3.

Produce—and update your production throughout this litigation—any medical records regarding Mark Andrew Cohen that you have received from any source other than Plaintiffs. This request includes, but is not limited to, medical records received via third-party request. **If you are unwilling to keep this production updated, notify Plaintiffs immediately.**

4.

Produce all medical records and bills related to injuries sustained in the Collision (by *any* person, including Mark Andrew Cohen.

5.

Produce all documents related to injuries sustained in the Collision by *any* person including Mark Andrew Cohen.

### *The Collision*

6.

Produce all incident reports concerning the Collision and any claim or potential claim arising out of the Collision.

### *Lay Witnesses*

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

7.

Produce all witness statements (whether written or oral) obtained from any person about any information relevant to any issue in this lawsuit, including but not limited to liability or damages. This request specifically *excludes* attorney work product, but *includes* any investigations made in the ordinary course of business *or* investigations conducted by non-attorneys.

8.

Produce any recordings, videos, or photographs of Mark Andrew Cohen, regardless of whether they were made or taken with Mark Andrew Cohen's consent.

9.

Produce any recordings, notes, or documents that relate to any statement made by Mark Andrew Cohen about the Collision, Mark Andrew Cohen's injuries, or the consequences of the Collision.

### *Expert Witnesses*

10.

Produce all report(s) of every expert witness or other witness whom you expect to provide opinion testimony.

11.

Produce all correspondence or other documents sent to, or received from, every expert witness or other witness whom you expect to provide opinion testimony (or that witness's office or company).[1]

---

[1] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

12.

Produce the complete file—including all materials reviewed, considered, inspected, received, authored, generated, or created—of every expert witness or other witness whom you expect to provide opinion testimony. [2]

13.

Produce all invoices, receipts, payment records, and other documents related to payment or compensation of every expert witness or other witness whom you expect to provide opinion testimony (or that witness's office or company).[3]

### *Negligence and Liability*

14.

Produce any documents that you contend show that any other entity or person, other than Defendant, is responsible for the Collision.

### *Miscellaneous*

15.

Produce all photographs, documents, or demonstrative evidence that you intend to use in the defense of this case at trial.

16.

Produce all documents that you identified and/or relied upon in your response to Plaintiffs' First Interrogatories to you.

---

[2] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

[3] If you used a third-party company to retain, pay, or communicate with the witness, then this request encompasses documents in the possession of that company.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

17.

Produce each document submitted by you, or received from law enforcement, or any other State, Federal, or municipal entity regarding an investigation into the Collision, the vehicle or any of the Defendants.

18.

Produce all documents that support any defense raised, or allegation denied, in your Answer.

### *Insurance*

19.

Produce all *declarations pages* and *policies* of insurance that do *or may* provide coverage for Plaintiffs' claims.  This request includes, but is not limited to, underinsured/uninsured motorist coverage ("UM coverage"), primary insurance coverage, excess insurance coverage, umbrella insurance coverage, personal insurance coverage, business insurance coverage, policies of resident relatives, or any other type of insurance coverage.

20.

Produce any documents evidencing, reflecting, or recording any payments to Plaintiffs and/or Defendant (or payments made on behalf of Mark Andrew Cohen, Plaintiffs and/or Defendant), by any insurance carrier for damages sustained by any party because of the Collision.

21.

Produce all automobile insurance *declarations pages* and *policies* for all relatives, by blood or marriage, who resided with Mark Andrew Cohen at the time of the collision.  This

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

request includes, but is not limited to, underinsured/uninsured motorist coverage ("UM coverage").

22.

Produce any reservation-of-rights letter or other correspondence with an insurer addressing the extent of insurance coverage.

This 12th day of January 2023.

BUTLER | KAHN

BY: __*/s/ Matthew R. Kahn*__
     JAMES E. BUTLER, III
     Georgia Bar No. 116955
     MATTHEW R. KAHN
     Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646            **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

       Plaintiffs,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

---

**PLAINTIFFS' FIRST INTERROGATORIES TO**
**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**

---

Plaintiffs serve these Interrogatories upon Travelers Property Casualty Company of

America and request that they be fully answered in writing and under oath within forty-five days

of the date of service. These Interrogatories are served pursuant to the Georgia Civil Practice

Act, including O.C.G.A. §§ 9-11-26 and 9-11-33.

**As to timing:** If you need a reasonable extension of time to complete your responses and

you timely notify the undersigned of that need, Plaintiff will agree to a reasonable extension.

However, *Defendant must agree to provide all discoverable and properly-requested evidence by*

*that extended deadline, except for evidence withheld pursuant to claims of privilege in*

*compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiff

seeks to avoid are protracted discovery disputes and motions practice. For that reason, Plaintiff

will agree to any reasonable extension as long as, by the extended deadline, Defendant responds

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

as specified above so that no more back-and-forth will be required before Plaintiff is in possession of all properly-requested, non-privileged evidence and information.

These Interrogatories are 'continuing.' Therefore, please supplement or amend any response if there is any change, or any perceived change, in a fact, in the availability of evidence, in the knowledge of a witness or party, in the identity of a witness, or any other relevant circumstance. Each Interrogatory is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to each of the aforementioned persons.

If you would like an electronic copy of these requests in Microsoft Word format so that you can type your response underneath the request to which it responds, please let us know and we will provide a Word version for your convenience.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.  "**Collision**" or "**wreck**" refers to the motor vehicle collision between Mark Andrew Cohen and Mary Angela Bell on December 11, 2021, in Hall County, Georgia.

2.  "**Document**" includes, but is not limited to, emails, correspondence, reports, memoranda, publications, notes, audio or video recordings, pictures, drawings, photographs, maps, written calculations, and other communications whether electronic or 'hard copy.'

3.  "**Person**" means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4.  "**Incident**" or "**subject incident**" refers to the incident made the basis of the Complaint.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

5. **"Identify"**

    a) With respect to any *person*, **"identify"** means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

    b) With respect to any *document*, **"identify"** means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6. **"Plaintiff(s)"** refers to Emily Cohen and Jacob Cohen.

7. **"Insurer,"** **"insurance company,"** **"you,"** refers to any agent or employee of Travelers Property Casualty Company of America.

## INTERROGATORIES

### *Procedural*

1.

If your response to the contemporaneously served Requests for Admission numbers 1-29 is anything other an unqualified admission, explain the basis for that response.

2.

List each act of negligence, contributory negligence, or comparative negligence you contend Mark Andrew Cohen did or failed to do which in any way contributed to causing the December 11, 2021 Collision and/or any of Mark Andrew Cohen's injuries.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

3.

Identify any photographs, still, or motion pictures, plans, drawings, blueprints, sketches, diagrams, computer simulations, or any other type of demonstrative evidence concerning the collision, the site of the collision, the vehicles involved, or which in any way illustrate any facts relevant to the collision.

4.

Do you agree that Defendant was responsible for causing the collision?

5.

Do you believe that any other person or entity other than Defendant is responsible, or is at fault, for the collision? If so, identify that person or entity and explain why he, she, or it is responsible.

### *Witnesses*

6.

Identify the physical location and describe the substance of any conversation you or your agents had regarding the Collision or anything related to the Collision (whether in person or through electronic means, such as a telephone call or electronic message), including but not limited to conversations with police officer(s) and witnesses.

7.

Identify every person (witness, family member, friend, investigating police officer, medical personnel, etc.) who has any information about how or why the collision occurred, about who was at fault or in any way responsible for causing the collision, and about any other information pertaining to the issues of liability and/or damages in this case.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

8.

Identify all witness statements (whether written or oral) obtained from any person about any information relevant to any issue in this lawsuit, including but not limited to liability or damages. This request specifically *excludes* attorney work product, but *includes* any investigations made in the ordinary course of business *or* investigations conducted by non-attorneys.

9.

Identify each person you expect to call as an expert witness at the trial of this case. As to each, describe his/her qualifications as an expert; state the subject matter upon which he/she is expected to testify; state his/her opinions (include a summary of the grounds for each opinion); identify all documents which have been exchanged with each witness, including reports and billing statements and payments; describe the financial arrangements with the expert; identify all previous actions in which the expert has provided expert testimony at trial or deposition; and identify all documents prepared by each witness which relate to the subject matter of this lawsuit.

10.

Do you contend that any other person or entity, other than Defendant, is responsible for the collision? If so, explain why.

### *Miscellaneous*

11.

Identify any statement you have taken from Plaintiffs whether via audio, video, or by transcript.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

*Insurance*

12.

Identify all insurance policies, including any umbrella policy and uninsured/underinsured motorist coverage policy, that you provided to Mark Andrew Cohen at the time of the collision.

13.

Identify all insurance policies, including any umbrella policy and uninsured/underinsured motorist coverage policy, that you provided to the relatives of Mark Andrew Cohen who resided with him at 5330 High Point Road, Flowery Branch, Georgia 30542 at the time of the Collision.

This 12th day of January 2023.

BUTLER | KAHN

BY:    */s/ Matthew R. Kahn*
      JAMES E. BUTLER, III
      Georgia Bar No. 116955
      MATTHEW R. KAHN
      Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646    **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

        Plaintiffs,

vs.

MARY ANGELA BELL,

        Defendant.

Civil Action File No.: 23-C-00222-S2

---

**PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO**
**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**

---

Plaintiffs serve these Requests for Admission upon Travelers Property Casualty
Company of America and request that they be fully admitted in writing under oath within the
time provided by law.  These Requests for Admission are served pursuant to the Georgia Civil
Practice Act, including O.C.G.A. §§ 9-11-26 and 9-11-36.

**Note that a request for admission is *not* objectionable on the grounds that it calls for**
**a legal conclusion or contains a mixed question of law and fact.**  To the contrary, "requests
for admission under O.C.G.A. § 9–11–36(a) are not objectionable even if they require opinions
or conclusions of law, as long as the legal conclusions relate to the facts of the case." *G.H. Bass
& Co. v. Fulton Cnty. Bd. of Tax Assessors*, 268 Ga. 327, 329 (1997).

**As to timing**: If you need a reasonable extension of time to complete your responses and
you timely notify the undersigned of that need, Plaintiffs will agree to a reasonable extension.
However, *Defendant must agree to provide all discoverable and properly-requested evidence by*

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

*that extended deadline, except for evidence withheld pursuant to claims of privilege in compliance with USCR 5.5.* Let us know how much time you need to do that. What Plaintiffs seek to avoid are protracted discovery disputes and motions practice. For that reason, Plaintiffs will agree to any reasonable extension as long as, by the extended deadline, Defendant responds as specified above so that no more back-and-forth will be required before Plaintiffs are in possession of all properly-requested, non-privileged evidence and information.

Each matter for which an admission is required shall be deemed admitted unless, within the time allowed by law after service of these requests, you serve Plaintiffs with a written answer or objection to such matter. If you fail to admit the genuineness of any document or the truth of any matter addressed below, and Plaintiffs later prove the genuineness of that document or truth of that matter, Plaintiffs will seek an Order from the Court requiring you to pay the reasonable fees and expenses incurred in making that proof.

If you would like an electronic copy of these requests in Microsoft Word format so that you can type your response underneath the request to which it responds, please let us know and we will provide a Word version for your convenience.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. "**Collision**" or "**wreck**" refers to the motor vehicle collision between Mark Andrew Cohen and Kenneth Brown on October 18, 2021, in Irwin County, Georgia.

2. "**Document**" includes, but is not limited to, emails, correspondence, reports, memoranda, publications, notes, audio or video recordings, pictures, drawings, photographs, maps, written calculations, and other communications whether electronic or

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

'hard copy.'

3. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, entity, or group of persons.

4. **"Incident"** or **"subject incident"** refers to the incident made the basis of the Complaint.

5. **"Identify"**

    a) With respect to any *person*, **"identify"** means to provide that person's last known contact information (phone, postal address, and email address), and a description of the person's connection with the events in question.

    b) With respect to any *document*, **"identify"** means to provide the title of the document, the date the document was created, the name of the creator, the name of the person who directed that the document be created, and the identity of the person or group to whom the document was distributed.

6. **"Plaintiff(s)"** refers to Emily Cohen and Jacob Cohen.

7. **"You"** or **"your"** refers to any agent or employee of State Travelers Property Casualty Company of America.

## REQUESTS FOR ADMISSION

### *Procedural*

1.

You have been correctly named in this case insofar as your legal name is concerned.

2.

Process is sufficient with regard to you in this case.

3.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Service of process is sufficient with regard to you in this case.

4.

This Court has jurisdiction over the subject matter of this case.

5.

This Court has personal jurisdiction over you.

6.

Venue is proper in this Court.

7.

Plaintiff has not failed to join an indispensable party under O.C.G.A. § 9-11-19.

8.

You will provide Plaintiffs with copies of all medical records you receive from entities other than Plaintiffs (as by third-party request, subpoena, or other means).[1]

### *The Collision*

9.

Defendant caused the December 11, 2021 Collision.

10.

Defendant partially caused the Collision.

11.

---

[1] Sometimes in this context, copying costs come up. In case that's an issue, please feel free to produce these records in electronic form. Please also note that Plaintiff has not charged Progressive Premier Insurance Company of Illinios for the copies of medical records that Plaintiff has produced, so Plaintiff would appreciate Progressive Premier Insurance Company of Illinios not charging copying costs either. If Progressive Premier Insurance Company of Illinios *does* insist on charging copying costs, please let the undersigned know what per-page rate Progressive Premier Insurance Company of Illinios proposes. Plaintiff will pay it *provided that* Progressive Premier Insurance Company of Illinios reimburses Plaintiff, at the same rate, for the copying costs of all documents that Plaintiff has produced to date and produces in the future.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

Defendant was at fault for causing the Collision.

12.

Defendant was partially at fault for causing the Collision.

13.

Defendant was negligent.

14.

Defendant's negligence caused the Collision.

15.

Mark Andrew Cohen did not cause the Collision.

16.

Mark Andrew Cohen was not at fault for causing the Collision.

17.

Mark Andrew Cohen was not negligent.

18.

Defendant failed to keep a proper in front of her, in violation of Georgia law.

19.

Defendant seriously injured Mark Andrew Cohen by use of her vehicle, in violation of Georgia law.

20.

Mark Andrew Cohen was hurt in the Collision.

21.

Mark Andrew Cohen was killed in the Collision.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

*Insurance*

22.

You failed to obtain a signed underinsured/uninsured motorist coverage rejection from Mark Andrew Cohen before you issued a policy to him.

23.

You provided Mark Andrew Cohen with underinsured/uninsured motorist coverage on the date of the Collision.

24.

You insured at least one vehicle that Mark Andrew Cohen owned on the date of the Collision.

25.

You provided Plaintiff with underinsured/uninsured motorist coverage on the date of the Collision.

26.

The policy pursuant to which you provided underinsured/uninsured motorist coverage to Mark Andrew Cohen, was in full force and effect on the date of the Collision.

27.

On the date of the Collision, you provided underinsured/uninsured motorist coverage to at least one of Mark Andrew Cohen's resident relatives.

28.

On the date of the Collision, you provided underinsured/uninsured motorist coverage to at least two of Mark Andrew Cohen's resident relatives.

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

29.

The underinsured/uninsured motorist coverage that you provided to Mark Andrew

Cohen's resident relatives provides Mark Andrew Cohen with underinsured/uninsured motorist

coverage as a resident relative.


This 12th day of January 2023.


BUTLER | KAHN

BY:  __/s/ Matthew R. Kahn_____
       JAMES E. BUTLER, III
       Georgia Bar No. 116955
       MATTHEW R. KAHN
       Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                    **ATTORNEYS FOR PLAINTIFF**

75 Pages SCANNED Wed, 18 Jan 2023 18:51:33 GMT

# EXHIBIT 7

2500 1692

SHERIFF'S ENTRY OF SERVICE

Civil Action No. __23-C-00222-S2__

Superior Court ☐    Magistrate Court ☐
State Court    ☒    Probate Court    ☐
Juvenile Court ☐

Date Filed __01/12/2023__

Georgia, __GWINNETT__    COUNTY

Attorney's Address

__Matt Kahn, Butler | Kahn__

__10 Lenox Pointe__

__Atlanta, GA 30324__

Name and Address of Party to Served

Travelers Property Casualty Company of America
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

Emily Cohen, etc., et al.
                                Plaintiff

VS.

Mary Angela Bell
                                Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

### PERSONAL
I have this day served the defendant _____ personally with a copy
☐ of the within action and summons.

### NOTORIOUS
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

### CORPORATION
Served the defendant _Travelers Property Casualty Comp. of America_ a corporation

☐ by leaving a copy of the within action and summons with _Alisha Smith_
In charge of the office and place of doing business of said Corporation in this County.

### TACK & MAIL
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

### NON EST
Diligent search made and defendant
☐ not to be found in the jurisdiction of this Court.

This _20_ day of _JAN_, 20_23_.

_J. Williams, 50/139_

DEPUTY

**CLERK'S COPY**

# EXHIBIT 8

E-FILED IN OFFICE - AK
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-00222-S2**

**2/14/2023 11:27 AM**

TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| EMILY COHEN AND JACOB COHEN, AS THE SURVIVING CHILDREN OF MARK ANDREW COHEN AND JANICE COHEN, AS THE ADMINISTRATOR OF THE ESTATE OF MARK ANDREW COHEN, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) ) | CIVIL ACTION FILE NO:   23-C-00222-S2 |
| MARY ANGELA BELL, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER AND DEFENSES OF THE
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY**

---

**COMES NOW,** THE TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY (hereinafter referred to as "Travelers"), upon whom a copy of Plaintiff's Complaint has been served, purportedly pursuant to O.C.G.A. § 33-7-11, and without submitting to the jurisdiction of the Court and without waiving any of its rights, but expressly reserving such rights, including but not limited to its right to answer and/or defend this case in the name of an individual Defendant, files this Answer and shows the Court the following:

**FIRST DEFENSE**

**Travelers** has been included in this case apparently on the Plaintiff's theory that a Defendant is an uninsured or underinsured motorist. Apparently, Plaintiff intends to rely upon uninsured motorist coverage allegedly provided by **Travelers**. **Travelers** states that for lack of sufficient information upon which to form a belief, it can neither admit nor deny that any named Defendant is an uninsured motorist or underinsured motorist within the purview of

O.C.G.A. § 33-7-11 or that any named Defendant is "uninsured" or "underinsured" under the terms of any applicable policy. **Travelers** does not admit the applicability of any coverage and does not waive its rights to contest coverage, but files this response because of service upon it of the summons and complaint.

## SECOND DEFENSE

**Travelers** shows that Plaintiff has no cause of action and has no right to proceed against it in this case as Plaintiff has failed to fully perform the conditions precedent to maintain this action by obtaining a judgment against a person shown to be uninsured or underinsured.

## THIRD DEFENSE

Plaintiff's Complaint fails to state a claim against **Travelers** for which relief can be granted, and therefore the Complaint should be dismissed as to Travelers.

## FOURTH DEFENSE

Plaintiff has failed to perform certain conditions precedent to the bringing of this action with the result that Plaintiff is not entitled to recover from **Travelers**.

## FIFTH DEFENSE

**Travelers** submits that it is entitled to any setoff as a result of insurance payments made or available to Plaintiff by way of other available and primary uninsured or underinsured motorist coverage, medical payment coverage, liability coverage, and/or workers' compensation coverage.

## SIXTH DEFENSE

To the extent that **Travelers** has made medical payments or other payments under any coverage to the Plaintiff in the above-styled action, **Travelers** hereby claims the right of set-off, payment, credit or a reduction from any judgment to prevent duplication of benefits and an unwarranted double recovery.

## SEVENTH DEFENSE

**Travelers** demands strict proof of the causal connection between Plaintiff's alleged injuries and damages to the subject accident.

## EIGHTH DEFENSE

**Travelers** hereby adopts and re-pleads by reference any and all defenses which have been raised or could have been raised by the individually named Defendants in this action including but not limited to deficient service, improper venue, and expiration of the statute of limitations.

## NINTH DEFENSE

Plaintiff's Complaint is barred from recovery against Travelers due to the expiration of the statute of limitations and/or laches, should those defenses become applicable.

## TENTH DEFENSE

**Travelers** reserves the right to add any and all additional defenses or matters of avoidance that may arise as discovery proceeds.

## ELEVENTH DEFENSE

If the Plaintiff failed to mitigate her damages, then her recovery should be reduced based on the evidence.

## ANSWER

In responding to the specific allegations of the Plaintiff's Complaint, **Travelers** states as follows:

1.

Travelers lacks sufficient information to form a belief as to the truth of the allegations contained in **any of the** Paragraphs Plaintiff's Complaint and, therefore, denies the allegations contained in those paragraphs.

2.

Travelers denies all allegations contained in Plaintiff's Complaint which have not been responded to in this Answer. Travelers further denies Plaintiff's prayer for relief and entitlement to recovery following the final Paragraph of the Complaint.

**WHEREFORE**, having answered Plaintiff's Complaint, Travelers prays:

1.    For judgment in its favor with costs against the appropriate parties;

2.    For six (6) months to complete discovery;

4.    For a trial by jury on all triable issues; and,

5.    For such other and further relief as the court deems just and proper.

Respectfully submitted, this the 14th day of February, 2023.

**DODSON & ASSOCIATES**

Matthew K. Williams
Georgia Bar No. 168912
*Attorney for Unnamed Defendant Travelers*

P.O. Box 2903
Hartford, CT 06104-2903
Main: 678-317-7104
Direct: 678-317-7115
Fax;    844-855-8988
Email: mwilli34@travelers.com

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I have this day served the foregoing **Answer of Travelers Property Casualty Insurance Company** upon all Judges, Clerks, opposing counsel and/or parties, pro-se via electronic transmission, or by placing a copy of same in the United States Mail, in a properly stamped envelope with adequate postage, if a rescission has been filed with the court.

**<u>Attorney for Plaintiff:</u>**
James E. Butler, III
Butler Law Firm
10 Lenox Pointe
Atlanta, GA 30324
jeb@butlerfirm.com

**<u>Co-Counsel for Plaintiff:</u>**
Matthew R. Kahn
Butler Law Firm
10 Lenox Pointe
Atlanta, GA 30324
matt@butlerfirm.com

**<u>Defendant ProSe</u>**
Mary Angela Bell
4110 Tuggle Road
Buford, GA 30519
*Served via U.S. Mail*

      Dated this the 14th day of February, 2023.

                      **DODSON & ASSOCIATES**

                      Matthew K. Williams
                      Georgia Bar No. 168912
                      *Attorney for Unnamed Defendant Travelers*

P.O. Box 2903
Hartford, CT 06104-2903
Main: 678-317-7104
Direct: 678-317-7115
Fax;    844-855-8988
Email: mwilli34@travelers.com

# EXHIBIT 9

E-FILED IN OFFICE - EP
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**2/28/2023 8:36 AM**
**TIANA P. GARNER, CLERK**

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN,       )
As the surviving children of MARK   )
ANDREW COHEN, and JANICE            )
COHEN as the administrator of the    )
Estate of MARK ANDREW COHEN,        )
                                     )
    Plaintiffs,                  )
                                     )        CIVIL ACTION FILE
v.                                   )        NO.: 23-C-00222-S2
                                     )
MARY ANGELA BELL,                   )
                                     )
    Defendant.                   )

## ANSWER OF DEFENDANT MARY ANGELA BELL

**COMES NOW** MARY ANGELA BELL**,** Defendant, in the above-captioned suit, and files this her Answer to Plaintiff's Complaint, respectfully showing the Court the following facts:

### FIRST DEFENSE

Plaintiff's failure to specifically plead items of special damages bars their recovery in this action.

### SECOND DEFENSE

The Plaintiff's Complaint fails to state or set forth a claim against Defendant for which the legal relief sought can be granted.

### THIRD DEFENSE

Responding specifically to each and every allegations of the Plaintiff's Complaint, Defendant shows as follows:

## PARTIES, JURISDICTION AND VENUE

1.

Responding to Paragraph 1, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

2.

Responding to Paragraph 2, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

3.

Responding to Paragraph 3, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

4.

Responding to Paragraph 4, Defendant admits each and every allegation contained therein.

5.

Responding to Paragraph 5, Defendant admits each and every allegation contained therein.

6.

Responding to Paragraph 6, Defendant admits each and every allegation contained therein.

## FACTS

7.

Responding to Paragraph 7, Defendant admits to causing the accident, however, denies all other allegations contained therein.

8.

Responding to Paragraph 8, Defendant denies each and every allegation contained therein.

## **DAMAGES**

9.

Responding to Paragraph 9, Defendant denies each and every allegation contained therein.

10.

Responding to Paragraph 10, Defendant denies each and every allegation contained therein.

11.

Responding to Paragraph 11, Defendant denies each and every allegation contained therein.

12.

Any allegation of the Plaintiff's Complaint not specifically responded to herein is hereby denied.

**WHEREFORE,** Defendant Mary Angela Bell prays as follows:

(a)    That the Complaint against her be dismissed and that she be discharged without any liability to the Plaintiff whatsoever;

(b)    That all costs of this action be cast against the Plaintiff; and

(c)    For such other and further relief as the Court deems just under the circumstances.

**THIS** 28th day of February, 2023.

GOWER, WOOTEN, & DARNEILLE, LLC

*/s/Jason D. Darneille*
JASON D. DARNEILLE
Georgia Bar No. 224108
Attorney for Defendant Mary Angela Bell

4200 Northside Parkway, NW
Building 12
Atlanta, GA 30327
(404) 662-2333
jdarneille@gwdlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date served upon opposing counsel a copy of the within and foregoing ***DEFENDANT MARY ANGELA BELL'S ANSWER*** by filing the same with this Court through the designated electronic filing system and/or depositing a copy of same in the United States mail in an appropriately addressed envelope with adequate postage thereon as follows:

James E. Butler, III, Esq.
Matthew R. Kahn, Esq.
Butler | Kahn
10 Lenox Pointe
Atlanta, GA 30324
Attorneys for Plaintiff
jeb@butlerfirm.com
matt@butlerfirm.com


Matthew K. Williams, Esq.
Dodson & Associates
P.O. Box 2903
Hartford, CT 06104-2903
Attorney for Travelers Property Casualty Ins. Co.
Mwilli34@travelers.com

**THIS** 28th day of February, 2023.

GOWER, WOOTEN, & DARNEILLE, LLC


*/s/Jason D. Darneille*
JASON D. DARNEILLE
Georgia Bar No. 224108
Attorney for Defendant Mary Angela Bell

4200 Northside Parkway, NW
Building 12
Atlanta, GA 30327
(404) 662-2333
jdarneille@gwdlawfirm.com

# EXHIBIT 10

# Butler | Kahn

*We help people and families.*

February 16, 2023

**FEDEX**
**TRACKING NO.: 7713 1579 4613**

Progressive Mountain Insurance Company
c/o CT Corporation System
289 S. Culver Street
Lawrenceville, GA 30046-4805

|  |  |  |
|---|---|---|
| Re: | **Your Insured:** | Mary Angela Bell |
|  | **My Clients:** | Emily Cohen, Jacob Cohen, and Janice Cohen |
|  | **Date of Collision:** | December 11, 2021 |
|  | **Insurer:** | Progressive Mountain Insurance Company |
|  | **Court:** | State Court of Gwinnett County |
|  | **Filing Date:** | January 12, 2023 |
|  | **Answer Date:** | February 14, 2023 |
|  | **Case No.:** | 23-C00222-S2 |

To whom it may concern,

As you know, this firm represents Emily Cohen and Jake Cohen as the wrongful death claimants of Mark Cohen and Janice Cohen as the administrator of Mark Cohen's estate regarding the fatal car accident caused by your insurance customer, Mary Angela Bell.[1]

Our client intends to hold Ms. Bell responsible for Mr. Cohen's death, his pain and suffering caused by the collision, and the other components of damages allowed by Georgia law. Those will be big numbers. As you know, if we take this case to trial, the jury will return a verdict for the full amount of our clients' damages. The jury's monetary verdict is virtually certain to be higher than your customer's insurance policy limits, and is very likely to be for more money than Ms. Bell has. After the jury reaches that verdict, the court before which this case is already pending will enter judgment on the verdict. Then Ms. Bell will be *personally liable* for every penny of the difference between the jury's verdict and the insurance policy limits. That would be financially catastrophic for her. In other words, your customer is facing tremendous financial risk. If Progressive[2] does not settle this case, Ms. Bell could lose *everything*.

Although the available insurance policy limits do not fully compensate our clients for their father's death, the Cohen family have decided to make an offer to settle this case for the insurance

---

[1] *See* Letters of Administration (Ex. A).

[2] Throughout this offer, Progressive Mountain Insurance Company is referred to as "Progressive."

policy limits.  In other words, my clients are now giving Progressive an opportunity to settle this case *without* putting Ms. Bell's personal assets at risk.  If Progressive accepts this offer in the manner specified below, then my clients will settle this case for the insurance policy limits and Ms. Bell will be able to walk away from this case without paying a penny of her own money to settle it.

That is a big concession by my clients because the insurance policy limits do not fully compensate them.  This is a generous offer, but it comes with conditions.   In order for Progressive to accept this offer on behalf of its customer, Progressive must take the steps outlined below.  If Progressive does not follow those steps exactly, then Progressive's response to this offer will constitute a counteroffer and a rejection of this offer.  Also, Progressive has got to get it right the first time.  If Progressive does not accept this offer in the manner specified in this letter, my clients will take this case to verdict and judgment.  They will not make another offer within the insurance policy limits and will no longer be willing to settle this pending lawsuit within the insurance policy limits.  In other words, this offer is Progressive's *one chance* to protect its customer from financial catastrophe, and Progressive needs to get it right.

Mark Cohen was only 54 years old when he died, leaving behind his two children, Emily and Jacob.  Mark owned a small transportation company for more than 20 years.  He was a member of North Gwinnett Baptist Church where he once served on the Deacon board.  He was a Boy Scout troop leader, loved the outdoors, animals, panning for gold, and spending time at his cabin in North Georgia.

This offer is based upon our understanding that $25,000.00 is the limit of available coverage for Mr. Cohen's bodily injuries in this collision under policy number 909690918, and that policy number 909690918 is the only policy of insurance provided by Progressive that does or may provide bodily injury insurance coverage for this collision.  In order to accept this offer, Progressive must provide to our firm, contemporaneously (i.e., same day) with its written acceptance of this offer, a sworn and notarized statement (i.e., an affidavit) that identifies all liability and casualty insurance issued by Progressive that does or may provide coverage for Ms. Bell in this collision.[3]  If our understandings summarized in the first sentence of this paragraph are incorrect, please notify our law firm immediately and note that this offer is voidable at the election of the undersigned.

It is clear that the court and jury will hold Mary Angela Bell responsible for this collision.  The police report is attached as Exhibit B.[4]  As you will see, it clearly shows that Ms. Bell was at fault for this collision.  You have probably already reached the same conclusion as you conducted the investigation that insurers are required to make under Georgia law.

---

[3] The affidavit Progressive provides must identify the individual executing the affidavit by name, position, and involvement with the case.  In many cases, insurance companies, such as Progressive characterize automobile collisions as "accidents."  An accident infers that no one was at fault for causing the collision but, here, Ms. Bell was clearly at fault.  Therefore, the affidavit Progressive provides must not call the collision an "accident."  If the affidavit calls the collision an "accident," then Progressive's response will not constitute an acceptance of this offer.  By making this offer, our clients are trusting Progressive to tell the truth about the existence or nonexistence of other potential insurance.  To that end, the affidavit Progressive provides must identify all liability and casualty insurance issued by Progressive, by policy number, that does or may provide coverage for Ms. Bell in this collision.  The affidavit must also describe Progressive's efforts to locate any other policies and state that no other policies exist that do or may provide coverage, if applicable.   The affidavit Progressive provides must not substantively go beyond the terms identified herein.  The release that Progressive writes must expressly refer to this affidavit and incorporate it by reference.

[4] This exhibit, and all others referred to in this offer, are available at the following link: https://www.dropbox.com/t/to7rmloIW7ekCmeH .  If you are unable to access the documents, please contact us in writing immediately (email is fine) and we will find another way to get them to you.

We conservatively estimate that if Progressive does not settle this case and we take it to trial, a jury would return a verdict against Ms. Bell in the amount of $25,000,000.00. For that reason, we urge Progressive to accept this offer.

My clients offer to settle this case for Ms. Bell's insurance policy limits, which we understand to be $25,000.00 (hereinafter "the Demanded Amount").[5] We reiterate that this is a generous offer, but that it comes with conditions that Progressive must meet exactly. This is a one-time offer and Progressive has to get it right the first time. If Progressive does not accept this offer exactly as specified herein, then Progressive's response to this offer will constitute a counteroffer and a rejection. This opportunity to settle the case within the insurance policy limits – such that Progressive will not place its customer at risk of losing everything – will not come again.

In this firm's previous dealings with auto insurance companies, we have seen attempts to trick our clients into accepting settlements that do not meet the conditions that our clients have specified, or that impose conditions to which our clients did not agree. Based on the past behavior of insurance companies, please be aware that we will not accept any claim by Progressive that its failure to accept this offer was "accidental." Progressive is a multi-billion-dollar company that is fully capable of accepting this offer as written. Any deviation from the conditions of this offer will constitute a counteroffer, even if Progressive later claims that the deviation was "accidental," "precatory," "just a suggestion," "immaterial," or words to that effect.

To accept this offer, Progressive (or another authorized payor) must expressly accept the offer in writing, unequivocally, and without variance of any sort, **and** must cause a check, draft, or other valid payment instrument made out to "Butler Law LLC in trust for Emily Cohen and Jacob Cohen as the wrongful death beneficiaries of Mark Cohen and Janice Cohen as the administrator of Mark Cohen's estate" in the Demanded Amount to be delivered[6] by UPS, FedEx, DHL, or USPS to Butler | Kahn, c/o Sarah Christy, 9 Swann Ridge, Palmetto GA 30268 within 14 days of the date that Progressive or its agent receives this letter by 4:00pm Eastern Time on that date.[7] If Progressive does not both accept this offer and deliver the funds to the specified address within the time limit, this offer will be automatically withdrawn, such that it can no longer be accepted. The date on which Progressive received this offer shall be conclusively determined by the first-in-time between (1) confirmation of a successful facsimile / fax transmission, (2) an email transmission, or (3) a return receipt (or substantially similar document) from the service used to deliver a paper copy (e.g., USPS, FedEx, UPS). Timely payment is a condition of acceptance. Since Progressive will

---

[5] The bases for our understanding are set forth above in the "Coverage" section.

[6] Here and every time that it appears, we use the word "deliver" in its ordinary sense, to mean "bring and hand over (a letter, parcel, or ordered goods) to the proper recipient or address" (to use the definition we pulled directly out of a dictionary). For example, an item is "delivered" when it is physically present at its destination and the bearer of the item has relinquished custody of it either by handing the item to the appropriate person or by placing the item in the appropriate place (e.g., a mail slot). The "mailbox rule" does not apply to the deadlines in this offer.

[7] *See generally Southern General Insurance Company v. Holt*, 262 Ga. 267 (1992); *McReynolds v. Krebs*, 290 Ga. 850, 853-54 (2012).

require my clients to sign a release, that release must comply with the conditions of this offer[8] and it must be a limited release.

      If you require clarification or have questions about this demand, you must send that request or question in writing to Butler | Kahn, either in hard copy to 10 Lenox Pointe, Atlanta GA, 30324 or by email to matt@butlerfirm.com *and* kerri@butlerfirm.com. This offer cannot be modified, and the deadline cannot be extended, except by agreement *in writing* from our firm. Verbal conversations or unilateral correspondence purporting to 'confirm' such conversations cannot modify this offer, its terms, or its deadlines.

      To form a valid settlement agreement, Progressive must accept this offer, unequivocally and without variance of any sort, and must perform the actions specified in the paragraphs above. All of the terms identified above are material. Time is of the essence. This letter constitutes an attempt to resolve this case pursuant to O.C.G.A. § 24-4-408. Butler | Kahn's EIN is 83-3701134 and our firm's W-9 is attached as Exhibit D. The terms of this letter will not be construed against any party on the grounds that the party drafted this letter.

## **CONCLUSION**

      Ms. Bell has been paying premiums to Progressive for years so that Progressive would protect her if something went wrong. Progressive promises that protection so its customers don't have to pay "out of pocket."



*See* Progressive Website https://www.progressive.com/answers/liability-insurance/. Now, Ms. Bell needs that protection. It is time for Progressive to live up to its promises.

      Sincerely,

---

[8] The instructions for preparing a compliant release are attached as Exhibit "C." If the proposed release does not comply with the terms of this offer, then Progressive's response will not constitute an acceptance of this offer.

BUTLER | KAHN

*/s/ Matt Kahn*

Matt Kahn

# EXHIBIT 11

PROGRESSIVE CLAIMS
3950 SHACKLEFORD RD
SUITE 500
DULUTH, GA 30096

**PROGRESSIVE®**

**Underwritten By:**
**Progressive Mountain Insurance Company**

| | |
|---|---|
| Claim Number: | 21-7399030 |
| Loss Date: | December 11, 2021 |
| Loss State: | GA |
| Document Date: | March 8, 2023 |
| Page 1 of 1 | |

**claims.progressive.com**
    Track the status and details of your
    claim, e-mail your representative or
    report a new claim.

BUTLER KAHN
MATT KAHN
10 LENOX POINTE
ATLANTA, GA 30324

# Claim Information

We appreciate the opportunity to resolve the claims of your clients against our insured.  As you may be aware, we previously pro-actively tendered the $25,000 per person bodily injury liability policy limits to your clients.  We remain willing to pay those limits in settlement of your clients' claims.

We received your most recent offer of settlement, which was sent via Federal Express to our registered agent, CT Corporation. In reviewing your offer of settlement, it is our understanding that your offer contains terms beyond the payment of the policy limits and intend to review and address those terms expeditiously.  As your letter appears to be an offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle prepared by or with the assistance of an attorney on behalf of a claimant sent prior to the filing of an answer, it appears that your offer to settle is governed by O.C.G.A. - 9-11-67.1.  There are multiple terms of your offer of settlement that appear to be non-compliant with the current requirements of O.C.G.A. - 9-11-67.1 as it was sent prior to any answer filed in the pending lawsuit. These terms include, but are not limited to, the time period within which such offer must be accepted.

In addition, the offer of settlement was not sent by certified mail as required by the statute. Nonetheless, Progressive will discuss the terms of your offer of settlement with our insured and respond promptly. As we previously stated, we remain willing and able to pay our policy limits to your clients.

Finally, we appreciate you providing the exhibits referenced in your offer of settlement electronically.  We have attempted to access them through the link provided but have been unable to do so to date.  As requested in your letter, we are notifying you of same and requesting an alternative method to access the documents.

If you have any questions, please contact us.

BEZA K TESFAYE
Claims Department
1-770-280-6632
1-800-PROGRESSIVE (1-800-776-4737)
Fax: 1-833-905-1744

Form Z587 (01/08)

# EXHIBIT 12

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| EMILY COHEN and JACOB COHEN, as the surviving children of MARK ANDREW COHEN, and JANICE COHEN as the administrator of the estate of MARK ANDREW COHEN,<br><br>        Plaintiffs,<br><br>vs.<br><br>MARY ANGELA BELL,<br><br>        Defendant. | Civil Action File No.: 23-C-00222-S2 |

## OFFER PURSUANT TO O.C.G.A. § 9-11-68

1. Plaintiffs Emily Cohen, Jacob Cohen, and Janice Cohen make this proposal in writing pursuant to O.C.G.A. § 9-11-68.  Because a settlement will be reached if this proposal is accepted, this document constitutes an offer of settlement pursuant to subsection (b)(2).

2. This proposal is being made to Defendant Mary Angela Bell.

3. This is an offer to resolve all claims arising from the automobile collision that occurred on December 11, 2021, including but not limited to any claims for compensatory damages, punitive damages, attorney's fees, and other expenses.

4. The total amount of this offer is $6,326,057.00 (i.e., six million three hundred twenty-six thousand fifty-seven dollars) (hereinafter, the "demanded amount").

5. This offer will remain open for thirty days (unless it is sooner withdrawn by Plaintiffs in writing or rejected by Defendant.  After that thirty-day period this offer will expire, such that it can no longer be accepted.

Page 1 of 6

6.   The other relevant conditions of this offer are as follows:

    a.   To accept this offer, Defendant must accept this offer in writing, unequivocally, and without variance of any sort.

    b.   Defendant Mary Angela Bell must consent to the entry of the Consent Judgment attached as Exhibit 1.  *See* O.C.G.A. § 9-11-68(a) (offers under Rule 68 may validly require the offeree "to allow judgment to be entered").

    c.   Defendant Mary Angela Bell must agree not to appeal from the judgment or move to have it vacated, modified, set aside, or voided.

    d.   Defendant Mary Angela Bell (or the appropriate insurer, indemnitor, or other authorized payor(s)) must pay the full amount of the settlement by delivering the funds to Butler | Kahn, c/o Sarah Christy, 9 Swann Ridge, Palmetto GA 30268[1] within 14 days of acceptance.

    e.   Any check, draft, or payment instrument sent by in response to this offer must indicate somewhere on its face, in the "memo" line, the "for" line, or elsewhere, that the payment is for "personal physical injuries."

    f.   Upon timely payment of the judgment, Plaintiffs will request that the Clerk mark the judgment paid and satisfied, and will dismiss the case with prejudice.

    g.   Timely payment is a condition of acceptance; time is of the essence; the mailbox rule does not apply to the delivery of the settlement funds; and this offer will not be construed against any party on the grounds that the party drafted it.

---

[1] We would prefer that the funds be sent by UPS, FedEx, or a similar carrier to this address in Palmetto.  However, if you insist on hand delivery, then please deliver the funds to Butler | Kahn, 10 Lenox Pointe, Atlanta GA 30324.  Our address in Palmetto does not accept hand deliveries.

h. This offer cannot be modified, and the deadline cannot be extended, except by agreement *in writing* from our firm.  Verbal conversations or unilateral correspondence purporting to 'confirm' such conversations cannot modify this offer, its terms, or its deadlines.

7. This proposal contemplates a lump sum settlement amount to resolve all of the claims described above, so if this offer is accepted, then any claim for punitive damages would be resolved (in addition to other claims).  The specific amount of the settlement funds that is allocated or proposed to settle any claim for punitive damages is $0.00.

8. This proposal contemplates a lump sum settlement amount to resolve all of the claims described above, so if this offer is accepted, then any claim for attorney's fees or other expenses would be resolved (in addition to other claims).  At present, Plaintiffs have made attorney's fees or other expenses part of the legal claim.  *See* Complaint.  The specific amount of the settlement funds allocated or proposed to settle any claim for attorney's fees and other expenses is $0.00.

9. This offer includes a Certificate of Service and is served upon Defendant by certified mail pursuant to O.C.G.A. § 9-11-68(a)(8).

Dated this 21st day of March 2023.

BUTLER | KAHN

BY:  ___/s/ Matthew R. Kahn_____
      MATTHEW R. KAHN
10 Lenox Pointe                                Georgia Bar No. 833443 Atlanta,
Georgia 30324                                  JAMES E. BUTLER, III
matt@butlerfirm.com                            Georgia Bar No. 116955
jeb@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646                               **ATTORNEYS FOR PLAINTIF**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this date, I have served the foregoing offer pursuant to

Rule 68 upon all parties to this matter via certified mail or statutory overnight delivery to the

following attorneys of record:

| | |
|---|---|
| Jason D. Darneille | Matthew K. Williams |
| Gower Wooten & Darnielle LLC | Dodson & Associates |
| Building 12 | P.O. Box 2903 |
| 4200 Northside Parkway | Hartford, CT 06104-2903 |
| Atlanta, GA 30327 | Mwilli34@travelers.com |
| jdarneille@gwdlawfirm.com | *Attorney for Travelers Property Cas. Ins. Co.* |
| *Attorney for Defendant* | |

Dated this 21st day of March 2023.

BUTLER | KAHN

BY:  <u>  */s/ Matthew R. Kahn*        </u>
MATTHEW R. KAHN
Georgia Bar No. 833443
JAMES E. BUTLER, III
Georgia Bar No. 116955

10 Lenox Pointe
Atlanta, Georgia 30324
matt@butlerfirm.com
jeb@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646            **ATTORNEYS FOR PLAINTIF**

**EXHIBIT 1**

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN as the
administrator of the estate of MARK
ANDREW COHEN,

       Plaintiffs,

vs.

MARY ANGELA BELL,

       Defendant.

Civil Action File No.: 23-C-00222-S2

**CONSENT JUDGMENT**

Plaintiffs Emily Cohen, Jacob Cohen, and Janice Cohen and Defendant Mary Angela Bell

have consented to this judgment.  Therefore, the Court enters judgment for Plaintiffs and against

Defendant Mary Angela Bell in the amount of 6,326,057.00 (i.e., six million three hundred

twenty-six thousand fifty-seven dollars).

Dated this ___ day of _____, 2023.

                                  **_____**
                                  Judge Shawn F. Bratton
                                  State Court of Gwinnett County

# EXHIBIT 13



**SUPREME COURT OF GEORGIA**
Case No. S25C1253

December 09, 2025

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

PROGRESSIVE MOUNTAIN INSURANCE COMPANY v. EMILY COHEN et al.

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur.*

Court of Appeals Case No. A25A0116

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.

Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____ , Clerk

# EXHIBIT 14

E-FILED IN OFFICE - NN
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-00222-S2**
**4/11/2024 3:39 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN, as the
administrator of the estate of MARK
ANDREW COHEN,

      Plaintiff,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

### CONSOLIDATED PRETRIAL ORDER

The following constitutes a Pre-Trial Order entered in the above styled case after

conference with counsel for the parties:

1. The name, address and phone number of the attorneys who will conduct the trial are as

   follows:

   a. **Plaintiffs:** James E. Butler, III and Matthew R. Kahn; Butler | Kahn, 10 Lenox

      Pointe, Atlanta, Georgia 30324; jeb@butlerfirm.com, matt@butlerfirm.com;

      (678) 940-1444.

   b. **Defendant:** Jason D. Darneille and Anne D. Gower; Gower, Wooten & Darneille,

      LLC; 4200 Northside Parkway, NW, Building 12, Atlanta, Georgia 30327;

      jdarneille@gwdlawfirm.com, agower@gwdlawfirm.com; (404) 662-2333.

2. The estimated time required for trial is **three to four days**.

3. There are no motions or other matters pending for consideration by the court except as

   follows:

   a. **Plaintiffs:**

      i. Plaintiffs will file motions in limine.

      ii. Plaintiffs may file bench briefs regarding voir dire, or such other issues as may arise.

   b. **Defendant:**

      i. Defendant will file motions in limine.

4. The jury will be qualified as to the relationship with the following:

   a. **Plaintiffs:** Progressive Mountain Insurance Company, counsel for Defendant,[1] James E. Butler III, Matthew R. Kahn, Butler Kahn, Richard E. Dolder, and Slappey & Sadd, LLC.

   b. **Defendant:** Plaintiff and Plaintiff's counsel. Defendant objects to qualification of the jury as to defense counsel as defense counsel has no financial interest in the case.

5. Discovery

   a. All discovery has been completed, and the court will not consider any further motions to compel discovery except for good cause shown. The parties, however, shall be permitted to take depositions of any person(s) for the preservation of evidence for the use at trial.

6. The following is the Plaintiffs' brief and succinct outline of the case and contentions:

This is a wrongful death case arising from a head-on collision. On December 11, 2021, Defendant Mary Angela Bell suddenly crossed a double-yellow line, entered oncoming traffic,

---

[1] Plaintiffs acknowledge that the rules do not ordinarily require the Court to qualify the jurors as to defense counsel. However, the Court has the discretion to do so, and Plaintiffs suggest that doing so is conducive to a fair trial. Of course, defense counsel does have a financial interest in winning insofar as defense counsel wants to continue being retained by the insurer.

and struck the front of Mark Cohen's minivan. Cohen saw Bell approaching and honked his horn but could not avoid the collision. Cohen survived for seconds to minutes after the collision, after which he died.

Plaintiffs are Mr. Cohen's surviving children and former wife, who is serving as the administrator of Mr. Cohen's estate on behalf of the children. Plaintiffs contend, and Defendant, admits, that Defendant's negligence caused Mark Cohen's injuries and death. Plaintiffs seek damages to compensate Plaintiffs for the full value of Mark Cohen's life; pre-impact fright, shock, and terror; post-impact pain and suffering; and such other damages as are allowed by law. Plaintiffs also seek to recover attorney's fees under O.C.G.A. § 13-6-11 because Mary Angela Bell violated laws that were enacted for the protection of Mark Cohen.

7. The following is the Defendant's brief and succinct outline of the case and contentions:

The Defendants object to the Court's reading the Plaintiffs' outline of the case and contentions to the jury as it contains allegations which are not supported by the evidence in this case, and that it contains statements or conclusions which the defendant contends will not be allowed to be presented to the jury.

Defendant admits causing the accident. Defendant denies that Plaintiffs are entitled to the amount of money claimed.

8. The issues for determination by the jury are as follows:

    a. **Plaintiffs:** damages and attorney's fees under O.C.G.A. § 13-6-11.

    b. **Defendant:** Proximate Cause and Damages

9. Specifications of negligence including applicable code sections are as follows:

    a. **Plaintiffs:**

      i.   Mary Angela Bell failed to exercise reasonable care in violation of O.C.G.A. § 51-1-2.

      ii.   Mary Angela Bell failed to keep a proper lookout ahead.

      iii.   Mary Angela Bell failed to maintain her lane in violation of O.C.G.A. § 40-6-48.

      iv.   Mary Angela Bell violated of the Georgia Uniform Rules of the Road.

      v.   Mary Angela Bell acted in bad faith as contemplated by O.C.G.A. § 13-6-11.

      vi.   All common law specifications of negligence.

  b.  **Defendant:** Common law principles of negligence, proximate cause and damages.

10. If the case is based on a contract, either oral or written, the terms of the contract are as follows (or, the contract is attached as an Exhibit to this order): N/A

11. The type of damages and the applicable measure of those damages are stated as follows:

  a.  **Plaintiffs:**

      i.   Damages for the full value of the life of Mark Andrew Cohen to himself had he lived rather than died, pursuant to Georgia's Wrongful Death Act.

      ii.   Damages for Mark Cohen's pre-collision fright, shock, and terror.

      iii.   Damages for Mark Cohen's post-impact pain and suffering.

      iv.   The present value of all of Mark Cohen's future earnings, benefits, and household services had he lived rather than died.

      v.   Attorney fees under O.C.G.A. §§ 13-6-11, 9-11-68, 51-12-14.

      vi.   The applicable measures of damages is the enlightened conscience of the

jury.

**Defendant:** Defendant denies the plaintiffs are entitled to the award of damages sought. Defendant object to any special damages that have not been specifically stated herein. Defendant does not stipulate, or otherwise agree, that the amount of damages claimed by the plaintiffs accurately reflects the loss, if any, allegedly sustained by the plaintiffs. Defendant does not stipulate, or otherwise agree, that the amount of future earnings, benefits, and household services claimed by the Plaintiffs is correct. In asserting these objections, Defendant does not waive any other objection that he may have with respect to the inclusion of these figures in the Pre-Trial Order.

12. If this case involves divorce, each party shall present to the court at the pre-trial conference the affidavits required by Rule 24.2:  N/A.

13. The following facts are stipulated:

    a.  The parties stipulate to the admissibility of:

        i.  the animation of the collision and mechanism of fatality.

        ii.  Mary Angela Bell's certified disposition for Case No. 22SR4595N.

        iii.  Mark Cohen's Death Certificate.

        iv.  the Certified Motor Vehicle Crash Report.

        v.  GSP dash camera footage.

        vi.  Mary Angela Bell's certified cell phone records.

        vii.  Post-collision photographs of Mary Angela Bell's vehicle.

        viii.  Post-collision photographs of Mark Cohen's vehicle.

        ix.  Photographs of Mark Cohen.

        x.  Videos of Mark Cohen.

      b.  Mary Angela Bell crossed over the center line and struck Mark Cohen's vehicle.

      c.  Mary Angela Bell caused the accident.

14. The following is a list of all documentary and physical evidence that will be tendered at

    the trial by the Plaintiff or Defendant. Unless noted, the parties have stipulated as to the

    authenticity of the documents listed and the exhibits listed may be admitted without

    further proof of authenticity. All exhibits shall be marked by counsel prior to trial so as

    not to delay the trial before the jury.

    a.  **Plaintiffs:**

        i.  Plaintiffs' list of evidence that will be tendered at trial is attached hereto as

          Exhibit "A."

    b.  **Defendant:**

        i.  Motor Vehicle Report

        ii.  Photographs of the Vehicle

        iii.  Photographs of the accident scene

        iv.  Employment records of the plaintiff

        v.  Earning documents of Plaintiff

        vi.  Any and all pleadings prepared and filed to date

        vii.  Any and all documents listed on behalf of the plaintiff

15. Special authorities relied upon by Plaintiffs relating to peculiar evidentiary or other legal

    questions are as follows:

    a.  None, except as cited in briefs that are already filed.  Plaintiff may file bench

       briefs regarding voir dire, or such other issues as may arise.

16. Special authorities relied upon by Defendant relating to peculiar evidentiary or other legal questions are as follows:

    a.   Plaintiff is barred from claiming special damages which are not specifically pled. O.C.G.A. § 9-11-9(g).

17. All requests to charge anticipated at the time of trial will be filed in accordance with Rule 10.3.

18. The testimony of the following persons may be introduced by depositions:

    a.   Plaintiffs intend to introduce the testimony of Dr. Gerald Gowitt in the form of a medical narrative. Plaintiffs provided proper notice pursuant to O.C.G.A. § 24-8-826.

    b.   Plaintiffs intend to introduce the testimony of Bob Pounds by video deposition.

    c.   Any person listed in Paragraph 19 below or who has been deposed.

    d.   The parties shall be permitted to take the deposition for use at trial of the custodian of any medical records, any witness whose deposition was taken who is unavailable to attend trial pursuant to O.C.G.A. § 9-1 l-32, and any person listed by any other Party.

19. The following are lists of witnesses the

    a.   Plaintiff <u>will</u> have present at trial:

        i.   None.

    b.   Plaintiff <u>may</u> have present at trial:

        i.   Emily Cohen

        ii.   Jacob Cohen

        iii.   Janice Cohen

iv. Mary Angela Bell

v. Ricky George

vi. Andolfo Baten

vii. Rebecca Hamrick

viii. Michael Talton

ix. Lisa Cannon

x. Clayton Cagle

xi. Carey Hudson

xii. James Eaton

xiii. Regina Young

xiv. Clayton Harris

xv. Tina Sweat

xvi. Brenda Richardson

xvii. Mike Gibbons

xviii. Mark Cook

xix. Paul Phillips

xx. Donna Adams

xxi. Bob Pounds

xxii. Stephanie Morrison

xxiii. Dr. Gerald Gowitt

xxiv. Nicholas Earnhart

xxv. Jim Persinger

xxvi. J.P. Gingras

     xxvii.  Any necessary records custodian

    xxviii.  Any individual identified in discovery

     xxix.  Any person listed in the medical records produced by Plaintiffs.

Opposing counsel may rely on representation by the designated party that he will have a witness present unless notice to the contrary is given in sufficient time prior to trial to allow the other party to subpoena the witness or obtain his testimony by other means.

    c.  Defendant <u>will</u> have present at trial:

       i.  None

    d.  Defendant <u>may</u> have present at trial:

       i.  Emily Cohen

      ii.  Jacob Cohen

     iii.  Janice Cohen

     iv.  Mary Angela Bell

      v.  Any witness listed by the Plaintiff

     vi.  A representative of Plaintiff's employer

    vii.  Any witness necessary for rebuttal

Opposing counsel may rely on representation by the designated party that he will have a witness present unless notice to the contrary is given in sufficient time prior to trial to allow the other party to subpoena the witness or obtain his testimony by other means.

20. The form of all possible verdicts to be considered by the jury are as follows:

    a.  **Plaintiff:** Plaintiff proposes a verdict form as shown below:

1. We, the jury find that Plaintiffs are entitled to recover damages as follows:

    a.  The full value of Mark Cohen's life: _____

    b.  Mark Cohen's pre-collision fright, shock, and terror: _____

    c.  Mark Cohen's post-collision pain and suffering: _____

## ATTORNEYS' FEES

1. ____ We find that Mary Angela Bell acted in bad faith.

2. ____ We, the jury find in favor of Defendant and against Plaintiffs as to attorneys' fees.

Dated this _____ day of _____, 2023

_____
FOREPERSON (PRINT NAME)

_____
FOREPERSON (SIGNATURE)

    b.  **Defendant:** Defendant will submit a verdict form after the close of evidence.

21. Miscellaneous

    a.  The possibilities of settling this case are **low.**

    b.  The parties do want the case reported.

    c.  The cost of take down will be paid by the parties equally.

    d.  Other matters: None.

Respectfully submitted this 10th day of April 2024.


**BUTLER | KAHN**

*/s/ Matthew R. Kahn*
James E. Butler, III
jeb@butlerfirm.com
Georgia Bar No. 116955
Matthew R. Kahn
Georgia Bar No. 833443
matt@butlerfirm.com
10 Lenox Pointe
Atlanta, GA 30324
Phone: 678-940-1444
Fax: 678-306-4646

**GOWER, WOOTEN, & DARNEILLE, LLC**

*/s/ Jason D. Darneille*
Jason D. Darneille
jdarneille@gwdlawfirm.com
Georgia Bar No. 224108
4200 Northside Parkway NW
Building 12
Atlanta, Georgia 30327
Phone: 404-662-2333

## ORDER

It is hereby ordered that the foregoing, including the attachments thereto, constitutes the

PRETRIAL ORDER in the above case and supersedes the pleadings which may not be further

amended except by order of the court to prevent manifest injustice.


SO ORDERED, this __11__ day of April 2024.


Honorable Shawn Bratton, Judge
State Court of Gwinnett County

# EXHIBIT A

## Plaintiff's Trial Exhibit List

| Exhibit No. | Description |
|---|---|
| 1 | Bell's Certified Cell Phone Records (COHEN 002093) |
| 2 | Animation – Reconstruction and Mechanism of Fatality (COHEN 02329) |
| 3 | Bell's Certified Disposition (COHEN 03081 - 03083) |
| 4 | Certified Death Certificate (COHEN 02438 - 02439) |
| 5 | Certified Coroner's Death Report (COHEN 00327 - 00328) |
| 6 | Certified Motor Vehicle Crash Report (COHEN 001-007) |
| 7 | GSP Dash Camera Footage (COHEN 00944 – 00945) |
| 8 | Bell's Certified DDS Driver History (COHEN 02101 – 02104) |
| 9 | **not presently used, reserved for future use** |
| 10 | Spoliation Letter |
| 11 | **not presently used, reserved for future use** |
| 12 | **not presently used, reserved for future use** |
| 13 | Composite Exhibit of GSP Vehicle Inspection Photos (COHEN 00727 – 00820) |
| 14 | Composite Exhibit of GSP Investigation Photos (COHEN 00655 – 00726) |
| 15 | GSP Investigation Photo – Cohen Vehicle (COHEN 00698) |
| 16 | GSP Investigation Photo – Cohen Vehicle (COHEN 00699) |
| 17 | GSP Investigation Photo – Cohen Vehicle (COHEN 00700) |
| 18 | GSP Investigation Photo – Cohen Vehicle (COHEN 00701) |
| 19 | GSP Investigation Photo – Cohen Vehicle (COHEN 00666) |
| 20 | GSP Investigation Photo – Cohen Vehicle (COHEN 00692) |
| 21 | GSP Investigation Photo – Cohen Vehicle (COHEN 00695) |
| 22 | GSP Investigation Photo – Cohen Vehicle (COHEN 00697) |
| 23 | GSP Investigation Photo – Cohen Vehicle (COHEN 00690) |
| 24 | GSP Investigation Photo – Both vehicles (COHEN 00663) |
| 25 | GSP Investigation Photo - Bell Vehicle (COHEN 00675) |
| 26 | GSP Investigation Photo – Bell Vehicle (COHEN 00676) |
| 27 - 49 | **not presently used, reserved for future use** |
| 50 | Earnhart – scene inspection photographs (COHEN 02225 – 02320) |
| 51 | Earnhart – scene inspection drone photographs (COHEN 02128 – 02224) |
| 52 | Earnhart – CV (COHEN 02368 – 02371) |
| 53 | Earnhart – Site Diagram (COHEN 02572 – 02578) |
| 54 | Earnhart – Time-Distance Analysis (COHEN 02579) |
| 55 | Earnhart – Photo Scaling Workbook (COHEN 02571) |
| 56 | Earnhart – Photo Scaling Analysis (COHEN 02569 – 025770) |
| 57 | Earnhart – Dimensional Data (COHEN 02567 – 02568) |
| 58 | Earnhart – Crash Analysis (COHEN 02561 – 02563) |
| 59 | Earnhart – Aerial photograph (COHEN 02557) |
| 60 | Earnhart – Google Street View (COHEN 02558) |
| 61 | Earnhart – Google Street View (COHEN 02559) |
| 62 – 79 | **not presently used, reserved for future use** |
| 80 | Gingras – Economic Losses/Damages Analysis (COHEN 03087) |
| 81 | Gingras – AICPA – Guide for Damages Calculation (COHEN 03152 - 03209) |
| 82 | Gingras – Forensic & Valuation Services Practice Aid (COHEN 03364 - 03403) |

**Plaintiff's Trial Exhibit List**

| Exhibit No. | Description |
|---|---|
| 83 | Gingras – AICPA Reasonable Certainty (COHEN 03210 - 03316) |
| 84 | Gingras - Loss of Household Services Demonstrative |
| 85 | Gingras - Lost Benefits Demonstrative |
| 86 | Gingras - Lost Earnings & Benefits Demonstrative |
| 87 | Gingras - Lost Earnings Demonstrative |
| 88 | Gingras – Opinions Summary |
| 89 – 99 | **not presently used, reserved for future use** |
| 100 | Photograph – Mark and Emily at Graduation (COHEN 00329) |
| 101 | Photograph – Mark and Emily (COHEN 00330) |
| 102 | Photograph – Mark and Mother (COHEN 00331) |
| 103 | Photograph – Mark and Kids on Rollercoaster (COHEN 00332) |
| 104 | Photograph – Mark and Santa Claus (COHEN 00333) |
| 105 | Photograph – Mark and Jake (COHEN 00334) |
| 106 | Photograph – Mark on Mountain (COHEN 00335) |
| 107 | Photograph – Cohen Family (COHEN 00336) |
| 108 | Photograph – Mark and Janice (COHEN 00337) |
| 109 | Photograph – Mark, Jake, and Jan at Boy Scouts (COHEN 00338) |
| 110 | Photograph – Mark and Jake Driving (COHEN 00339) |
| 111 | Photograph – Mark and Jan (COHEN 00340) |
| 112 | Photograph – Mark (COHEN 00341) |
| 113 | Photograph – Mark and Dog (COHEN 00342) |
| 114 | Photograph – Mark and Family (COHEN 00343) |
| 115 | Photograph – Mark and Jake Hiking (COHEN 00344) |
| 116 | Photograph – Cohen Family (COHEN 02114) |
| 117 | Photograph – Mark and Jake Hiking (COHEN 02115) |
| 118 | Photograph – Mark and Mother (COHEN 02116) |
| 119 | Photograph – Mark with a fish (COHEN 02117) |
| 120 | Photograph – Mark with kids at Church (COHEN 02118) |
| 121 | Photograph – Mark with kids in woods (COHEN 02119) |
| 122 | Photograph – Mark with a fish (COHEN 02120) |
| 123 | Photograph – Mark with Nerf gun (COHEN 02121) |
| 124 | Photograph – Cohen Family (COHEN 02122) |
| 125 | Photograph – Mark and Emily in Nature (COHEN 02123) |
| 126 | Photograph – Cohen Family Winter (COHEN 02124) |
| 127 | Photograph – Mark and Dog (COHEN 02125) |
| 128 | Photograph – Mark, Jake, and Dog (COHEN 02126) |
| 129 | Photograph – Mark and friends (COHEN 02127) |
| 130 | Photograph – Mark and Boy Scouts (COHEN 02321) |
| 131 | Photograph – Mark and Jan (COHEN 02322) |
| 132 | Photograph – Mark and family (COHEN 02323) |
| 133 | Photograph – Mark and family at wedding (COHEN 02324) |
| 134 | Photograph – Cohen Family (COHEN 02325) |
| 135 | Photograph – Mark and Emily (COHEN 02326) |

**Plaintiff's Trial Exhibit List**

| Exhibit No. | Description |
|---|---|
| 136 | Photograph – Mark kissing Jan (COHEN 02328) |
| 137 | Video – Mark kissing his mother (COHEN 03080) |
| 138 | Video – Mark playing with his dog (COHEN 03079) |
| 139 | FB Post - Cannon Delivery Service FB Post (COHEN 03086) |
| 140 | Photograph - Mark Cohen with Family (COHEN 03085) |
| 141 | Video – Mark and Ollie (his dog) (COHEN 03411) |
| 142 | Video – Mark in the car with Ollie (COHEN 03412) |
| 143 | Video – Mark with Ollie (COHEN 03413) |
| 144 | Photograph – Mark with Ollie (COHEN 0314) |
| 145 | Photograph – The Grill (COHEN 03415) |
| 146 | Photograph – Mark with kids (COHEN 03416) |
| 147 | Photograph – Mark with Ollie (COHEN 03417) |
| 148 | Photograph – Mark with Ollie (COHEN 03418) |
| 149 | Photograph – Cohen Family - Escape Room (COHEN 03419) |
| 150 | Photograph – Cohen Family at the Beach (COHEN 03420) |
| 151 | Photograph – Cohen Family Christmas (COHEN 03421) |
| 152 | Photograph – Cohen Family on Vacation (COHEN 03422) |
| 153 | Photograph – Cohen Family (COHEN 03423) |
| 154 | Photograph – Jan, Grandma & Mark (COHEN 03424) |
| 155 | Photograph – Mark & Baby Jake (COHEN 03425) |
| 156 | Photograph – Mark & Baby (COHEN 03426) |
| 157 | Photograph – Mark & Jake Camping (COHEN 03427) |
| 158 | Photograph – Mark & Jan (COHEN 03428) |
| 159 | Photograph – Mark & Kids Goldpanning (COHEN 03429) |
| 160 | Photograph – Mark & Kids (COHEN 03430) |
| 161 | Photograph – Mark & Ollie (COHEN 03431) |
| 162 | Photograph – Mark & Ollie (COHEN 03432) |
| 163 | Photograph – Mark & Jake at Disney (COHEN 03433) |
| 164 | Photograph – Mark & Jan - Birth of Child (COHEN 03434) |
| 165 | Photograph – Mark & Jan at the Beach (COHEN 03435) |
| 166 | Photograph – Mark & Kids Birthday Cake (COHEN 03436) |
| 167 | Photograph – Mark & Kids - Viking Hats (COHEN 03437) |
| 168 | Photograph – Mark & Newborn Baby (COHEN 03438) |
| 169 | Photograph – Mark & Newborn Baby (COHEN 03439) |
| 170 | Photograph – Mark as Giraffe (COHEN 03440) |
| 171 | Photograph – Mark Handing Emily a Pup (COHEN 03441) |
| 172 | Photograph – Mark Kissing Newborn (COHEN 03442) |
| 173 | Photograph – Mark with Baby Emily (COHEN 03443) |
| 174 | Photograph – Mark with Baby (COHEN 03444) |
| 175 | Photograph – Mark with Kids (COHEN 03445) |
| 176 | Photograph – Mark with Sleeping Baby (COHEN 03446) |
| 177 | Photograph – Mark, Emily & Fish (COHEN 03447) |
| 178 | Photograph – Mark, Jan & Child (COHEN 03448) |

## Plaintiff's Trial Exhibit List

| Exhibit No. | Description |
|---|---|
| 179 | Photograph – Mark, Jan & Newborn Child (COHEN 03449) |
| 180 | Photograph – Post Card (COHEN 03450) |
| **181 – 189** | **not presently used, reserved for future use** |
| 190 | Cohen Tax Documents (COHEN 00354-00465) |
| **191 – 199** | **not presently used, reserved for future use** |
| 200 | Annuity Mortality Table of 1949, Ultimate |
| 201 | National Vital Statistics Reports, U.S. Life Tables, 2021 [pp. 1 and 46] |
| **202 -209** | **not presently used, reserved for future use** |
| 210 | Defendant's Answer (COHEN 02450-02454) |
| 211 | Defendant's Responses to Plaintiffs' RFAs (COHEN 02455-02462) |
| **212 – 249** | **not presently used, reserved for future use** |
| 250 | Plaintiffs' Representation Agreement |
| 251 | Summary of Case Expenses |
| 252 | Composite Exhibit of Case Expenses |

Other documentary or physical evidence may include:

- Any pleadings from the case, including discovery responses or responses to requests for admission.
- Agreements for Representation, pleadings, correspondence, and other documents related to Plaintiffs' attorneys fees and case work.
- All documents produced in discovery.
- All documents marked as exhibits to depositions.
- Any document or item listed by Defendant.
- Demonstrative exhibits.

Plaintiffs may supplement this list if additional evidence becomes available through late discovery, depositions, or otherwise.

# EXHIBIT 15

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**4/18/2024 10:30 AM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN, as the
administrator of the estate of MARK
ANDREW COHEN,

      Plaintiff,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

---

## VERDICT FORM

1. We, the jury, find that Plaintiffs are entitled to recover damages as follows:

   a. The full value of Mark Cohen's life: _26,500,000_

   b. Mark Cohen's pre-collision fright, shock, and terror: _1,500,000_

   c. Mark Cohen's post-collision pain and suffering: _Ø_

2. ___ We, the jury, find that the Defendant's admitted negligence did not cause any damages.

Dated this _17th_ day of April 2024.

_Jennifer Black_
FOREPERSON (PRINT NAME)

_Jennifer Black_
FOREPERSON (SIGNATURE)

# EXHIBIT 16

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-00222-S2**
**5/14/2024 1:13 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

EMILY COHEN and JACOB COHEN, as the
surviving children of MARK ANDREW
COHEN, and JANICE COHEN, as the
administrator of the estate of MARK
ANDREW COHEN,

      Plaintiff,

vs.

MARY ANGELA BELL,

      Defendant.

Civil Action File No.: 23-C-00222-S2

---

### JUDGMENT

This case came before this Court for trial on April 15, 16, and 17, 2024.  The jury having

returned their verdict on April 17, 2024 in favor of Plaintiffs, this Court enters Judgment for the

Plaintiffs and against Defendant in the amount of $29,252,397.30 plus post-judgment interest, as

follows:

1. $28,000,000 for compensatory damages.

2. $1,252,397.26 for pre-judgment interest under the Unliquidated Damages and
   Interest Act (i.e., O.C.G.A. § 51-12-14).

3. Post-judgment interest which shall accrue in the amount of $9,216.51 per day
   according to Georgia law.

This _____14_____ day of _____May_____ 2024.


_____
Hon. Shawn Bratton
State Court of Gwinnett County

# EXHIBIT 17

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-00222-S2**

**11/18/2024 1:51 PM**

TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| EMILY COHEN and JACOB COHEN, as | ) | |
| the surviving children of MARK ANDREW | ) | |
| COHEN, and JANICE COHEN as the | ) | |
| Administrator of the estate of MARK | ) | |
| ANDREW COHEN, | ) | CIVIL ACTION FILE |
|     Plaintiff, | ) | NUMBER 23-C-00222-S2 |
| v. | ) | |
| | ) | |
| MARY ANGELA BELL, | ) | |
|     Defendant. | ) | |

## JUDGMENT FOR O.C.G.A. § 9-11-68 ATTORNEY FEES AND EXPENSES OF LITIGATION

Plaintiffs' Motion to Amend Judgment to Include Attorney's Fees and Litigation Expenses Under O.C.G.A. § 9-11-68 having been heard, after considering the motion, Defendant's response thereto, the arguments of counsel, all matters of record, and the applicable and controlling law, the Court finds that an award of attorney fees and expenses is warranted under the Tort Reform Act.

**WHEREFORE** Judgment is hereby entered in favor of Plaintiff and against Defendant in the principal amount of $6,326,057.00 for attorney fees, plus $92,850.34 in litigation expenses, with post-judgment interest to accrue at the legal rate.

SO ORDERED this ___18___ day of ___Nov.___, 2024.

_____
Shawn F. Bratton, Judge
State Court of Gwinnett County

Joseph Iannazzone
By Designation

# EXHIBIT 18

9611A GA 0515

# GEORGIA
## AUTO POLICY

Form 9611A GA (05/15)
version 2.0



**INSURING AGREEMENT** ................................................................................. 1

**GENERAL DEFINITIONS** .................................................................................. 1

**PART I—LIABILITY TO OTHERS**

  Insuring Agreement ..................................................................................3
  Additional Definitions...............................................................................3
  Additional Payments.................................................................................3
  Exclusions ................................................................................................4
  Limits of Liability......................................................................................5
  Financial Responsibility Laws .................................................................6
  Other Insurance .......................................................................................6
  Out-of-State Coverage .............................................................................7

**PART II—MEDICAL PAYMENTS COVERAGE**

  Insuring Agreement ..................................................................................7
  Additional Definitions...............................................................................7
  Exclusions ................................................................................................8
  Limits of Liability......................................................................................9
  Unreasonable or Unnecessary Medical Expenses .................................9
  Other Insurance .....................................................................................10

**PART III—UNINSURED MOTORIST COVERAGE**

  Insuring Agreement ................................................................................10
  Additional Definitions.............................................................................10
  Exclusions ..............................................................................................11
  Limits of Liability....................................................................................12
  Other Insurance .....................................................................................14

**PART IV—DAMAGE TO A VEHICLE**

  Insuring Agreement—Collision Coverage ..............................................14
  Insuring Agreement—Comprehensive Coverage ...................................14
  Insuring Agreement—Additional Custom Parts or
    Equipment Coverage ...........................................................................15
  Insuring Agreement—Rental Reimbursement Coverage........................15
  Insuring Agreement—Loan/Lease Payoff Coverage ..............................16
  Insuring Agreement—Pet Injury Coverage .............................................16
  Additional Definitions.............................................................................17
  Exclusions ..............................................................................................17
  Limits of Liability....................................................................................19
  Payment of Loss.....................................................................................20
  No Benefit to Bailee ...............................................................................20
  Loss Payable Clause..............................................................................21
  Other Sources of Recovery....................................................................21
  Appraisal ................................................................................................21

**PART V—ROADSIDE ASSISTANCE COVERAGE**

Insuring Agreement ................................................................22
Additional Definitions................................................................22
Exclusions ................................................................22
Unauthorized Service Provider................................................................23
Other Insurance ................................................................23

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS**............................23

**PART VII—GENERAL PROVISIONS**

Policy Period and Territory................................................................24
Changes................................................................24
Duty to Report Changes ................................................................25
Settlement of Claims ................................................................25
Terms of Policy Conformed to Statutes ................................................................25
Transfer of Interest ................................................................25
Fraud or Misrepresentation ................................................................25
Payment of Premium and Fees ................................................................26
Cancellation ................................................................27
Cancellation Refund................................................................29
Nonrenewal ................................................................29
Automatic Termination................................................................29
Legal Action Against Us................................................................29
Our Rights to Recover Payment................................................................29
Joint and Individual Interests................................................................30
Bankruptcy ................................................................31

**GEORGIA AUTO POLICY**

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, the **declarations page**, and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.

   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

   However, "**auto**" does not include golf carts, step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. "**Covered auto**" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.

6. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. "**Occupying**" means in, on, entering or exiting.

**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

9. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
   a. listed in the "Drivers and household residents" section on the **declarations page**; and
   b. not designated as either an "Excluded" or a "List Only" driver.

10. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

11. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

12. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

13. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
   a. for commercial purposes;
   b. as an office, store, or for display purposes; or
   c. as a passenger conveyance.

14. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

15. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

16. "**You**" and "**your**" mean:
   a. a person shown as a named insured on the **declarations page**; and
   b. the spouse of a named insured if residing in the same household at the time of the loss. Unless the spouse of the named insured requests to be deleted or excluded from coverage under this policy, a spouse will be deemed to reside

2

in the same household as the named insured for a period of 90 days after the termination of the marriage if the spouse was residing in the household on the date the marriage was declared terminated by a court of competent jurisdiction.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

### ADDITIONAL DEFINITIONS

When used in this Part I:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
   b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
   d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:
1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

3

**EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.

   This exclusion does not apply to shared-expense car pools;

2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**;

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied;

10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;

11. **bodily injury** to **you**;

4

12. **bodily injury** to a **relative**. This exclusion shall not apply to the portion of **bodily injury** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured **relative** had or has access to recovery from another source, if coverage under this Part I were to be denied;

13. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

14. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

15. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

16. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations. This exclusion shall not apply to the portion of **bodily injury** or **property damage** that is less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, unless the injured person who sustains the **bodily injury** or **property damage** had or has access to recovery from another source, if coverage under this Part I were to be denied; or

18. **bodily injury** or **property damage** arising out of the use of any vehicle while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;

5

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and

3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured Motorist Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

### FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

### OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond. **We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if

6

**you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee. Any insurance **we** provide for use of a **covered auto** by any person other than **you**, a **relative**, or a **rated resident**, will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:
1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the limits of liability under this policy.

### PART II—MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1.  sustained by an **insured person**; and
2.  caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:
1.  whether the expenses for **medical services** are reasonable; and
2.  whether the **medical services** are necessary.

## ADDITIONAL DEFINITIONS

When used in this Part II:
1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**:
        (i)   while **occupying** an **auto**; or
        (ii)  when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and
    b.  any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.
2.  "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.

7

3. **Motor vehicle** means a land motor vehicle designed for use principally on public roads.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.

   This exclusion does not apply to shared-expense car pools;

2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

4. due to a nuclear reaction or radiation;

5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

6. for which the United States Government is liable under the Federal Tort Claims Act;

7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;

8. if workers' compensation benefits are available for the **bodily injury**;

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other au-

8

thority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

15. sustained by any person while **occupying** a **covered auto** while being used in connection with a **personal vehicle sharing program**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed

9

amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**. **We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## PART III—UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** or **property damage**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this Part III:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**;
   b. any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person **occupying**, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.
2. "**Property damage**" means:
   a. physical damage to, or destruction or loss of use of, a **covered auto**; and
   b. physical damage to, or destruction of, any property owned by an **insured person** which is contained in the **covered auto** at the time of the accident.

10

3. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

   a.   to which no liability bond or policy applies at the time of the accident;
   b.   to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
       (i)   legally denies coverage; or
       (ii)   is or becomes insolvent;
   c.   whose owner or operator cannot be identified and which causes an accident resulting in **bodily injury** or **property damage** to an **insured person**, provided that:
       (i)   the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and
       (ii)   the accident is reported to **us** no later than 30 days after the accident.
       If there is no physical contact with the vehicle, the facts of the accident must be corroborated by an eyewitness other than the injured **insured person**; or
   d.   to which a liability bond or policy applies at the time of the accident, and:
       (i)   if "Added On Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the damages that the **insured person** is legally entitled to recover for **bodily injury** or **property damage** from the owner or operator of the **uninsured motor vehicle**; or
       (ii)   if "Reduced Coverage" has been elected, as indicated on the **declarations page**, the amount of coverage available under all applicable policies and bonds is less than the applicable coverage limit for Uninsured Motorist Coverage shown on the **declarations page**.
       As used in (i) and (ii) above, the "amount of coverage available" under the bodily injury liability and property damage liability coverages for said **uninsured motor vehicle** shall be the applicable limits of coverage, less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

   An "**uninsured motor vehicle**" does not include any vehicle or equipment:

   a.   owned by **you**, a **relative**, or a **rated resident**, or furnished for the regular use of **you**, a **relative**, or a **rated resident**;
   b.   operated on rails or crawler treads;
   c.   designed mainly for use off public roads, while not on public roads;
   d.   while located for use as a residence or premises; or
   e.   shown on the **declarations page** of this policy.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply:

1.   to **bodily injury** or **property damage** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

11

directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:

    a. workers' compensation law; or
    b. disability benefits law; or
3. to any punitive or exemplary damages.

### LIMITS OF LIABILITY

The following provisions shall apply to both Uninsured Motorist Coverage—Added on to At-Fault Liability Limits, referred to as "Added On Coverage," and to Uninsured Motorist Coverage—Reduced by At-Fault Liability Limits, referred to as "Reduced Coverage":

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "**property damage**" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If "combined single limit" or "CSL" applies, the Uninsured Motorist property damage coverage deductibles shall be a single aggregate deductible.

When **property damage** covered under this Part III is also covered by Collision Coverage under Part IV—Damage To A Vehicle, the coverage under this Part III shall be ex-

cess over the Collision Coverage. However, coverage under this Part III will be used to reimburse **you** for any applicable deductible under Collision Coverage subject to **your** Part III deductible.

No one will be entitled to duplicate payments for the same elements of damages.

**Added On Coverage**

If "Added On Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The damages payable for **bodily injury** under this Part III will be reduced by all sums:
1.  paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2.  paid under Part I—Liability To Others;
3.  paid or payable under Part II—Medical Payments Coverage; and
4.  paid or payable because of **bodily injury** under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

The damages payable for **property damage** under this Part III will be reduced by all sums:
1.  paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2.  paid or payable under any other property or physical damage insurance.

**Reduced Coverage**

If "Reduced Coverage" has been elected, as indicated on the **declarations page**, the following shall also apply:

The bodily injury limits of liability under this Part III will be reduced by all sums:
1.  paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others;
2.  paid or payable under Part II—Medical Payments Coverage; and
3.  paid or payable because of **bodily injury** under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

The property damage limit of liability under this Part III will be reduced by all sums:
1.  paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2.  paid or payable under any other property or physical damage insurance.

13

If there is other applicable uninsured or underinsured motorist coverage, the following order of priority shall be used to determine which insurer is responsible for providing payment:

1. a policy insuring the injured person as a named insured; then
2. a policy insuring the injured person's spouse, any **relative**, or any **rated resident**; then
3. policies insuring the owner or operator of the motor vehicle occupied in the accident.

If **we** are responsible for providing payment under this Part III to an **insured person** and there is more than one applicable policy of the same priority, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits on the same level of priority.

## **PART IV—DAMAGE TO A VEHICLE**

### **INSURING AGREEMENT—COLLISION COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

### **INSURING AGREEMENT—COMPREHENSIVE COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

14

In addition, **we** will pay for:

1.  reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2.  loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:

1.  when the **auto** has been recovered and returned to **you** or its owner;
2.  when the **auto** has been recovered and repaired;
3.  when the **auto** has been replaced; or
4.  72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

### INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

### INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:

1.  when the **covered auto** cannot be driven due to a loss; or

15

2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:

1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

### INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

### INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

16

a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of the **auto**.
3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.
5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used:
   a. to carry persons or property for compensation, fee, salary, or wages;
   b. for retail or wholesale delivery; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. However, this exclusion does not apply to a loss to a **covered auto** to the extent of the legal interest of **you**, a **relative**, or a **rated resident** who:

a. sustains the loss as the result of family violence by **you**, a **relative**, a **rated resident**, a former spouse, or any person who resides in or has resided in **your** primary household;

b. did not direct, participate in, or consent to the intentional act causing the loss; and

c. filed a family violence complaint against the person who caused the violence resulting in the loss;

6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

7. due to lawful destruction or confiscation by governmental or civil authorities of any vehicle;

8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;

9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

11. to any vehicle caused directly or indirectly by any accidental discharge, dispersal or release of radioactive or nuclear material;

12. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

18

13. to any vehicle while being used in connection with a **personal vehicle sharing program**.

### LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is \$1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is \$1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is \$500.
2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.
   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:
         (a) original manufacturer parts or equipment; and
         (b) nonoriginal manufacturer parts or equipment.
   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, de-

19

fects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

    f. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

      (i) batteries;

      (ii) tires;

      (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

      (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

    **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

    g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3. No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4. Any amount paid or payable under this Part IV for transportation expenses, loss of use, or rental reimbursement shall be reduced by any amount paid under Part III—Uninsured Motorist Coverage for loss of use.

5. Duplicate recovery for the same elements of damages is not permitted.

6. The following additional limits of liability apply to Pet Injury coverage:

    a. The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

    b. If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

    c. No deductible shall apply to this coverage.

**PAYMENT OF LOSS**

**We** may, at **our** option:

1. pay for the loss in money; or

2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

**NO BENEFIT TO BAILEE**

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

**We** will provide insurance on a primary basis if the vehicle is owned by a person, firm, or corporation engaged in the business of selling vehicles at retail, but this applies only if **you**, a **relative**, or a **rated resident** are operating the vehicle and are neither the owner of the vehicle nor the owner's employee.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

21

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
    a. mechanical or electrical breakdown;
    b. battery failure;
    c. insufficient supply of fuel, oil, water, or other fluid;
    d. flat tire;
    e. lock-out; or
    f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;

22

12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle sharing program**; or
16. a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;
which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

No claim shall be denied due to **your** failure to notify **us** within 30 days of an accident or loss if **we** receive written notice, by U.S. mail, from an injured person.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

23

4.  call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit as soon as practicable;
5.  attend hearings and trials as **we** require;
6.  take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7.  allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8.  submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9.  authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly, cancel or nonrenew this policy, or take additional action in accordance with the Georgia Code. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:
1.  the number, type or use classification of **covered autos**;
2.  the persons who regularly operate a **covered auto**;
3.  the persons of legal driving age residing in **your** household;
4.  the residents in **your** household;
5.  an operator's marital status;
6.  **your** mailing address and **your** residence address;
7.  the principal garaging address of any **covered auto**;
8.  coverage, deductibles, or limits of liability; or
9.  rating territory or discount eligibility.

24

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the State of Georgia, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the State of Georgia.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void coverage under this policy at any time, including after the oc-

25

currence of an accident or loss, if **you** knowingly:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you** knowingly:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void coverage under the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

If **we** void this policy, this shall not affect coverage for a claim under Part I—Liability To Others of this policy to the extent the damages are less than or equal to the minimum limits of liability coverage required by the Georgia Motor Vehicle Safety Responsibility Act, if the accident occurs before **we** send notification to the named insured that the policy is void.

When **we** have not voided coverage under the policy or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by:
1. returning this policy to **us**; or
2. making a written request for cancellation to **us** or **our** duly authorized agent stating a future date on which the policy is to be canceled. Upon receipt of a written request for cancellation from **you**, **we** may waive the future date requirement by confirming the date and time of cancellation in writing to **you**.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1. **we** cancel within the first 59 days of the initial policy period; or
2. the policy is cancelled for nonpayment of premium.

**We** will give at least 30 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, change or renewal of this policy;
3. **you**, a **relative**, or a **rated resident** violated any of the terms or conditions of this policy;
4. the named insured failed to disclose fully, if called for in the application, any motor vehicle accidents or moving traffic violations within the preceding 36 months;
5. the named insured failed to disclose in the application, or in response to an inquiry by the broker, **our** agent, or **us**, information necessary for the acceptance or proper rating of the risk;
6. the named insured made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;
7. **you**, a **relative**, a **rated resident**, or any other operator residing in **your** household or who customarily operates a **covered auto**:
   a. has, within the 36 months prior to the notice of cancellation, had a driver's license under suspension or revocation;
   b. is or becomes subject to epilepsy or heart attacks and the individual does not provide **us** with a certificate from a physician testifying to the individual's unqualified ability to operate an **auto**;

27

   c. has an accident record, a conviction record, criminal or traffic; or a physical, mental, or other condition which is such that operation of an automobile might endanger the public safety;

   d. has within a three-year period prior to the notice of cancellation, been addicted to the use of narcotics or other drugs;

   e. has been convicted or forfeited bail during the 36 months immediately preceding the notice of cancellation for:
   - (i) any felony;
   - (ii) criminal negligence resulting in death, homicide, or assault arising out of the operation of a motor vehicle;
   - (iii) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
   - (iv) being intoxicated while in or about an automobile or while having custody of an automobile;
   - (v) leaving the scene of an accident without stopping to report;
   - (vi) theft or unlawful taking of a motor vehicle; or
   - (vii) making false statements in an application for a driver's license;

   f. has been convicted of or forfeited bail for three or more violations, within the 36 months immediately preceding the notice of cancellation, of any law, ordinance, or regulation limiting the speed of motor vehicles or any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

8. a **covered auto**:
   - a. is so mechanically defective that its operation might endanger public safety;
   - b. is used in carrying passengers for hire or compensation; provided, however, this does not apply to shared-expense car pools;
   - c. is used in the transportation of flammables or explosives;
   - d. is an authorized emergency vehicle; or
   - e. has changed in shape or condition during the policy period so as to substantially increase the risk; or

9. any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

**We** may conduct an audit to verify certain policy information. If **you** fail to submit to or allow an audit for the current or most recently expired policy period, **we** may, after two documented efforts to notify **you** and **your** agent of potential cancellation, cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records. **We** will give at least 10 days notice of cancellation by certified mail or statutory overnight delivery, return receipt requested. However, **we** will not mail the notice of cancellation within 20 days following the first documented effort to notify **you** of potential cancellation.

28

Upon cancellation, **you** may be entitled to a premium refund.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if cancellation is for nonpayment of premium. A cancellation fee will be charged only during the initial policy period.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be

required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

A person seeking benefits under Part III—Uninsured Motorist Coverage shall not enter into any settlement with a liability insurer except pursuant to a Limited Release, as specified in Georgia law O.C.G.A. Section 33-24-41.1, which shall not release the tortfeasor from personal liability to the extent that uninsured motorist benefits may be available for **bodily injury** or property damage sustained by the insured person.

An insured person who has received benefits under Part II—Medical Payments Coverage must give **us** notice if presenting a claim against any legally liable party. This notice must be given at least 10 days prior to any settlement or commencement of trial.

When an insured person has been paid by **us** and also recovers from another, the amount recovered in excess of the damages sustained by the insured person will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

Except as provided in O.C.G.A. Section 33-24-41.1, if an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

**JOINT AND INDIVIDUAL INTERESTS**

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

**BANKRUPTCY**

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.





9611A GA 0515

E-FILED IN OFFICE - TB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

26-C-01649-S2
2/9/2026 11:19 AM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Mary Angela Bell**
_____

_____

_____

PLAINTIFF

VS.

**Progressive Mountain Insurance**
_____

**Company**
_____

_____

DEFENDANT

26-C-01649-S2

CIVIL ACTION
NUMBER:_____

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Drew Ashby - Ashby Thelen Lowry
445 Franklin Gateway, SE
Marietta, Georgia 30067
drew@atllaw.com / 404-777-7771

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **9th** day of **February**, 20**26**.

Tiana P. Garner
Clerk of State Court

By _____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**26-C-01649-S2**

**2/16/2026 9:50 AM**
TIANA P. GARNER, CLERK

## THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARY ANGELA BELL,** | |
| **Plaintiff,** | **CIVIL ACTION FILE NO.** |
| **vs.** | **26 C 01649 S2** |
| **PROGRESSIVE MOUNTAIN INSURANCE COMPANY,** | |
| **Defendant.** | |

### AFFIDAVIT OF SERVICE OF PROCESS

COMES NOW the undersigned, Steven M. Barney, Jr. and gives this his affidavit of service of process testifying and deposing as follows:

1.

I am the age of majority and laboring with no mental disabilities. I give this affidavit based upon personal knowledge. I have no personal or financial interest in the outcome of this case. I am a Court appointed process server authorized to serve process in the above Court.

2.

I personally served upon PROGRESSIVE MOUNTAIN INSURANCE COMPANY the following documents by serving CT Corporation, registered agent, via Jayne Richardson, authorized to accept service on behalf of CT Corporation, at the address of 289 S. Culver Street, Lawrenceville, Georgia on February 10, 2026 at 3:22 p.m.

- Summons
- Complaint for Damages with Exhibits

DATED this _13_ day of February, 2026.

_____
STEVEN M. BARNEY, JR.

Sworn to and subscribed before me
This _13_ day of ____. , 2026.

_____
Notary Public, State of Georgia
My Commission Expires: _____

Mary Jo Barney
Gilmer County
State of Georgia
My Comm. Expires 2/16/2027

E-FILED IN OFFICE - TB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

26-C-01649-S2
2/9/2026 11:19 AM
TIANA P. GARNER, CLERK

**General Civil and Domestic Relations Case Filing Information Form**

☐ Superior or ☒ State Court of ___Gwinnett State Court___ County

| For Clerk Use Only | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | 26-C-01649-S2 |

**Plaintiff(s)**
Mary Angela Bell

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Progressive Mountain Insurance Company

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Andrew S. Ashby    **State Bar Number** _____    **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
**Case Number**                                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20